IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
Jackson Division

MISSISSIPPI ASSOCIATION OF
EDUCATORS, BARBARA PHILLIPS,
JAMES THOMAS, DAWN ZIMMERER,
L.E. JIBOL, UNITED CAMPUS
WORKERS SOUTHEAST LOCAL 3821,
MADISYN DONLEY, ALEXIS COBBS,
KAREN ADERER, FOSTERING
LGBTQ+ ADVOCACY, RESOURCES,
ENVIRONMENTS AND WOMEN IN
SCIENCE AND ENGINEERING,

*Plaintiffs,*                                            Civil No. 3:25-cv-417-HTW-LGI
v.

BOARD OF TRUSTEES OF STATE
INSTITUTIONS OF HIGHER
LEARNING, MISSISSIPPI COMMUNITY
COLLEGE BOARD, MISSISSIPPI STATE
BOARD OF EDUCATION, MISSISSIPPI
CHARTER SCHOOL AUTHORIZER
BOARD,

*Defendants.*

---

### DECLARATION OF CLIFF JOHNSON

I, CLIFF JOHNSON, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am over the age of eighteen and competent to make this declaration. I submit this declaration based on my personal knowledge.

2. I am a civil rights lawyer and a Clinical Professor of Law at the University of Mississippi School of Law. In my role as professor and the Director of the MacArthur Justice Center at the University of Mississippi, I teach law students in my clinic about constitutional law, civil rights litigation, Mississippi's criminal legal system (past and present), policing practices, and the history and impact of laws and policies that affect marginalized communities.

3. As part of my teaching, I regularly discuss matters of race, racism, systemic inequality, and implicit bias. These topics are essential to understanding the legal doctrines and

historical context of many civil rights cases and statutes, and they are central to preparing students to practice law in a diverse and pluralistic society.

4. It is critical for my students to question, discuss, and understand the historical context in which our criminal legal system developed, the role of race and racism in that story, and the extent to which those influences still impact arrest, prosecution, and incarceration. My class always is extremely diverse, and I ask all my students to consider how the "inputs" they have received from home, friends, church, and media may have created subconscious implicit bias that affects how they view certain individuals, groups, ideologies, or actions. I discuss my own implicit, and explicit, bias and how as a 58-year-old straight white male I attempt to process all the things I have been told about people who are Black, gay, from another country, or even from another political party. I explore with my students how generalizations and stereotypes are dangerous and impact all of us – police, lawyers, judges, and clinical law professors. These discussions are a vitally important part of training thoughtful, self-aware advocates who recognize not just what is happening around them, but also why and how the systems they are challenging developed.

5. Mississippi's recently enacted anti-DEI (Diversity, Equity, and Inclusion) legislation has created uncertainty and concern about what I am permitted to say in the classroom. The law's vague and sweeping language leaves me unclear about whether my standard teaching materials and classroom discussions could subject me to discipline, censure, or other professional consequences. I will be impacted by sections 3(b), 3(i), 3(f), and 3(g) of HB 1193. I want to be able to continue to teach my class as before, but I will be unable to do so. I will be forced to censor my viewpoints, and I will not be able to speak freely and honestly with my students.

6. I am not alone in this concern. Other professors at the University of Mississippi have also expressed uncertainty about what they can and cannot say under this new law. Faculty members have raised questions about whether discussing topics such as racism, the civil rights movement, or structural inequality might now be considered impermissible under the law.

7. Summer classes are underway at the University of Mississippi, and the fall semester begins in August. Professors currently are preparing reading lists, lesson plans, and syllabi for the fall semester. If HB 1193 is enforced, substantial changes will have to be made to many courses for which students already are registered. The issuance of an injunction would provide much needed relief to students, faculty, and administration as the University grapples with the vagueness and sweeping reach of this new law.

8. As an educator, I believe that open, honest, and rigorous classroom discussion is essential to academic freedom and effective teaching. The chilling effect of this legislation threatens not only the quality of legal education in Mississippi but also the ability of educators to engage students in the critical examination of law and society.

9. The University of Mississippi School of Law is accredited by the American Bar Association ("ABA"), and accreditation requires us to comply with ABA Standards and Rules. The ABA requires law schools to teach about bias, cross-cultural competency, and the effects of racism on the legal profession. HB 1193 will prevent the law school from complying with this requirement, and the University of Mississippi School of Law's accreditation will be impacted by our inability to follow applicable Rules and Standards.

10. I remain deeply committed to my students and to the mission of legal education. However, the ambiguity and potential disciplinary consequences of the anti-DEI legislation have placed me in a position of legal and professional risk for doing the work I have long done as a civil rights lawyer and professor.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 6th day of June, 2025, in Oxford, Mississippi.

Cliff Johnson
Clinical Professor of Law
Director, MacArthur Justice Center
University of Mississippi School of Law