IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
Jackson Division

MISSISSIPPI ASSOCIATION OF
EDUCATORS, BARBARA PHILLIPS,
JAMES THOMAS, DAWN ZIMMERER,
L.E. JIBOL, UNITED CAMPUS
WORKERS SOUTHEAST LOCAL 3821,
MADISYN DONLEY, ALEXIS COBBS,
KAREN ADERER, FOSTERING
LGBTQ+ ADVOCACY, RESOURCES,
ENVIRONMENTS AND WOMEN IN
SCIENCE AND ENGINEERING,

*Plaintiffs*,                                              Civil No. 3:25-cv-417-HTW-LGI
 v.

BOARD OF TRUSTEES OF STATE
INSTITUTIONS OF HIGHER
LEARNING, MISSISSIPPI COMMUNITY
COLLEGE BOARD, MISSISSIPPI STATE
BOARD OF EDUCATION, MISSISSIPPI
CHARTER SCHOOL AUTHORIZER
BOARD,

*Defendants*.

SUPPLEMENTAL DECLARATION OF JAMES M. THOMAS

I, JAMES M. THOMAS, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am over the age of eighteen and competent to make this declaration. I submit this declaration based on my personal knowledge.

2. Section 3(b) of HB1193 prohibits me as well as all other classroom instructors in Mississippi public schools, colleges, and universities from "[e]ngag[ing] in divisive concepts as defined in Section 2(d) and (e) of this act."

3. Section 2(d) defines "diversity training" to include "any formal or informal education, seminars, workshops or institutional program that focus on increasing awareness or understanding of issues related to race, sex, color, gender identity, sexual orientation or national origin." College courses are formal educational settings, aligned with specific degree programs.

4. The American Sociological Association defines sociology as "the study of social life, social change, and the social causes and consequences of human behavior. Sociologists investigate the structure of groups, organizations, and societies and how people interact within these contexts. Since all human behavior is social, the subject matter of sociology ranges from the intimate family to global communities; from deviance to organized crime; from religious traditions to state institutions; and from the divisions of race, gender and social class to the shared beliefs of a common culture."[1]

5. The definition above is the professional standard for sociologists everywhere in the United States, including in Mississippi. Sociology courses generally examine and explore the full range of human social behavior and its organization. This often includes increasing students' awareness and understanding of, among other things, issues related to race, sex, color, gender identity, sexual orientation, and national origin. This is true of the courses I teach and I believe is true of many courses taught by others.

6. Section 3(i) of HB1193 prohibits "[r]equir[ing] any 'diversity training' as defined in Section 2 or any other policies or procedures that result in any formal or informal education, seminars, workshops or institutional program that focus on increasing awareness or understanding of issues related to race, sex, color, gender identity, sexual orientation or national origin." This seems to cover required courses.  Introduction to Sociology (Sociology 101), which I teach, is a required course for all sociology majors. Introduction to Sociology (Sociology 101) is also among those courses offered by the University of Mississippi's College of Liberal Arts that meets the general educational requirements of six (6) social science credit hours for a liberal arts degree.

7. Section 3(b) prohibits "engage[ment]" not only with the definition of "diversity training" in Section 2(d) but also the "divisive concepts" listed in Section 2(e).   The word "engage" is not defined. I am concerned that it can be interpreted to prohibit any discussion of the existence of the so-called "divisive concepts."   I am also concerned it can be interpreted to prohibit discussion of the fact that some people have believed in and acted on these concepts in the past and even in the present.  The existence of each of these concepts, and the fact that some have believed and acted on those concepts, constitutes a core learning objective within my classes and the classes of many others. These beliefs are historical and sociological issues. While a certain concept may not be true in and of itself, it can still be a legitimate topic of academic instruction. This problem infects the entire list of divisive concepts and makes it difficult to know what is prohibited and what is not. With respect to each of the individual concepts:

---

[1] See https://www.asanet.org/about/what-is-sociology/

- "(i) One (1) race, sex, color, or national origin is inherently superior to another race or sex" seems to encompasses the whole set of beliefs that have led to notions of white supremacy and racial supremacy as well as male supremacy and gender supremacy.

- "(ii) An individual, by virtue of his or her race, sex, color, national origin, is inherently racist, sexist, or oppressive, whether consciously or unconsciously" seems to describe the concepts of implicit bias and unconscious bias.

- "(iii) An individual should be discriminated against or treated adversely solely because of their race, sex, color, or national origin" seems to describe both a historical and present-day phenomenon and also can be interpreted to encompass discussions about affirmative action.

- "(iv) Members of one (1) race, one (1) sex, one (1) color, one (1) national origin cannot and should not attempt to treat others without respect to race, color, national origin or sex, gender identity, sexual orientation, or national origin" is incoherent and I do not understand what it intends to prohibit.

- "(v)  An individual's moral character is necessarily determined by his or her race, color, sex, or national origin" seems to refer to historical and present-day beliefs about a particular group having a different moral character than others.

- "(vi)  An individual, by virtue of his or her race, color, sex or national origin, bears responsibility for actions committed in the past by other members of any class listed herein" seems to describe notions of collective responsibility and reparative justice.

- "(vii)  An individual should feel discomfort, guilt, anguish or any other form of psychological distress on account of his or her race, color, sex, or national origin" seems to describe a belief that some people have and that is sometimes a motivation for some people.

- "(viii)  Meritocracy or traits such as hard work ethic are racist or sexist, or were created by a particular class to oppress another class" seems to encompass the origins of meritocratic ideology, including which groups were excluded from its considerations and why; and how certain so-called merit-based systems today have discriminatory effects on certain groups even if those discriminatory effects are unintended.

8. Section 3(f) states that it is unlawful to: "Maintain any programs, including academic programs or courses, or offices that promote diversity, equity and inclusion, endorse divisive concepts or concepts promoting transgender ideology, gender-neutral pronouns, deconstruction of heteronormativity, gender theory, sexual privilege or any related formulation of these concepts." Similar to Section 3(b), this section's prohibition singles out viewpoints regarding the "divisive concepts" listed in Section 2(e), along with

additional concepts "promoting" a host of undefined terms related to gender and sex "or any related formulation of these concepts." In addition, it bans viewpoints "promot[ing] diversity, equity and inclusion." There is no definition of "promote," "endorse," "transgender ideology, gender-neutral pronouns, deconstruction of heteronormativity, gender theory, sexual privilege," or "related formulation of those concepts."

9. Many of my comments relating to the divisive concepts in Section 2(e) are relevant to 3(f).  Also, because the terminology of 3(f) is so vague and undefined, it is difficult for me to determine what is prohibited and what is not.  Depending on the interpretation, I believe Section 3(f) could encompass matters that I teach in my sociology courses.

10. Section 3(g) prohibits "[r]equir[ing], as a condition of enrolling at, accepting employment with, or being awarded a contract at an institution, college or public school, or as a requirement of continuing enrollment, employment or contractual obligation at an institution, college or public school, any person to participate in diversity, equity and inclusion training." While Section 2(a) defines "diversity, equity and inclusion" and Section 2(d) defines "diversity training," there is no definition of "diversity, equity and inclusion training" in the act. As mentioned earlier, I teach a course that is required for sociology majors. Given the lack of a definition of "diversity, equity and inclusion training," I am concerned this could be interpreted to encompass matters that I teach in that course.

11. These provisions place me and many other social scientists at great personal, professional, and legal risk for simply doing our jobs that we were hired to do and discussing matters in the classroom that are standard topics in my discipline.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 20th day of June, 2025, in Oxford, Mississippi.

*James M. Thomas*

_____
James M. Thomas
Professor of Sociology
Sociology Graduate Program Director
Department of Sociology and Anthropology
University of Mississippi