**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

| | |
|---|---|
| **MISSISSIPPI ASSOCIATION OF EDUCATORS, BARBARA PHILLIPS, JAMES THOMAS, DAWN ZIMMERER, L.E. JIBOL, UNITED CAMPUS WORKERS SOUTHEAST LOCAL 3821, MADISYN DONLEY, ALEXIS COBBS, KAREN ADERER, FOSTERING LGBTQ+ ADVOCACY, RESOURCES, ENVIRONMENTS AND WOMEN IN SCIENCE AND ENGINEERING** | **PLAINTIFFS** |
| **VS.** | **CIVIL ACTION NO. 3:25-cv-00417-HTW-LGI** |
| **BOARD OF TRUSTEES OF STATE INSTITUTIONS OF HIGHER LEARNING, MISSISSIPPI COMMUNITY COLLEGE BOARD, MISSISSIPPI STATE BOARD OF EDUCATION, MISSISSIPPI CHARTER SCHOOL AUTHORIZER BOARD** | **DEFENDANTS** |

---

## MEMORANDUM OF AUTHORITIES IN SUPPORT OF STATE DEFENDANTS' MOTION TO DISMISS

---

## INTRODUCTION

Plaintiffs' Complaint should be dismissed at the pleading stage because this lawsuit is barred by Eleventh Amendment sovereign immunity.  All four of the named defendants in this case are arms of the State of Mississippi.  As a matter of law, they cannot be sued in federal court.

Alternatively, Plaintiffs' claims against three of the defendants should be dismissed for lack of standing because the law that Plaintiffs seek to challenge does not direct or authorize those defendants to take any action against any plaintiff.  And Plaintiffs have not shown that the educational institutions that employ or educate them will not independently comply with the

challenged law in the absence of any efforts by those defendants to ensure that they comply, or even that such institutions are likely to react to the law in predictable ways. Thus, Plaintiffs cannot establish causation or redressability and accordingly lack Article III standing.

To ensure that State educational funds are deployed to *educate*—and not to discriminate or indoctrinate—the Mississippi Legislature during the 2025 regular session enacted House Bill 1193 ("H.B. 1193" or "the Mississippi Law"). The stated purpose of the Mississippi Law is "to prohibit public schools and public postsecondary educational institutions from taking certain actions and engaging in discriminatory practices." H.B. 1193, § 1 (Ex. A). To that end, the Mississippi Law "seeks to ensure that employment, academic opportunities and student engagement are based solely on individual merit, qualifications and academic performance, without consideration of an individual's race, sex, color, national origin, or expressed opposition to, or refusal to affirm or participate in, diversity, equity and inclusion." *Id.*

The Mississippi Law directs the Board of Trustees of State Institutions of Higher Learning ("the IHL Board"), the Mississippi Community College Board ("MCCB"), the Mississippi State Board of Education ("MSBE"), and the Mississippi Charter School Authorizer Board ("MCSAB") (collectively "Defendants") to ensure that the respective public universities, colleges, and schools that they oversee do not engage in certain practices that the Legislature has deemed discriminatory. The Mississippi Law does not authorize or direct Defendants to take curative or remedial actions against professors, teachers, educators, students, or any related faculty/student organizations. Rather, H.B. 1193 charges the constituent educational institutions themselves with sole responsibility for undertaking any such curative or remedial actions that H.B. 1193 requires.

The instant motion to dismiss does not implicate the legality of the Mississippi Law or the merits of Plaintiffs' claims. Rather, it focuses solely on two threshold jurisdictional issues—

namely, (1) whether the named defendants can be sued in federal court *at all*; and (2) if so, whether three of those defendants can be sued by the *these plaintiffs*—a collection of "students, parents, educators, and organizations," ECF #1 at 4, ¶ 8, who purport to assert First and Fourteenth Amendment claims pursuant 42 U.S.C. § 1983.  Defendants submit that both issues can only be resolved <u>against</u> a finding of federal subject-matter jurisdiction.

*First*, the Complaint should be dismissed because Plaintiffs' claims are barred by Eleventh Amendment sovereign immunity.  All four of the named defendants are State boards that unquestionably constitute "arms" of the State of Mississippi.  It is well settled that the State's Eleventh Amendment sovereign immunity extends to any state agency or entity deemed an "arm" of the State—the only exceptions being waiver/consent, congressional abrogation, and a state's amenability to suit under the *Ex parte Young* doctrine.  The State of Mississippi has not waived its sovereign immunity or consented to suit in federal court.  Nor has Congress abrogated state sovereign immunity under § 1983.  And as a matter of law, where plaintiffs only sue State boards, *Ex parte Young* does not apply.

Because none of the recognized exceptions to Eleventh Amendment sovereign immunity applies in this case, all four defendants are shielded by the State of Mississippi's sovereign immunity as to all claims asserted in this lawsuit.  Therefore, this Court lacks subject-matter jurisdiction, and Plaintiffs' Complaint should be dismissed in its entirety on this basis alone.

*Second*, even if this suit were not barred by the Eleventh Amendment, the Complaint should be dismissed as to MCCB, MSBE, and MCSAB (collectively "the Non-IHL Defendants") because Plaintiffs lack Article III standing.[1]  As a matter of law at the pleading stage, the burden

---

[1] To be clear, the IHL Board does not concede that Plaintiffs can establish Article III standing as to it. Rather, given its unique management-and-control authority, and without waiving its right to challenge standing in a future filing, the IHL Board does not join in the instant alternative motion to dismiss for lack

is on Plaintiffs to state a plausible set of facts establishing the essential "standing" elements of traceability and redressability. Plaintiffs have failed to meet that burden.

For starters, Plaintiffs' alleged harm is not fairly *traceable* to the Non-IHL Defendants. Pursuant to the Mississippi Law, it is the educational institutions at which Plaintiffs are employed or enrolled—and not the Non-IHL Defendants as the State boards overseeing those institutions—that the Legislature has assigned responsibility for taking remedial actions designed to cure any violations of H.B. 1193. It is those remedial actions that Plaintiffs allege cause (or will cause) them "harm."

Additionally, Plaintiffs do not allege that the public colleges and schools with which they interface will not comply with the challenged law. Nor do they make the requisite showing that these institutions are likely to react to the law in any predictable ways. Finally, as Plaintiffs acknowledge in their Complaint, the Mississippi Law requires public educational institutions in Mississippi to comply with its provisions whether the Non-IHL Defendants ensure that they do so or not. Plaintiffs simply have not met their burden to establish a traceable causal connection between any alleged "harm" and any past or future action that is fairly traceable to the Non-IHL Defendants.

Relatedly, Plaintiffs' alleged harm is not *redressable* by any relief against the Non-IHL Defendants. At the time Plaintiffs filed their Complaint—i.e., the time at which standing must be determined—none of the Non-IHL Defendants had yet adopted any policies, procedures, or regulations implementing the provisions of the Mississippi Law pertaining to them. The likelihood that an injunction against the Non-IHL Defendants would directly redress Plaintiffs' alleged harms was merely speculative at the time given the Non-IHL Defendants' general authority to regulate

---

of standing. This distinction should be of no moment here in any event, as all four defendants are unquestionably shielded by Eleventh Amendment sovereign immunity.

educational institutions rather than Plaintiffs. Furthermore, it is the educational institutions themselves—not the Non-IHL Defendants—that are primarily responsible for enforcing compliance with H.B. 1193 as it relates to any conduct of Plaintiffs.

Whether any relief awarded against the Non-IHL Defendants is effective in redressing Plaintiffs' alleged harms is dependent upon Plaintiffs' respective educational institutions choosing not to comply with the Mississippi Law in the absence of any efforts of the Non-IHL Defendants to ensure that they comply. Plaintiffs have not alleged plausible facts demonstrating that the educational institutions at which they work or are enrolled intend to forgo compliance in the absence of any such efforts by the Non-IHL Defendants. Thus, Plaintiffs cannot establish that their alleged injuries would be redressed, even partially, by an order enjoining the Non-IHL Defendants from sanctioning constituent educational institutions where Plaintiffs are employed, enrolled, or otherwise engaged. Accordingly, Plaintiffs cannot show that the prospect of redressing their alleged harms via relief directed against the Non-IHL Defendants is anything more than speculative. As a matter of law, that is not enough to establish redressability for purposes of constitutional standing.

For all these reasons, Plaintiffs' Complaint should be dismissed in its entirety for lack of subject-matter jurisdiction predicated on Eleventh Amendment sovereign immunity or, alternatively as to the Non-IHL Defendants, lack of Article III standing.

## **<u>BACKGROUND</u>**

**Legal Background.** Plaintiffs' Complaint purports to assert claims pursuant to 42 U.S.C. § 1983 against four State boards, each of which constitutes an arm of the State of Mississippi. This case accordingly implicates fundamental jurisdictional principles of Eleventh Amendment sovereign immunity. It is well settled that "a state's Eleventh Amendment immunity extends to

any state agency or entity deemed an 'alter ego' or 'arm' of the state." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002). Unless any applicable exception applies, such entities "cannot be sued in federal court." *See Washington v. Jackson State Univ.*, 532 F. Supp. 2d 804, 813 (S.D. Miss. 2006). Where a plaintiff only sues State boards, "and no members in their official capacities, *Ex parte Young* does not apply," and the plaintiff's claims are barred by Eleventh Amendment sovereign immunity. *Block v. Tex. Bd. of Law Examiners*, 952 F.3d 613, 619-20 (5th Cir. 2020).

This case further implicates separate jurisdictional principles of Article III standing. For standing to exist, the plaintiff must show—in addition to an injury in fact—both a traceable causal connection and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). To satisfy the traceability requirement, a plaintiff must show that the alleged harm is "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Id.* at 560 (alterations and ellipses in original) (internal quotation marks omitted). "To satisfy redressability, a plaintiff must show that it is *likely*, as opposed to merely *speculative*, that the injury will be redressed by a favorable decision." *Reule v. Jackson*, 114 F.4th 360, 368 (5th Cir. 2024) (ultimately quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)) (italics in original) (internal quotation marks omitted).

**Factual Background.** During the 2025 regular legislative session, the Mississippi Legislature enacted House Bill 1193 ("H.B. 1193" or "the Mississippi Law"), which took effect upon the Governor's signature on April 17, 2025, and is now state law. ECF #1 at 1, ¶ 2; 4, ¶ 8. Section 1 of the Mississippi Law states that its purpose "is to prohibit public schools and public postsecondary educational institutions from taking certain actions and engaging in discriminatory

practices." H.B. 1193, § 1 (Ex. A). Relatedly, the Mississippi Law "seeks to ensure that employment, academic opportunities and student engagement are based solely on individual merit, qualifications and academic performance, without consideration of an individual's race, sex, color, national origin, or expressed opposition to, or refusal to affirm or participate in, diversity, equity and inclusion." *Id.*

Section 2 of the Mississippi Law defines certain terms used in H.B. 1193, including "diversity, equity and inclusion," "diversion, equity and inclusion office," "diversity training," and "divisive concepts," among others. *Id.*, § 2.

Section 3 requires the IHL Board, MCCB, MSBE, and MCSAB to "ensure" that "each institution, college and public school" in Mississippi "shall not" engage in specified activities that the Legislature has deemed to constitute discriminatory practices in connection with employment, academic opportunities, and student engagement in the public education arena. *See id.*, § 3. These activities include, but are not limited to, the following: "[e]ngag[ing] in divisive concepts" as defined by the Mississippi Law, *id.*, § 3(b); "[m]aintain[ing] any programs . . . or offices that promote diversity, equity and inclusion, endorse divisive concepts or concepts promoting transgender ideology" and related concepts, *id.*, § 3(f); "[r]equir[ing]," as a condition of initial or continuing enrollment, employment, or contract award "any person to participate in diversity, equity and inclusion training," *id.*, § 3(g); and "[r]equir[ing] any 'diversity training' as defined [by the Mississippi Law] or any other policies or procedures" providing for programs "that focus on increasing awareness or understanding of issues related to race, sex, color, gender identity, sexual orientation or national origin," *id.*, § 3(i).

Section 4 requires the IHL Board, MCCB, MSBE, and MCSAB to "recognize, teach and establish policies and curriculum in accordance with the definitions of the terms 'female,' 'male,' and 'sex' as provided" for in existing Mississippi statutes. *Id.*, § 4.

Section 5 provides a list of certain activities to which the Mississippi Law does not apply, including such matters as programs for military veterans and students with disabilities, *id.*, § 5(a); scholarly research and creative work by students, faculty, employees, or staff of public educational institutions, "or the dissemination of that work," *id.*, § 5(b); student organization activities that do not involve the use of state funds, *id.* § 5(c); and academic accreditation activities, *id.*, § 5(j).

Section 6 provides that "[b]eginning in 2026, by July 30 of each year, each institution, college or public school shall submit to their respective boards an annual report summarizing all formal complaints and the dispositions of those investigations and violations. Any institution, college or public school that is not in compliance with the requirements of this act at the time the institution, college or public school files the required report shall provide a written statement explaining its failure to comply." *Id.*, § 6.

Section 7 requires the IHL Board, MCCB, MSBE, and MCSAB to adopt complaint processes and appropriate policies and procedures for investigating violations of the Mississippi Law. *Id.*, §§ 7(1), 7(2). Section 7 also requires the IHL Board and MSBE to accept filed complaints made against state institutions of higher learning and state-operated schools, respectively, and to investigate any such complaints and issue findings. *Id.*, §§ 7(3)(c),(e), 7(6). It further requires public universities, colleges, and schools to cure any violations of the Mississippi Law and provides for a private right of action to seek judicial review in Chancery Court. *Id.*, §§ 7(6)(b), 7(7).

Section 8 requires the State of Mississippi to withhold the disbursement of certain State funds to public universities, colleges, and schools under certain conditions of noncompliance by those entities. *Id.*, §§ 8(1), 8(2). It further provides for the establishment of a uniform process for "the implementation, enforcement and reinstatement of state funds." *Id.*, § 8(3).

Section 9 provides a process for an aggrieved complainant to notify the Attorney General of a violation or potential violation of the Mississippi Law. *Id.*, § 9(1)(a). It further authorizes the Attorney General, upon receipt of such notification, to file an application for a writ of mandamus in Chancery Court for injunctive relief to compel compliance by the educational institution in violation. *Id.*, § 9(1)(b).

Section 10 of the Mississippi Law provides for severability, *id.*, § 10, while Section 11 provides that the Mississippi Law "shall take effect and be in force from and after its passage," *id.* § 11.

**Procedural Background.** On June 9, 2025, Plaintiffs filed a *Complaint for Injunctive and Declaratory Relief* ("Complaint") against the IHL Board, MCCB, MSBE, and MCSAB. ECF #1. No board members or other State officials are named as defendants. As alleged in the Complaint, Plaintiffs fall into four broad categories: "students, parents, educators, and organizations." ECF #1 at 4, ¶ 8. As more fully set forth *infra*, Plaintiffs allege that they are and will be harmed by the Mississippi Law in various ways that they claim adversely impact their freedom of speech. *Id.* at 26-31, ¶¶ 83-100.

Against all defendants, Plaintiffs purport to assert claims pursuant to 42 U.S.C. § 1983, *id.* at 4, ¶ 9, for alleged violations of their First and Fourteenth Amendment rights. Specifically, Plaintiffs allege that certain provisions of the Mississippi Law violate their "First Amendment Right to Speak" (**Count One**) and their "First Amendment Right to Receive Information" (**Count**

**Two**). *Id.* at 31-32, §§ 101-07.  They further purport to assert claims for "First Amendment Loss of Student Funding" (**Count Three**); "First and Fourteenth Amendment Vagueness" (**Count Four**); "Fourteenth Amendment Equal Protection" (**Count Five**); and "Fourteenth Amendment Due Process Violation Stemming From the Withdrawal of State Funding and Closing of the Schools" (**Count Six**).  *Id.* at 32-34, ¶¶ 108-16.

As for relief, Plaintiffs seek "[a] declaration that Sections 3(b), 3(f), 3(g), and 3(i) and Sections 7, 8, and 9 of [the Mississippi Law] violate the First and Fourteenth Amendments to the United States Constitution."  *Id.* at 35, ¶ 1.  They further seek "[a] preliminary and permanent injunction preventing the defendants and any other individuals and entities acting in concert with them from enforcing Sections 3(b), 3(f), 3(g), and 3(i) and Sections 7, 8, and 9 of [the Mississippi Law]."  *Id.* at 35, ¶ 2.

Pursuant to Rule 12(b)(1), Defendants timely file the instant pre-answer motion to dismiss Plaintiffs' Complaint for lack of subject-matter jurisdiction predicated on Eleventh Amendment sovereign immunity or, alternatively, lack of Article III standing as to the Non-IHL Defendants.

## STANDARD FOR DISMISSAL

**Eleventh Amendment sovereign immunity.**  Subject-matter jurisdiction fails where the plaintiff's claims are barred by the Eleventh Amendment.  *Sissom v. Univ. of Tex. High Sch.*, 927 F.3d 343, 346-49 (5th Cir. 2019).  Motions to dismiss predicated on Eleventh Amendment sovereign immunity are accordingly brought pursuant to Rule 12(b)(1).  *See id.* at 346.  Where the defendant invokes the Eleventh Amendment to assert a facial attack on subject-matter jurisdiction, the Court's review is limited to the allegations in the Complaint.  *See Shockley v. Univ. of Tex. Med. Branch*, Civil Action No. 3:06-CV-0223-K, 2007 WL 1976460, at *2 (N.D. Tex. July 1, 2007).  "A facial attack is valid if from the face of the pleadings, the court can determine it lacks subject

matter jurisdiction.  For the purposes of the motion, the allegations in the complaint are taken as true."  *Rodriguez v. Tex. Comm'n of Arts*, 992 F. Supp. 876, 878 (N.D. Tex. 1998).

**Lack of Article III standing.**  Subject-matter jurisdiction also fails where the plaintiff lacks Article III standing.  *See Stallworth v. Bryant*, 936 F.3d 224, 232 (5th Cir. 2019). Accordingly, motions to dismiss for lack of standing are also brought pursuant to Rule 12(b)(1). *Moore v. Bryant*, 853 F.3d 245, 248 n.2 (5th Cir. 2017).  "Plaintiffs always have the burden to establish standing."  *Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017).  Faced with a challenge to Article III standing at the pleading stage, the "plaintiffs have the burden of stating 'a plausible set of facts establishing jurisdiction.'"  *Williams v. Bienville Orthopaedic Specialists, LLC*, 737 F. Supp. 3d 411, 423 (S.D. Miss. 2024) (quoting *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012)).  *See also McMahon v. Fenves*, 946 F.3d 266, 270 (5th Cir. 2020).  "[I]f the plaintiff does not carry his burden clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute, then dismissal for lack of standing is appropriate." *Stallworth*, 936 F.3d at 230 (internal quotation marks omitted).

## ARGUMENT

I. **THE COMPLAINT SHOULD BE DISMISSED AS TO ALL DEFENDANTS BECAUSE PLAINTIFFS' CLAIMS ARE BARRED BY ELEVENTH AMENDMENT SOVEREIGN IMMUNITY.**

A. **All four named defendants are "arms" of the State entitled to Eleventh Amendment sovereign immunity in the absence of any recognized exception.**

It is well settled that "a state's Eleventh Amendment immunity extends to any state agency or entity deemed an 'alter ego' or 'arm' of the state."  *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002).  *See also Union Pac. R.R. Co. v. La. Pub. Serv. Comm'n*, 662 F.3d 336, 340 n.3 (5th Cir. 2011) (same); *McGarry v. Univ. of Miss. Med. Ctr.*, 355 Fed. App'x 853, 856 (5th Cir. 2009) (same).  Unless any applicable exception applies, such entities "cannot be sued in federal

court." *See Washington v. Jackson State Univ.*, 532 F. Supp. 2d 804, 813 (S.D. Miss. 2006). *See also Hays v. LaForge*, 113 F. Supp. 3d 883, 891 (N.D. Miss. 2015).

Here, all four named defendants are "arms" of the State of Mississippi.

**The IHL Board.**  The IHL Board manages the State's eight major public universities. MISS. CODE ANN. § 37-101-1.  Its members are appointed by the Governor, with the advice and consent of the Mississippi Senate. *Id.* § 37-101-3(1).  "There is no doubt that . . . the IHL Board [is an] arm[] of the state entitled to sovereign immunity." *Seay v. Inst. of Higher Learning*, No. 3:20-CV-265-DMB-RP, 2021 WL 3008595, at *3 (N.D. Miss. July 15, 2021). *See also Thomas v. Univ. of Mississippi*, Civil No. 3:18-cv-00062-GHD-RP, 2018 WL 6613807, at *2 (N.D. Miss. Dec. 17, 2018) (reaffirming that the IHL Board is "considered an arm of the state for Eleventh Amendment purposes"); *Jackson v. Duff*, Civil Action Nos. 3:23-CV-3095-KHJ-MTP, 3:24-cv-00308-KHJ-MTP, 2025 WL 35981, at *4 (S.D. Miss. Jan. 6, 2025) (same).

**MCCB.**  MCCB receives state-appropriated funds and distributes those funds to the various community colleges located throughout Mississippi. MISS. CODE ANN. § 37-4-3(1),(6)(a). It also "make[s] studies of the needs of the state" related to the mission of community colleges and serves as the "state approving agency" for certain federal funds. *Id.* § 37-4-3(6)(b),(f).  MCCB's members are appointed by the Governor with the advice and consent of the Mississippi Senate. *Id.* § 37-4-3(2).  Plaintiffs allege that MCCB "coordinates efforts to enhance educational opportunities statewide." ECF #1 at 6, ¶ 24.  Consistent with the foregoing and the Fifth Circuit's test set out in *Perez*, 307 F.3d at 326-27, the Southern District of Mississippi (Judge Jordan presiding) has previously deemed MCCB to be an "arm" of the State, holding that "MCCB is protected by Eleventh Amendment immunity." *See Mackey v. Pigott*, Civil Action No. 3:23-CV-

233-DPJ-FKB, 2023 WL 7663300, at *3 (S.D. Miss. Nov. 14, 2023) (internal quotation marks omitted).

**MSBE.** As Plaintiffs acknowledge in their Complaint, see ECF #1 at 7, ¶ 25, MSBE "adopt[s] rules and regulations and set[s] standards and policies for the organization, operation, management, planning, budgeting and programs of the State Department of Education." MISS. CODE ANN. § 37-1-3(1). Its members are appointed by the Governor, Lieutenant Governor, and Speaker of the Mississippi House of Representatives, all with the advice and consent of the Mississippi Senate. *Id.* § 37-1-1. Consistent with the foregoing and the Fifth Circuit's test set out in *Perez*, 307 F.3d at 326-27, the Southern District of Mississippi (Judge Jordan presiding) has previously determined that MSBE constitutes an arm of the State for purposes of Eleventh Amendment sovereign immunity. *See Holmes County Consol. Sch. Dist. v. Miss. Dep't of Educ.*, Civil Action No. 3:21-CV-508-DPJ-FKB, 2022 WL 178832, at *2 (S.D. Miss. Jan. 19, 2022).

**MCSAB.** MCSAB is "a state agency with exclusive chartering jurisdiction in the State of Mississippi." MISS. CODE ANN. 37-28-7(1). *See also Araujo v. Bryant*, 283 So. 3d 73, 80 (Miss. 2019) (reaffirming that MCSAB is "a state agency"). Accordingly, there is no question that MCSAB is an "arm" of the State for purposes of Eleventh Amendment sovereign immunity. *See Corn v. Miss. Dep't of Pub. Safety*, 954 F.3d 268, 273 (5th Cir. 2020) (reaffirming that "a state's sovereign immunity in federal court extends to private suits against state agencies, state departments, and other arms of the state"). *See also Henry v. Clarksdale Separate Mun. Sch. Dist.*, Civil Action No. 2:64cv28-MPM, 2017 WL 4701050, at *3 (N.D. Miss. Oct. 19, 2017) (recognizing that State entities implicated in dispute involving creation of charter school would be subject to Eleventh Amendment protections).

Because all four named defendants are "arms" of the State of Mississippi for purposes of Eleventh Amendment sovereign immunity, they cannot be sued in federal court unless Plaintiffs can show that a recognized exception applies. As set out below, Plaintiffs cannot make that showing.

**B. <u>Because no recognized exception to Eleventh Amendment sovereign immunity applies in this case, Defendants cannot be sued in federal court.</u>**

To overcome a state entity's Eleventh Amendment sovereign immunity, a plaintiff must show that one of the following exceptions applies: waiver; congressional abrogation; or the *Ex parte Young*[2] doctrine. *See City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019); *Corn*, 954 F.3d at 274. *See also Hays*, 113 F. Supp. 3d at 891 ("There are three possible exceptions to Eleventh Amendment immunity: (i) valid abrogation by Congress; (ii) waiver or consent to suit by the state; or (iii) the state's amenability to suit under the *Ex parte Young* doctrine.").

As set out below, none of these exceptions applies here. Therefore, all of the claims asserted in Plaintiffs' Complaint are barred by the State of Mississippi's Eleventh Amendment sovereign immunity.

*First*, the State of Mississippi "has not waived its state sovereign immunity and consented to suit in federal court." *See Williams v. Banks*, 956 F.3d 808, 810-11 (5th Cir. 2020) (citing MISS. CODE ANN. § 11-46-5(4)). *See also Necaise v. May*, 700 F. Supp. 3d 469, 480 (S.D. Miss. 2023) ("[T]he State of Mississippi has not waived its sovereign immunity from liability in suits arising under" § 1983.). Therefore, the waiver exception does not apply.

*Second*, "Congress has not abrogated state sovereign immunity under . . . § 1983." *Spec's Family Partners, Ltd. v. Nettles*, 972 F.3d 671, 681 (5th Cir. 2020) (internal quotation marks

---

[2] *Ex parte Young*, 209 U.S. 123 (1908).

omitted, ellipsis in original).  *See also Seay*, 2021 WL 3008595 at *3 (same).  Therefore, the congressional abrogation exception does not apply.

 ***Third***, because Plaintiffs have sued State entities and not individual State officials in their official capacities, the *Ex parte Young* exception does not apply.

 As the Fifth Circuit reaffirmed just last month, for a suit to proceed under *Ex parte Young*, "[a] plaintiff must name individual state officials as defendants in their official capacities." *Healthy Vision Ass'n v. Abbott*, 138 F.4th 385, 396 (5th Cir. 2025) (internal quotation marks omitted).  *See also Tawakkol v. Vasquez*, 87 F.4th 715, 718 (5th Cir. 2023) (same).  Where a plaintiff only sues State boards, "and no members in their official capacities, *Ex parte Young* does not apply," and the plaintiff's claims are barred by Eleventh Amendment sovereign immunity. *Block v. Tex. Bd. of Law Examiners*, 952 F.3d 613, 619-20 (5th Cir. 2020).  *See also Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013) ("Although Raj has asserted claims for injunctive and declaratory relief, he cannot overcome sovereign immunity under *Ex parte Young* because he has named only LSU, LSU Health, and the LSU Board as defendants."); *City of Austin*, 943 F.3d at 1004 ("[T]he City clearly named only the 'Texas Workforce Commission,' a state agency immune to suit, and did not name any individual commissioners.  Thus, the City's suit against the Commission is barred by sovereign immunity.").

 Here, Plaintiffs sued four State boards and no State officials.  Because Plaintiffs' Complaint does not name as defendants any individual State officials in their official capacities, *Ex parte Young* cannot and does not apply as a matter of law.  *See Healthy Vision*, *Tawakkol*, *Block*, *Raj*, and *City of Austin*, *supra*.

 Because none of the recognized exceptions to Eleventh Amendment sovereign immunity applies in this case, all four defendants—as "arms" of the State—are shielded by the State of

Mississippi's sovereign immunity as to all claims asserted in this lawsuit.  Therefore, this Court lacks subject-matter jurisdiction, and Plaintiffs' Complaint should be dismissed in its entirety on this basis alone pursuant to FED. R. CIV. P. 12(b)(1).[3]

## II. ALTERNATIVELY, PLAINTIFFS' CLAIMS AGAINST THE NON-IHL DEFENDANTS SHOULD BE DISMISSED BECAUSE PLAINTIFFS LACK ARTICLE III STANDING AS TO THESE DEFENDANTS.

Federal courts are not "publicly funded forums for the ventilation of public grievances." *See Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 473 (1982).  Lest federal courts devolve "into judicial versions of college debating forums," Article III of the U.S. Constitution requires an actual case or controversy as a necessary predicate to subject-matter jurisdiction—that is, the plaintiff must have standing.  *See id.*

"Standing is not dispensed in gross." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 (2006) (internal quotation marks omitted).  "To the contrary, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) (internal quotation marks omitted).  Further, "plaintiffs must establish standing for each and every provision they challenge." *In re Gee*, 941 F.3d 153, 160 (5th Cir. 2019).  "[F]or every defendant, there must be at least one plaintiff with standing to seek an injunction." *Murthy v. Missouri*, 603 U.S. 43, 61 (2024).

For standing to exist, the plaintiff must show three things:  (1) an injury in fact; (2) a traceable causal connection; and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  All three of these elements are "an indispensable part" of a plaintiff's case. *Abdullah v. Paxton*, 65 F.4th 204, 208 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 188 (2023) (internal

---

[3] It should be noted that as a matter of controlling statutory interpretation, Plaintiffs' claims—all of which are asserted pursuant to 42 U.S.C. § 1983—"are doubly dismissible" pursuant to Rule 12(b)(6) for failure to state a claim "because the State is not a 'person' under [§ 1983]." *Freedom from Religion Found., Inc. v. Mack*, 4 F.4th 306, 311 (5th Cir. 2021) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989)).

quotation marks omitted). Redressability "is 'closely related' to traceability, and the two prongs often overlap." *Toll Bros., Inc. v. Township of Readington*, 555 F.3d 131, 142 (3d Cir. 2009).

While not conceding that Plaintiffs can show an injury in fact that comports with the governing standard in pre-enforcement First Amendment cases, the Non-IHL Defendants submit that the Court need not reach the injury-in-fact inquiry here. That is because—as discussed *infra*— Plaintiffs here cannot show the remaining "indispensable," *Abdullah*, 65 F.4th at 208, elements of *traceability* or *redressability* as to the Non-IHL Defendants. Their claims against the Non-IHL Defendants thus fail for lack of standing.

A. **Plaintiffs' alleged harm is not traceable to the Non-IHL Defendants.**

The second element of standing requires "a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (alterations and ellipses in original) (internal quotation marks omitted). "[I]t is well established that standing cannot exist where the injury 'depends on the unfettered choices made by independent actors not before the court and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict[.]'" *Reule v. Jackson*, 114 F.4th 360, 367 (5th Cir. 2024) (quoting *Lujan*, 504 U.S. at 562), *cert. denied*, 145 S. Ct. 1431 (2025). "The Supreme Court is 'reluctan[t] to endorse standing theories that rest on speculation about the decisions of independent actors.'" *Daves v. Dallas County, Tex.*, 22 F.4th 522, 543 (5th Cir. 2022) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013)). "In such circumstances, the plaintiff must show 'that third parties will likely react in predictable ways.'" *Id.* (quoting *California v. Texas*, 593 U.S. 659, 675 (2021)).

Here, Plaintiffs cannot establish traceability as to the Non-IHL Defendants because the alleged harm can only be fairly traceable to the public colleges and/or schools at which Plaintiffs (or their children) are enrolled, employed, or engaged in organizational activity—not to Defendants.

As alleged in Plaintiffs' Complaint, Plaintiffs here fall into four broad categories: "students, parents, educators, and organizations."  ECF #1 at 4, ¶ 8.  Collectively, these plaintiffs allege numerous purported "harms" resulting from the Mississippi Law.  *Id.* at 26-31, ¶¶ 83-100. These alleged "harms" include the following:

- That the Mississippi Law prohibits certain plaintiffs' speech, chills their freedom of speech, and forces them to engage in self-censorship for fear of "subject[ing] themselves to discipline and termination."  *Id.* at 26, ¶¶ 83-84; 27, ¶¶ 85, 88; 28, ¶ 90; 29, ¶ 94; 30, ¶¶ 97-98.

- That the Mississippi Law prohibits certain plaintiffs from providing information and materials and from maintaining books and other sources in library circulation for the purpose of providing information to teachers, students, and librarians.  *See id.* at 27, ¶¶ 86-88; 28, ¶ 89.

- That the Mississippi Law prohibits certain plaintiffs from obtaining an education "free from discrimination and viewpoint and content censorship"; prohibits them from "receiving protected speech"; and will cause them to "receive an inferior education."  *Id.* at 28, ¶¶ 91-92.

- That certain plaintiffs "may be subjected to sanctions for participating in discussion of concepts prohibited by the challenged law."  *Id.* at 28, ¶ 92.

- That the Mississippi Law will prohibit certain plaintiffs from holding meetings, conferences, and other events and from engaging in certain activities. *Id.* at 29, ¶¶ 93-95.

- That certain plaintiffs "are at risk of losing school funding" as a result of the Mississippi Law." *Id.* at 29, ¶ 96.

- That the Mississippi Law prevents Plaintiffs "from hearing certain prohibited speech." *Id.* at 30, ¶ 98.

Plaintiffs allege that "these harms are caused . . . by the Defendants in this case." *Id.* at 30, ¶ 99. But on its face, the Mississippi Law renders this conclusory allegation implausible, at least as to the Non-IHL Defendants. In reality, Plaintiffs are not harmed by the Non-IHL Defendants because the provisions of the Mississippi Law that Plaintiffs challenge do not direct or authorize the Non-IHL Defendants to take any action against Plaintiffs. Rather, the challenged provisions direct the Non-IHL Defendants' conduct towards the public colleges and schools that the Non-IHL Defendants oversee. If, as Plaintiffs allege, they are "harmed" by the Mississippi Law, such harm is fairly traceable to the educational institutions with which Plaintiffs actually interface— i.e., the institutions that employ and/or educate them—not by the governing State boards that oversee those institutions and have no interaction with Plaintiffs.

As noted *supra*, "plaintiffs must establish standing for each and every provision they challenge." *In re Gee*, 941 F.3d at 160. Plaintiffs here challenge Sections 3(b), 3(f), 3(g), 3(i), 7, 8, and 9 of H.B. 1193. *See id.* at 35, ¶¶ 1-2. The challenged sub-sections of Section 3 require the Non-IHL Defendants to "ensure that each institution, college and public school, as applicable, shall not" do the following: "[e]ngage in divisive concepts" as defined by the Mississippi Law (H.B. 1193, § 3(b)); "[m]aintain any programs . . . or offices that promote diversity, equity and inclusion, endorse divisive concepts or concepts promoting transgender ideology" and related

19

concepts (H.B. 1193, § 3(f)); "[r]equire," as a condition of initial or continuing enrollment, employment, or contract award "any person to participate in diversity, equity and inclusion training," (H.B. 1193, § 3(g)); and "[r]equire any 'diversity training' as defined [by the Mississippi Law] or any other policies or procedures" providing for programs "that focus on increasing awareness or understanding of issues related to race, sex, color, gender identity, sexual orientation or national origin" (H.B. 1193, § 3(i)).  None of these challenged provisions directs or authorizes the Non-IHL Defendants to take any action against Plaintiffs (or any plaintiff's child(ren)).

Likewise, Sections 7, 8, and 9 of H.B. 1193 do not require or authorize the Non-IHL Defendants to take any action against Plaintiffs.  Section 7 requires the Non-IHL Defendants to adopt complaint processes and appropriate policies and procedures for investigating violations of the Mississippi Law (H.B. 1193, §§ 7(1), 7(2)).  Section 7 also requires MSBE to accept filed complaints made against state-operated schools, and to investigate any such complaints and issue findings (H.B. 1193, §§ 7(3)(c),(e), 7(6)).  Section 8 requires the State of Mississippi to withhold the disbursement of certain State funds to public universities, colleges, and schools under certain conditions of noncompliance by those entities, and to establish a uniform process for "the implementation, enforcement and reinstatement of state funds" (H.B. 1193, § 8).  Section 9 does not require or authorize any action by the Non-IHL Defendants at all (H.B. 1193, § 9).

To the extent Plaintiffs' Complaint may be read to allege any plausible facts demonstrating "harm," such harm can only be fairly traceable to the public colleges and/or schools at which Plaintiffs (or their children) are enrolled, employed, or engaged in organizational activity.  This is so for three reasons.

*First*, pursuant to the Mississippi Law, it is these educational institutions—and not the Non-IHL Defendants as the State boards overseeing those institutions—that the Legislature has

assigned responsibility for taking remedial actions designed to cure any violations of H.B. 1193. *See* H.B. 1193, §§ 6, 7(6)(b).  It is those remedial actions that Plaintiffs allege cause (or will cause) them harm.

**Second**, Plaintiffs do not allege that the public colleges and schools with which they interface will not comply with the challenged provisions of the Mississippi Law.  Nor do they show that these institutions are likely to react to the Mississippi Law in any "predictable ways," *Daves*, 22 F.4th at 543, as required to establish traceability.  To the contrary, Plaintiffs allege that the Mississippi Law is "vague, confusing, and contradictory . . . making the law particularly susceptible to arbitrary and discriminatory enforcement."  ECF #1 at 2, ¶ 4.

**Third**, the Mississippi Law requires public colleges and schools to independently comply with its requirements, regardless of the Non-IHL Defendants' efforts to "ensure" their compliance. Pursuant to the Mississippi Law, "[b]eginning in 2026, by July 30 of each year, each institution, college or public school shall submit to their respective boards an annual report summarizing all formal complaints and the dispositions of those investigations and violations.  Any institution, college or public school that is not in compliance with the requirements of this act  at the time the institution, college or public school files the required report shall provide a written statement explaining its failure to comply."  H.B. 1193, § 6.  The institutions themselves are thus required to comply "with the requirements of [the Mississippi Law]," whether the Non-IHL Defendants "ensure" that they do so or not.  Plaintiffs acknowledge as much in their Complaint, alleging that "it appears that schools may penalize teachers, administrators, and students as part of *their statutory mandate* to 'cure' any violations."  ECF #1 at 7, ¶ 29 (emphasis added).

Plaintiffs have not alleged any plausible facts showing that their alleged "harms" are not, or will not be, entirely traceable to the actions of their respective educational institutions, which

are not before the Court. To assume otherwise on the facts pled would require this Court improperly "to endorse standing theories that rest on speculation about the decisions of independent actors." *Daves*, 22 F.4th at 543 (internal quotation marks omitted).

For all these reasons, Plaintiffs have not met their burden to establish a traceable causal connection between any alleged "harm" and any past or prospective action that is fairly traceable to the Non-IHL Defendants. On this basis alone, Plaintiffs lack standing, and this Court lacks subject-matter jurisdiction.

## B. **Plaintiffs' alleged harm is not redressable by an injunction against the Non-IHL Defendants.**

The third element of standing requires the plaintiff to show redressability. *Lujan*, 504 U.S. at 561. "To satisfy redressability, a plaintiff must show that it is *likely*, as opposed to merely *speculative*, that the injury will be redressed by a favorable decision." *Reule*, 114 F.4th at 368 (italics in original) (internal quotation marks omitted). "The relief sought needn't completely cure the injury, however; it's enough if the desired relief would lessen it." *Dobbin Plantersville Water Supply Corp. v. Lake*, 108 F.4th 320, 326 (5th Cir. 2024) (internal quotation marks omitted). "But '[r]elief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court.'" *Id.* (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998)).

The Northern District of Florida considered related issues of redressability in a case involving similarly situated parties disputing the constitutionality of a similar state statute. *See Falls v. Desantis*, Case No. 4:22cv166-MW/MJF, 2023 WL 3568526, at *3-8 (N.D. Fla. May 19, 2023). The court noted that "at the time this case was filed, the Board of Governors had not even proposed any regulation to implement [the challenged statute's] amended provisions, and thus, the likelihood that an injunction against the Board members would directly redress [the plaintiffs']

free speech injury was merely speculative at the time given the Board's general authority to punish constituent institutions rather than individual professors." *Falls*, 2023 WL 3568526 at *7.

Applying the aforementioned redressability principles to the analogous facts of that case, the district court in *Falls* further concluded "that even under a more forgiving motion-to-dismiss standard, Plaintiffs cannot establish that their asserted injuries would be redressed, even partially, by an order enjoining the Board members from sanctioning the school boards that oversee the districts in which Plaintiffs teach." *Id.* at *3. Because an "injunction against the members of the Board of Education, by itself, would not bind the district school boards who [were] not parties to this case," "any redress flowing from such an injunction against the Board members [was] entirely dependent upon the school districts choosing not to comply with the challenged regulation." *Id.* Finding that the plaintiffs had failed to establish redressability, the court dismissed the plaintiffs' complaint for lack of standing. *Id.* at *9.

The same outcome is warranted here. Consistent with the circumstances in *Falls*, at the time Plaintiffs filed their Complaint, none of the Non-IHL Defendants had yet adopted any policies, procedures, or regulations implementing the provisions of the Mississippi Law pertaining to them. *See* ECF #1 at 23, ¶ 74. *See also Davis Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (reaffirming that standing is determined as of the time that "the suit was filed"). Thus, the likelihood that an injunction against the Non-IHL Defendants "would directly redress [Plaintiffs' alleged harms] was merely speculative at the time given [the Non-IHL Defendants'] general authority to punish constituent institutions rather than individual [plaintiffs]." *See Falls*, 2023 WL 3568526 at *7.

Furthermore, as was also the case in *Falls*, it is the educational institutions themselves—not the Non-IHL Defendants—that are "primarily responsible," *Falls*, 2023 WL 3568526 at *3,

for enforcing compliance with the Mississippi Law as it relates to regulating any conduct of Plaintiffs.  *See* H.B. 1193, §§ 6, 7(6)(b).  As set out *supra*, the Mississippi Law requires public colleges and schools to independently comply with its requirements, regardless of the Non-IHL Defendants' efforts to "ensure" their compliance.  *See id.* § 6.  Plaintiffs acknowledge as much in their Complaint, alleging that "it appears that schools may penalize teachers, administrators, and students as part of *their statutory mandate* to 'cure' any violations."  ECF #1 at 7, ¶ 29 (emphasis added).  As was the case in *Falls*, "any redress flowing from . . . an injunction against [Defendants] is entirely dependent upon the [educational institutions] choosing *not* to comply with the challenged [Mississippi Law]."  *Falls*, 2023 WL 3568526 at *3 (italics in original).  Like the plaintiffs in *Falls*, "Plaintiffs cannot establish that their asserted injuries would be redressed, even partially, by an order enjoining [the Non-IHL Defendants] from sanctioning the [educational institutions]" at which Plaintiffs are employed, enrolled, or otherwise engaged.  *See id.*

For all these reasons, Plaintiffs cannot show that the prospect of redressing their alleged harms via relief directed against the Non-IHL Defendants is anything more than speculative at best.  As set forth *supra*, that is not enough to establish redressability.  For this additional reason, Plaintiffs lack standing as to the Non-IHL Defendants, and this Court lacks subject-matter jurisdiction.

As this Court has previously recognized, "[s]tanding to sue is a doctrine rooted in the traditional understanding of a case or controversy."  *Nat'l Ass'n for Advancement of Colored People v. Reeves*, No. 3:23-CV-272-HTW-LGI, 2023 WL 9051275, at *2 (S.D. Miss. Dec. 31, 2023).  To the extent Plaintiffs have "a case or controversy" in connection with the enactment or enforcement of the Mississippi Law, it is not with the Non-IHL Defendants.  If for any reason the

24

Court is not inclined to dismiss Plaintiffs' Complaint as barred by Eleventh Amendment sovereign immunity, Plaintiffs' claims against the Non-IHL Defendants nevertheless fail for lack of standing.

## **CONCLUSION**

For all these reasons, the Court should dismiss Plaintiffs' Complaint in its entirety for lack of subject-matter jurisdiction predicated on Eleventh Amendment sovereign immunity. Alternatively, Plaintiffs' claims against the Non-IHL Defendants should be dismissed for lack of subject-matter jurisdiction predicated on lack of Article III standing.

THIS the 23rd day of June, 2025.

Respectfully submitted,

BOARD OF TRUSTEES OF STATE INSTITUTIONS OF HIGHER LEARNING, MISSISSIPPI COMMUNITY COLLEGE BOARD, MISSISSIPPI STATE BOARD OF EDUCATION, AND MISSISSIPPI CHARTER SCHOOL AUTHORIZER BOARD, DEFENDANTS

By:    LYNN FITCH, ATTORNEY GENERAL
         STATE OF MISSISSIPPI

By:    s/Rex M. Shannon III
         REX M. SHANNON III (MSB #102974)
         Special Assistant Attorney General

REX M. SHANNON III (MSB #102974)
LISA A. REPPETO (MSB #99978)
STATE OF MISSISSIPPI
OFFICE OF THE ATTORNEY GENERAL
CIVIL LITIGATION DIVISION
Post Office Box 220
Jackson, Mississippi  39205-0220
Tel.:  (601) 359-4184
Fax:  (601) 359-2003
rex.shannon@ago.ms.gov
lisa.reppeto@ago.ms.gov

ATTORNEYS FOR DEFENDANTS BOARD OF TRUSTEES OF STATE INSTITUTIONS OF HIGHER LEARNING, MISSISSIPPI COMMUNITY COLLEGE BOARD, MISSISSIPPI

STATE BOARD OF EDUCATION, AND MISSISSIPPI CHARTER SCHOOL AUTHORIZER
BOARD

### CERTIFICATE OF SERVICE

I, Rex M. Shannon III, Special Assistant Attorney General and attorney for the above-named defendants, do hereby certify that I have this date caused to be filed with the Clerk of the Court a true and correct copy of the above and foregoing via the Court's ECF filing system, which sent notification of such filing to all counsel of record.

THIS the 23rd day of June, 2025.

s/Rex M. Shannon III
REX M. SHANNON III