## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**MISSISSIPPI ASSOCIATION OF
EDUCATORS,  ET AL.**                                    **PLAINTIFFS**

**VS.**                                    **CIVIL ACTION NO. 3:25-cv-00417-HTW-LGI**

**BOARD OF TRUSTEES OF STATE
INSTITUTIONS OF HIGHER LEARNING, ET AL.**                **DEFENDANTS**

---

### MEMORANDUM OF AUTHORITIES IN SUPPORT OF NON-IHL DEFENDANTS' AND ATTORNEY GENERAL'S MOTION TO DISMISS AMENDED COMPLAINT [ECF #22] FOR LACK OF SUBJECT-MATTER JURISDICTION

---

### INTRODUCTION

Plaintiffs' Amended Complaint [ECF #22] suffers from jurisdictional defects requiring the dismissal of all claims asserted against the Non-IHL Defendants[1] and the Attorney General.  For starters, all of Plaintiffs' claims against the Non-IHL Defendants fail for lack of Article III standing.  Plaintiff United Campus Workers Southeast Local 3821 ("UCW") further lacks standing to sue any defendant under theories of associational or organizational standing.  Finally, all of Plaintiffs' claims against the Attorney General are barred by Eleventh Amendment sovereign immunity.

To ensure that State educational funds are deployed to *educate*—and not to discriminate or indoctrinate—the Mississippi Legislature during the 2025 regular session enacted House Bill 1193 ("H.B. 1193" or "the Mississippi Law").  The stated purpose of the Mississippi Law is "to prohibit public schools and public postsecondary educational institutions from taking certain actions and engaging in discriminatory practices."  H.B. 1193, § 1 (Ex. A).  To that end, the Mississippi Law

---

[1] *See infra*, note 2.

"seeks to ensure that employment, academic opportunities and student engagement are based solely on individual merit, qualifications and academic performance, without consideration of an individual's race, sex, color, national origin, or expressed opposition to, or refusal to affirm or participate in, diversity, equity and inclusion." *Id.*

The Mississippi Law directs the Board of Trustees of State Institutions of Higher Learning ("the IHL Board"), the Mississippi Community College Board ("MCCB"), the Mississippi State Board of Education ("MSBE"), and the Mississippi Charter School Authorizer Board ("MCSAB") (collectively "State Educational Boards") to ensure that the respective public universities, community colleges, and schools that they oversee do not engage in certain practices that the Legislature has deemed discriminatory. The Mississippi Law does not authorize or direct the State Educational Boards, their respective Board members, or the Attorney General to take curative or remedial actions against professors, teachers, educators, students, or any related faculty/student organizations. Rather, H.B. 1193 charges the constituent educational institutions themselves with sole responsibility for undertaking any such curative or remedial actions that H.B. 1193 requires.

The instant motion to dismiss does not implicate the legality of the Mississippi Law or the merits of Plaintiffs' claims. Rather, it focuses solely on threshold jurisdictional issues—most notably, (1) whether Plaintiffs have Article III standing to sue the Non-IHL Defendants; and (2) whether Plaintiffs' claims against the Attorney General are barred by sovereign immunity. Both issues can only be resolved <u>against</u> a finding of federal subject-matter jurisdiction.

***First***, Plaintiffs' claims against all Defendant Board Members of MCCB, MSBE, and MCSAB (collectively "Non-IHL Defendants"[2]) should be dismissed because Plaintiffs lack Article

---

[2] Specifically, the "Non-IHL Defendants" consist of Defendants John Pigott, in his official capacity as Chair of MCCB; Cheryl Thurmond, Videt Carmichael, Donnie Caughman, Bubba Hudspeth, Dolly Marascalco, Johnny McRight, Luke Montgomery, Will Symmes, and Dianne Watson, all in their official capacities as Members of MCCB; Glen East, in his official capacity as Chair of MSBE; Matt Miller, Lance Evans, Wendi

III standing as to these defendants. As a matter of law at the pleading stage, the burden is on Plaintiffs to state plausible facts establishing the essential "standing" elements of traceability and redressability. Plaintiffs have failed to meet that burden.

For one thing, Plaintiffs' alleged harm is not fairly *traceable* to the Non-IHL Defendants. Pursuant to the Mississippi Law, it is the educational institutions at which Plaintiffs are employed or enrolled—and not the Non-IHL Defendants as members of the State educational boards overseeing those institutions—that the Legislature has assigned responsibility for taking remedial actions designed to cure any violations of H.B. 1193. It is those remedial actions that Plaintiffs allege cause (or will cause) them "harm."

Additionally, Plaintiffs do not allege that the public colleges and schools with which they interface will not comply with the challenged law. Nor do they make the requisite showing that these institutions are likely to react to the law in any predictable ways. Finally, as Plaintiffs acknowledge in their Amended Complaint, the Mississippi Law requires public educational institutions in Mississippi to comply with its provisions whether the Non-IHL Defendants act to ensure that they do so or not. Plaintiffs have not met their burden to establish a traceable causal connection between any alleged "harm" and any past or future action that is fairly traceable to the Non-IHL Defendants.

---

Barrett, Matt Mayo, Bill Jacobs, Ronnie McGehee, Mike Pruitt, Billye Jean Stroud, and Mary Werner, all in their official capacities as Members of MSBE; Marcy Scoggins, in her official capacity as Chair of MCSAB; and Jay Carney, Sandra McKiernan, Erin Meyer, Ben Morgan, Candace Robins, and Jennifer Jackson Whittier, all in their official capacities as Members of MCSAB. The IHL Board member defendants do not concede that Plaintiffs can establish Article III standing as to them. Rather, given the IHL Board's unique management-and-control authority, and without waiving their right to challenge standing in a future filing, the IHL Board member defendants do not join in the instant motion to dismiss.

Relatedly, Plaintiffs' alleged harm is not *redressable* by any relief against the Non-IHL Defendants. At the time Plaintiffs filed their original Complaint [ECF #1]—i.e., the time at which standing must be determined—none of the Non-IHL Defendants had yet adopted any policies, procedures, or regulations implementing the provisions of the Mississippi Law pertaining to them. The likelihood that an injunction against the Non-IHL Defendants would directly redress Plaintiffs' alleged harms was merely speculative at the time given the Non-IHL Defendants' general authority to regulate educational institutions rather than Plaintiffs. Furthermore, it is the educational institutions themselves—not the Non-IHL Defendants—that are primarily responsible for enforcing compliance with H.B. 1193 as it relates to any conduct of Plaintiffs.

Whether any relief awarded against the Non-IHL Defendants is effective in redressing Plaintiffs' alleged harms is dependent upon Plaintiffs' respective educational institutions choosing not to comply with the Mississippi Law in the absence of any efforts of the Non-IHL Defendants to ensure that they comply. Plaintiffs have not alleged plausible facts demonstrating that the educational institutions at which they work or are enrolled intend to forgo compliance in the absence of any such efforts by the Non-IHL Defendants. Thus, Plaintiffs cannot establish that their alleged injuries would be redressed, even partially, by an order enjoining the Non-IHL Defendants from sanctioning constituent educational institutions where Plaintiffs are employed, enrolled, or otherwise engaged. Accordingly, Plaintiffs cannot show that the prospect of redressing their alleged harms via relief directed against the Non-IHL Defendants is anything more than speculative. That is not enough to establish redressability for purposes of constitutional standing.

**Second**, Plaintiffs' claims against the MCSAB Board member defendants should be dismissed for the additional reason that no plaintiff has standing to sue those defendants. No plaintiff alleges that they interface (or will interface) in any way with any charter school. Plaintiffs

4

have not alleged any plausible facts demonstrating any injury in fact caused (or to be caused) to them by MCSAB, which oversees the authorization of charter schools exclusively. Nor have Plaintiffs alleged any facts demonstrating a traceable causal connection between any alleged harm and MCSAB, or that any relief directed against the MCSAB Board members will redress any alleged harm.

*Third*, Plaintiff UCW's claims against all defendants should be dismissed because UCW lacks standing to sue any defendant. UCW has failed to establish *associational* standing because the Amended Complaint contains no allegations demonstrating that any part of UCW's mission is related to enforcing its members' First and/or Fourteenth Amendment rights. In fact, the Amended Complaint does not speak to UCW's purpose at all. UCW has also failed to establish *organizational* standing because the Amended Complaint contains no allegations demonstrating that UCW has standing to sue in its own right. Significantly, Plaintiffs' Amended Complaint contains no allegation that the Mississippi Law has caused UCW to divert any resources; chilled its speech as an organization; or otherwise caused it any alleged harm as an organization, separate and apart from the harm alleged by its members.

*Finally*, Plaintiffs' claims against the Attorney General should be dismissed because they are barred by Eleventh Amendment sovereign immunity. To overcome sovereign immunity as to the Attorney General, Plaintiffs must demonstrate that she is a proper defendant under *Ex parte Young*. Because the Attorney General's authority to enforce the challenged provisions of the Mississippi Law is discretionary, *Ex parte Young* can only apply if Plaintiffs have alleged plausible facts demonstrating a reasonable prospect of how the Attorney General's discretion will be exercised. No such facts are alleged in the Amended Complaint. Thus, Plaintiffs have not satisfied

their burden under *Ex parte Young*, and their claims against the Attorney General are barred by Eleventh Amendment sovereign immunity.

For all these reasons, and as further set forth herein, the Non-IHL Defendants and the Attorney General move to dismiss all claims asserted against them in the Amended Complaint.

## <u>BACKGROUND</u>

**Legal Background.**  This case implicates fundamental jurisdictional principles of Article III standing.  For standing to exist, the plaintiff must show—in addition to an injury in fact—both a traceable causal connection and redressability.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  To satisfy the traceability requirement, a plaintiff must show that the alleged harm is "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Id.* at 560 (alterations and ellipses in original) (internal quotation marks omitted).  "To satisfy redressability, a plaintiff must show that it is *likely*, as opposed to merely *speculative*, that the injury will be redressed by a favorable decision." *Reule v. Jackson*, 114 F.4th 360, 368 (5th Cir. 2024) (ultimately quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)) (italics in original) (internal quotation marks omitted).

This case further implicates jurisdictional principles of Eleventh Amendment sovereign immunity.  "To be a proper defendant under *Ex parte Young*, a state official 'must have some connection with the enforcement of' the law being challenged." *Mi Familia Vota v. Ogg*, 105 F.4th 313, 325 (5th Cir. 2024) (quoting *Ex parte Young*, 209 U.S. 123, 157 (1908)).  "Discretionary authority to act, on its own, is insufficient to give rise to a particular duty to act, i.e., a sufficient connection [to] enforcement." *Id.* at 327 (internal quotation marks omitted) (alteration in original).  To establish the requisite "sufficient connection" triggering *Ex parte Young* when the challenged

provision grants a state official discretionary authority, a plaintiff must "connect[ ] an official's discretion to actual enforcement by indicating some reasonable prospect of how that discretion is to be exercised." *Healthy Vision Ass'n v. Abbott*, 138 F.4th 385, 397 (5th Cir. 2025) (internal quotation marks omitted) (alteration in original).

**Factual Background.** The Mississippi Law took effect upon the Governor's signature on April 17, 2025, and is now state law. ECF #22 at 2-3, ¶ 2; 5, ¶ 8. Section 1 of the Mississippi Law states that its purpose "is to prohibit public schools and public postsecondary educational institutions from taking certain actions and engaging in discriminatory practices." H.B. 1193, § 1 (Ex. A). Relatedly, the Mississippi Law "seeks to ensure that employment, academic opportunities and student engagement are based solely on individual merit, qualifications and academic performance, without consideration of an individual's race, sex, color, national origin, or expressed opposition to, or refusal to affirm or participate in, diversity, equity and inclusion." *Id.*

Section 2 of the Mississippi Law defines certain terms used in H.B. 1193, including "diversity, equity and inclusion," "diversion, equity and inclusion office," "diversity training," and "divisive concepts," among others. *Id.*, § 2.

Section 3 requires the IHL Board, MCCB, MSBE, and MCSAB to "ensure" that "each institution, college and public school" in Mississippi "shall not" engage in specified activities that the Legislature has deemed to constitute discriminatory practices in connection with employment, academic opportunities, and student engagement in the public education arena. *See id.*, § 3. These activities include, but are not limited to, the following: "[e]ngag[ing] in divisive concepts" as defined by the Mississippi Law, *id.*, § 3(b); "[m]aintain[ing] any programs . . . or offices that promote diversity, equity and inclusion, endorse divisive concepts or concepts promoting transgender ideology" and related concepts, *id.*, § 3(f); "[r]equir[ing]," as a condition of initial or

continuing enrollment, employment, or contract award "any person to participate in diversity, equity and inclusion training," *id.*, § 3(g); and "[r]equir[ing] any 'diversity training' as defined [by the Mississippi Law] or any other policies or procedures" providing for programs "that focus on increasing awareness or understanding of issues related to race, sex, color, gender identity, sexual orientation or national origin," *id.*, § 3(i).

Section 4 requires the IHL Board, MCCB, MSBE, and MCSAB to "recognize, teach and establish policies and curriculum in accordance with the definitions of the terms 'female,' 'male,' and 'sex' as provided" for in existing Mississippi statutes. *Id.*, § 4.

Section 5 provides a list of certain activities to which the Mississippi Law does not apply, including such matters as programs for military veterans and students with disabilities, *id.*, § 5(a); scholarly research and creative work by students, faculty, employees, or staff of public educational institutions, "or the dissemination of that work," *id.*, § 5(b); student organization activities that do not involve the use of state funds, *id.* § 5(c); and academic accreditation activities, *id.*, § 5(j).

Section 6 provides that "[b]eginning in 2026, by July 30 of each year, each institution, college or public school shall submit to their respective boards an annual report summarizing all formal complaints and the dispositions of those investigations and violations. Any institution, college or public school that is not in compliance with the requirements of this act at the time the institution, college or public school files the required report shall provide a written statement explaining its failure to comply." *Id.*, § 6.

Section 7 requires the IHL Board, MCCB, MSBE, and MCSAB to adopt complaint processes and appropriate policies and procedures for investigating violations of the Mississippi Law. *Id.*, §§ 7(1), 7(2). Section 7 also requires the IHL Board and MSBE to accept filed complaints made against state institutions of higher learning and state-operated schools,

respectively, and to investigate any such complaints and issue findings. *Id.*, §§ 7(3)(c),(e), 7(6). It further requires public universities, colleges, and schools to cure any violations of the Mississippi Law and provides for a private right of action to seek judicial review in Chancery Court. *Id.*, §§ 7(6)(b), 7(7).

Section 8 requires the State of Mississippi to withhold the disbursement of certain State funds to public universities, colleges, and schools under certain conditions of noncompliance by those entities. *Id.*, §§ 8(1), 8(2). It further provides for the establishment of a uniform process for "the implementation, enforcement and reinstatement of state funds." *Id.*, § 8(3).

Section 9 provides a process for an aggrieved complainant to notify the Attorney General of a violation or potential violation of the Mississippi Law. *Id.*, § 9(1)(a). It further authorizes the Attorney General, upon receipt of such notification, to file an application for a writ of mandamus in Chancery Court for injunctive relief to compel compliance by the educational institution in violation. *Id.*, § 9(1)(b).

Section 10 provides for severability, *id.*, § 10, while Section 11 provides that the Mississippi Law "shall take effect and be in force from and after its passage," *id.* § 11.

**Procedural Background.** On June 23, 2025, Plaintiffs filed an *Amended Complaint for Injunctive and Declaratory Relief* ("Amended Complaint") against the IHL Board, MCCB, MSBE, and MCSAB, all of their respective Board members (in their official capacities), and Attorney General Lynn Fitch (in her official capacity).[3] ECF #22. As alleged in the Amended Complaint, Plaintiffs fall into four broad categories: "students, parents, educators, and organizations." ECF #22 at 5, ¶ 8. As more fully set forth *infra*, Plaintiffs allege that they are and will be harmed by

---

[3] Plaintiffs subsequently voluntarily dismissed their claims against the four State Educational Boards, *viz.*, the IHL Board, MCCB, MSBE, and MCSAB. *See* ECF #32.

the Mississippi Law in various ways that they claim adversely impact their freedom of speech. *Id.* at 28-34, ¶¶ 88-107.

Against all defendants, Plaintiffs purport to assert claims pursuant to 42 U.S.C. § 1983, *id.* at 5, ¶ 9, for alleged violations of their First and Fourteenth Amendment rights. Specifically, Plaintiffs allege that certain provisions of the Mississippi Law violate their "First Amendment Right to Speak" (**Count One**) and their "First Amendment Right to Receive Information" (**Count Two**). *Id.* at 34-35, §§ 108-14. They further purport to assert claims for "First Amendment Loss of Student Funding" (**Count Three**); "First and Fourteenth Amendment Vagueness" (**Count Four**); "Fourteenth Amendment Equal Protection" (**Count Five**); and "Fourteenth Amendment Due Process Violation Stemming From the Withdrawal of State Funding and Closing of the Schools" (**Count Six**). *Id.* at 35-37, ¶¶ 115-23.

As for relief, Plaintiffs seek "[a] declaration that Sections 3(b), 3(f), 3(g), and 3(i) and Sections 7, 8, and 9 of [the Mississippi Law] violate the First and Fourteenth Amendments to the United States Constitution." *Id.* at 38, ¶ 1. They further seek "[a] preliminary and permanent injunction preventing the defendants and any other individuals and entities acting in concert with them from enforcing Sections 3(b), 3(f), 3(g), and 3(i) and Sections 7, 8, and 9 of [the Mississippi Law]." *Id.* at 38, ¶ 2.

Pursuant to Rule 12(b)(1), the Non-IHL Defendants and the Attorney General timely file the instant motion to dismiss Plaintiffs' Amended Complaint for lack of subject-matter jurisdiction predicated on lack of Article III standing and Eleventh Amendment sovereign immunity.

## STANDARD FOR DISMISSAL

**Lack of Article III standing.** Subject-matter jurisdiction fails where the plaintiff lacks Article III standing. *See Stallworth v. Bryant*, 936 F.3d 224, 232 (5th Cir. 2019). Accordingly,

motions to dismiss for lack of standing are also brought pursuant to Rule 12(b)(1). *Moore v. Bryant*, 853 F.3d 245, 248 n.2 (5th Cir. 2017). "Plaintiffs always have the burden to establish standing." *Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017). "Where, as here, the movant mounts a 'facial attack' on jurisdiction based only on the allegations in the complaint, the court simply considers the sufficiency of the allegations in the complaint because they are presumed to be true." *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 533 (5th Cir. 2016) (internal quotation marks omitted). "[I]f the plaintiff does not carry his burden clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute, then dismissal for lack of standing is appropriate." *Stallworth*, 936 F.3d at 230 (internal quotation marks omitted).

Faced with a challenge to Article III standing at the pleading stage, the "plaintiffs have the burden of stating 'a plausible set of facts establishing jurisdiction.'" *Williams v. Bienville Orthopaedic Specialists, LLC*, 737 F. Supp. 3d 411, 423 (S.D. Miss. 2024) (quoting *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012)). *See also McMahon v. Fenves*, 946 F.3d 266, 270 (5th Cir. 2020) (same). "At the preliminary injunction stage," however, "the plaintiff[s] must make a 'clear showing' that [they are] 'likely' to establish each element of standing." *Murthy v. Missouri*, 603 U.S. 43, 58 (2024). *See also Barber*, 860 F.3d at 352 (same).

**Eleventh Amendment sovereign immunity.** Subject-matter jurisdiction also fails where the plaintiff's claims are barred by the Eleventh Amendment. *Sissom v. Univ. of Tex. High Sch.*, 927 F.3d 343, 346-49 (5th Cir. 2019). Motions to dismiss predicated on Eleventh Amendment sovereign immunity are accordingly brought pursuant to Rule 12(b)(1). *See id.* at 346. Where the defendant invokes the Eleventh Amendment to assert a facial attack on subject-matter jurisdiction, the Court's review is limited to the allegations in the complaint. *See Shockley v. Univ. of Tex. Med. Branch*, Civil Action No. 3:06-CV-0223-K, 2007 WL 1976460, at *2 (N.D. Tex. July 1, 2007). "A

facial attack is valid if from the face of the pleadings, the court can determine it lacks subject matter jurisdiction." *Rodriguez v. Tex. Comm'n of Arts*, 992 F. Supp. 876, 878 (N.D. Tex. 1998). "Because sovereign immunity is a jurisdictional question, the plaintiff has the burden to demonstrate it does not apply." *Lewis v. Csaszak*, No. 1:20-CV-256-TBM-RPM, 2022 WL 4483830, at *3 (S.D. Miss. Sept. 27, 2022).

## ARGUMENT

## I. PLAINTIFFS' CLAIMS AGAINST THE NON-IHL DEFENDANTS SHOULD BE DISMISSED BECAUSE ALL PLAINTIFFS LACK STANDING AS TO THE NON-IHL DEFENDANTS.

"Standing is not dispensed in gross." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 (2006) (internal quotation marks omitted). "To the contrary, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) (internal quotation marks omitted). Further, "plaintiffs must establish standing for each and every provision they challenge." *In re Gee*, 941 F.3d 153, 160 (5th Cir. 2019). "[F]or every defendant, there must be at least one plaintiff with standing to seek an injunction." *Murthy v. Missouri*, 603 U.S. 43, 61 (2024).

For standing to exist, the plaintiff must show three things: (1) an injury in fact; (2) a traceable causal connection; and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). All three of these elements are "an indispensable part" of a plaintiff's case. *Abdullah v. Paxton*, 65 F.4th 204, 208 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 188 (2023) (internal quotation marks omitted). Redressability "is 'closely related' to traceability, and the two prongs often overlap." *Toll Bros., Inc. v. Township of Readington*, 555 F.3d 131, 142 (3d Cir. 2009).

While not conceding that Plaintiffs can show an injury in fact that comports with the governing standard in pre-enforcement First Amendment cases, the Non-IHL Defendants submit

that the Court need not reach the injury-in-fact inquiry here.  That is because—as discussed *infra*—Plaintiffs here cannot show the remaining "indispensable," *Abdullah*, 65 F.4th at 208, elements of *traceability* or *redressability* as to the Non-IHL Defendants.  Their claims against the Non-IHL Defendants thus fail for lack of standing.

### A.  **Plaintiffs' alleged harm is not traceable to the Non-IHL Defendants.**

The second element of standing requires "a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court."  *Lujan*, 504 U.S. at 560 (alterations and ellipses in original) (internal quotation marks omitted).  "[I]t is well established that standing cannot exist where the injury 'depends on the unfettered choices made by independent actors not before the court and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict[.]'"  *Reule v. Jackson*, 114 F.4th 360, 367 (5th Cir. 2024) (quoting *Lujan*, 504 U.S. at 562), *cert. denied*, 145 S. Ct. 1431 (2025).  "The Supreme Court is 'reluctan[t] to endorse standing theories that rest on speculation about the decisions of independent actors.'"  *Daves v. Dallas County, Tex.*, 22 F.4th 522, 543 (5th Cir. 2022) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013)).  "In such circumstances, the plaintiff must show 'that third parties will likely react in predictable ways.'"  *Id.* (quoting *California v. Texas*, 593 U.S. 659, 675 (2021)).

Here, Plaintiffs cannot establish traceability as to the Non-IHL Defendants because the alleged harm can only be fairly traceable to the public community colleges and/or schools at which Plaintiffs (or their children) are enrolled, employed, or engaged in organizational activity—not to the Non-IHL Defendants.

As alleged in Plaintiffs' Amended Complaint, Plaintiffs here fall into four broad categories: "students, parents, educators, and organizations."  ECF #22 at 5, ¶ 8.  Collectively, these plaintiffs allege numerous purported "harms" resulting from the Mississippi Law.  *Id.* at 28-33, ¶¶ 88-106.  These alleged "harms" include the following:

- That the Mississippi Law prohibits certain plaintiffs' speech, chills their freedom of speech, and forces them to engage in self-censorship for fear of "subject[ing] themselves to discipline and termination."  *Id.* at 28, ¶¶ 88-89; 29, ¶¶ 90, 93; 30, ¶ 95; 31, ¶ 99; 32, ¶¶ 102-03.

- That the Mississippi Law prohibits certain plaintiffs from providing information and materials and from maintaining books and other sources in library circulation for the purpose of providing information to teachers, students, and librarians.  *See id.* at 29, ¶¶ 91-93; 30, ¶ 94.

- That the Mississippi Law prohibits certain plaintiffs from obtaining an education "free from discrimination and viewpoint and content censorship"; prohibits them from "receiving protected speech"; and will cause them to "receive an inferior education."  *Id.* at 30, ¶¶ 96-97.

- That certain plaintiffs "may be subjected to sanctions for participating in discussion of concepts prohibited by the challenged law."  *Id.* at 30, ¶ 97.

- That the Mississippi Law will prohibit certain plaintiffs from holding meetings, conferences, and other events and from engaging in certain activities.  *Id.* at 31, ¶¶ 98-100.

- That certain plaintiffs "are at risk of losing school funding" as a result of the Mississippi Law."  *Id.* at 31, ¶ 101.

- That the Mississippi Law prevents Plaintiffs "from hearing certain prohibited speech." *Id.* at 32, ¶ 103.

Plaintiffs allege that "these harms are caused . . . by the Defendants in this case." *Id.* at 32, ¶ 104. But on its face, the Mississippi Law renders this conclusory allegation implausible, at least as to the Non-IHL Defendants. In reality, Plaintiffs are not harmed by the Non-IHL Defendants because the provisions of the Mississippi Law that Plaintiffs challenge do not direct or authorize the Non-IHL Defendants to take any action against Plaintiffs. Rather, the challenged provisions direct the Non-IHL Defendants' conduct towards the public community colleges and schools that the Non-IHL Defendants oversee. If, as Plaintiffs allege, they are "harmed" by the Mississippi Law, such harm is fairly traceable to the educational institutions with which Plaintiffs actually interface—i.e., the institutions that employ and/or educate them—not by the governing State boards that oversee those institutions and have no interaction with Plaintiffs or any plaintiff's children.

As noted *supra*, "plaintiffs must establish standing for each and every provision they challenge." *In re Gee*, 941 F.3d at 160. Plaintiffs here challenge Sections 3(b), 3(f), 3(g), 3(i), 7, 8, and 9 of H.B. 1193. *See* ECF #22 at 38, ¶¶ 1-2. The challenged sub-sections of Section 3 require the Non-IHL Defendants to "ensure that each institution, college and public school, as applicable, shall not" do the following: "[e]ngage in divisive concepts" as defined by the Mississippi Law (H.B. 1193, § 3(b)); "[m]aintain any programs . . . or offices that promote diversity, equity and inclusion, endorse divisive concepts or concepts promoting transgender ideology" and related concepts (H.B. 1193, § 3(f)); "[r]equire," as a condition of initial or continuing enrollment, employment, or contract award "any person to participate in diversity, equity and inclusion training," (H.B. 1193, § 3(g)); and "[r]equire any 'diversity training' as

defined [by the Mississippi Law] or any other policies or procedures" providing for programs "that focus on increasing awareness or understanding of issues related to race, sex, color, gender identity, sexual orientation or national origin" (H.B. 1193, § 3(i)).  None of these challenged provisions directs or authorizes the Non-IHL Defendants to take any action against Plaintiffs (or any plaintiff's child(ren)).

Likewise, Sections 7, 8, and 9 of H.B. 1193 do not require or authorize the Non-IHL Defendants to take any action against Plaintiffs.  Section 7 requires the Non-IHL Defendants to adopt complaint processes and appropriate policies and procedures for investigating violations of the Mississippi Law (H.B. 1193, §§ 7(1), 7(2)).  Section 7 also requires MSBE to accept filed complaints made against state-operated schools, and to investigate any such complaints and issue findings (H.B. 1193, §§ 7(3)(c),(e), 7(6)).  Section 8 requires the State of Mississippi to withhold the disbursement of certain State funds to public universities, colleges, and schools under certain conditions of noncompliance by those entities, and to establish a uniform process for "the implementation, enforcement and reinstatement of state funds" (H.B. 1193, § 8).  Section 9 does not require or authorize any action by the Non-IHL Defendants at all (H.B. 1193, § 9).

To the extent Plaintiffs' Amended Complaint may be read to allege any plausible facts demonstrating "harm," such harm can only be fairly traceable to the public community colleges and/or schools at which Plaintiffs (or their children) are enrolled, employed, or engaged in organizational activity.  This is so for three reasons.

*First*, pursuant to the Mississippi Law, it is these educational institutions—and not the Non-IHL Defendants as the State boards overseeing those institutions—that the Legislature has assigned responsibility for taking remedial actions designed to cure any violations of H.B. 1193.

*See* H.B. 1193, §§ 6, 7(6)(b).  It is those remedial actions that Plaintiffs allege cause (or will cause) them harm.

**Second**, Plaintiffs do not allege that the public community colleges and schools with which they interface will not comply with the challenged provisions of the Mississippi Law.  Nor do they show that these institutions are likely to react to the Mississippi Law in any "predictable ways," *Daves*, 22 F.4th at 543, as required to establish traceability.  To the contrary, Plaintiffs allege that the Mississippi Law is "vague, confusing, and contradictory . . . making the law particularly susceptible to arbitrary and discriminatory enforcement."  ECF #22 at 3, ¶ 4.

**Third**, the Mississippi Law requires public colleges and schools to independently comply with its requirements, regardless of the Non-IHL Defendants' efforts to "ensure" their compliance.  Pursuant to the Mississippi Law, "[b]eginning in 2026, by July 30 of each year, each institution, college or public school shall submit to their respective boards an annual report summarizing all formal complaints and the dispositions of those investigations and violations.  Any institution, college or public school that is not in compliance with the requirements of this act  at the time the institution, college or public school files the required report shall provide a written statement explaining its failure to comply."  H.B. 1193, § 6.  The institutions themselves are thus required to comply "with the requirements of [the Mississippi Law]," whether the Non-IHL Defendants "ensure" that they do so or not.  Plaintiffs acknowledge as much in their Amended Complaint, alleging that "it appears that schools may penalize teachers, administrators, and students as part of *their statutory mandate* to 'cure' any violations."  ECF #22 at 9, ¶ 34 (emphasis added).

Plaintiffs have not alleged any plausible facts showing that their alleged "harms" are not, or will not be, entirely traceable to the actions of their respective educational institutions, which are not before the Court.  To assume otherwise on the facts pled would require this Court

17

improperly "to endorse standing theories that rest on speculation about the decisions of independent actors." *Daves*, 22 F.4th at 543 (internal quotation marks omitted).

For all these reasons, Plaintiffs have not met their burden to establish a traceable causal connection between any alleged "harm" and any past or prospective action that is fairly traceable to the Non-IHL Defendants.  On this basis alone, Plaintiffs lack standing as to these defendants, and this Court lacks subject-matter jurisdiction.

**B.** <u>**Plaintiffs' alleged harm is not redressable by an injunction against the Non-IHL Defendants.**</u>

The third element of standing requires the plaintiff to show redressability.  *Lujan*, 504 U.S. at 561.  "To satisfy redressability, a plaintiff must show that it is *likely*, as opposed to merely *speculative*, that the injury will be redressed by a favorable decision."  *Reule*, 114 F.4th at 368 (italics in original) (internal quotation marks omitted).  "The relief sought needn't completely cure the injury, however; it's enough if the desired relief would lessen it."  *Dobbin Plantersville Water Supply Corp. v. Lake*, 108 F.4th 320, 326 (5th Cir. 2024) (internal quotation marks omitted).  "But '[r]elief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court.'"  *Id.* (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998), *abrogation on other grounds recognized by Riley v. Bondi*, 606 U.S. ----, 2025 WL 1758502 (June 26, 2025)).

The Northern District of Florida considered related issues of redressability in a case involving similarly situated parties disputing the constitutionality of a similar state statute.  *See Falls v. Desantis*, Case No. 4:22cv166-MW/MJF, 2023 WL 3568526, at *3-8 (N.D. Fla. May 19, 2023).  The court noted that "at the time this case was filed, the Board of Governors had not even proposed any regulation to implement [the challenged statute's] amended provisions, and thus, the likelihood that an injunction against the Board members would directly redress [the plaintiffs']

free speech injury was merely speculative at the time given the Board's general authority to punish constituent institutions rather than individual professors." *Falls*, 2023 WL 3568526 at \*7.

Applying the aforementioned redressability principles to the analogous facts of that case, the district court in *Falls* further concluded "that even under a more forgiving motion-to-dismiss standard, Plaintiffs cannot establish that their asserted injuries would be redressed, even partially, by an order enjoining the Board members from sanctioning the school boards that oversee the districts in which Plaintiffs teach." *Id.* at \*3. Because an "injunction against the members of the Board of Education, by itself, would not bind the district school boards who [were] not parties to this case," "any redress flowing from such an injunction against the Board members [was] entirely dependent upon the school districts choosing not to comply with the challenged regulation." *Id.* Finding that the plaintiffs had failed to establish redressability, the court dismissed the plaintiffs' complaint for lack of standing. *Id.* at \*9.

The same outcome is warranted here. Consistent with the circumstances in *Falls*, at the time Plaintiffs filed their original Complaint, see ECF #1, none of the Non-IHL Defendants had yet adopted any policies, procedures, or regulations implementing the provisions of the Mississippi Law pertaining to them. *See* ECF #22 at 25, ¶ 79. *See also Davis Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (reaffirming that standing is determined as of the time that "the suit was filed"). Thus, the likelihood that an injunction against the Non-IHL Defendants "would directly redress [Plaintiffs' alleged harms] was merely speculative at the time given [the Non-IHL Defendants'] general authority to punish constituent institutions rather than individual [plaintiffs]." *See Falls*, 2023 WL 3568526 at \*7.

Furthermore, as was also the case in *Falls*, it is the educational institutions themselves— not the Non-IHL Defendants—that are "primarily responsible," *Falls*, 2023 WL 3568526 at \*3,

for enforcing compliance with the Mississippi Law as it relates to regulating any conduct of Plaintiffs. *See* H.B. 1193, §§ 6, 7(6)(b). As set out *supra*, the Mississippi Law requires public colleges and schools to independently comply with its requirements, regardless of the Non-IHL Defendants' efforts to "ensure" their compliance. *See id.* § 6. Plaintiffs acknowledge as much in their Amended Complaint, alleging that "it appears that schools may penalize teachers, administrators, and students as part of *their statutory mandate* to 'cure' any violations." ECF #22 at 9, ¶ 34 (emphasis added). As was the case in *Falls*, "any redress flowing from . . . an injunction against [Defendants] is entirely dependent upon the [educational institutions] choosing *not* to comply with the challenged [Mississippi Law]." *Falls*, 2023 WL 3568526 at *3 (italics in original). Like the plaintiffs in *Falls*, "Plaintiffs cannot establish that their asserted injuries would be redressed, even partially, by an order enjoining [the Non-IHL Defendants] from sanctioning the [institutions]" at which Plaintiffs are employed, enrolled, or otherwise engaged. *See id.*

For all these reasons, Plaintiffs cannot show that the prospect of redressing their alleged harms via relief directed against the Non-IHL Defendants is anything more than speculative at best. As set forth *supra*, that is not enough to establish redressability. For this additional reason, Plaintiffs lack standing as to the Non-IHL Defendants.

Because Plaintiffs have failed to establish Article III standing as to the Non-IHL Defendants, this Court lacks subject-matter jurisdiction as to these defendants. They are thus entitled to dismissal from this lawsuit.

## II. PLAINTIFFS' CLAIMS AGAINST THE MCSAB BOARD MEMBER DEFENDANTS SHOULD BE DISMISSED BECAUSE NO PLAINTIFF HAS STANDING TO SUE THESE DEFENDANTS.

Beyond alleging that MCSAB "is made up of seven members," "is an independent state agency that holds exclusive chartering jurisdiction in Mississippi," and that its "mission . . . is to

authorize and oversee charter schools," ECF #22 at 8, ¶ 26, Plaintiffs' Amended Complaint does not contain any allegations directed to MCSAB or its Board members.  No plaintiff alleges that they are a teacher, instructor, employee, student, parent, or organization employed by, enrolled at, or otherwise engaged or affiliated in any way with any charter school.  Nor does any plaintiff allege that any of its members have any such relationship or affiliation with any charter school.

There being no plaintiff who alleges that they interface (or will interface) in any way with any charter school, Plaintiffs have not alleged any plausible facts demonstrating any injury in fact caused (or to be caused) to them by MCSAB, which oversees the authorization of *charter schools exclusively*.  *See* MISS. CODE ANN. § 37-28-7.  *See also* ECF #22 at 8, ¶ 26.  Nor have Plaintiffs alleged any plausible facts demonstrating a traceable causal connection between any alleged harm and MCSAB, or that any relief directed against the MCSAB Board member defendants will redress any alleged harm.  For this additional reason, Plaintiffs lack standing as to the MCSAB Board member defendants, and all claims against those defendants should be dismissed.

## III. PLAINTIFF UCW'S CLAIMS AGAINST ALL DEFENDANTS SHOULD BE DISMISSED BECAUSE UCW LACKS STANDING TO SUE ANY DEFENDANT.

An association/organization can satisfy the Article III standing requirement under either of "two theories, appropriately called 'associational standing' and 'organizational standing.'" *Vote.Org v. Callanen*, 39 F.4th 297, 303 n.2 (5th Cir. 2022) (quoting *OCA-Greater Houston v. Texas*, 867 F.3d 604, 610 (5th Cir. 2017)) (internal quotation marks omitted).  "While associational standing allows an association to raise claims based on injuries to its members, organizational standing allows an association to raise claims based on injuries to the association itself." *NetChoice, L.L.C. v. Fitch*, 134 F.4th 799, 805 n.15 (5th Cir. 2025).

To establish "associational standing" to sue on behalf of its members, an organization must show that it "seeks to vindicate interests germane to its purpose."  *NetChoice*, 134 F.4th at 804.

"The germaneness requirement is undemanding and requires mere pertinence between the litigation at issue and the organization's purpose" *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550 n.2 (5th Cir. 2010) (internal quotation marks omitted). Nevertheless, even under the "mere pertinence" standard, "organizations do not have limitless standing to challenge laws that fall outside the scope of their mission." *Int'l Alliance of Theater Stage Employees Local 927 v. Fervier*, Civil Action No. 1:23-CV-04929-JPB, 2025 WL 747513, at *5, *6 n.12 (N.D. Ga. Mar. 7, 2025) ("Completely missing from the Complaint is any allegation that any part of Plaintiff's mission is related to enforcing the voting rights of its members or evidence that Plaintiff's members joined the organization to 'vindicate' their voting rights."). Where a union fails to allege sufficient facts in its complaint to demonstrate that the interests at stake in the litigation are germane to its purpose, it fails to establish associational standing. *See Am. Fed'n of State, County and Mun. Employees, Council 25 v. Land*, 583 F. Supp. 2d 840, 844 n.3 (E.D. Mich. 2008). District courts in the Fifth Circuit have not hesitated to reject arguments for associational standing where "the interests Plaintiff seeks to protect . . . are not germane to its purpose . . . ." *See, e.g., Optimus Steel, LLC v. U.S. Army Corps of Engineers*, 492 F. Supp. 3d 701, 718 (E.D. Tex. 2020).

Here, UCW has failed to establish associational standing because the Amended Complaint contains no allegations demonstrating that any part of UCW's mission is related to enforcing its members' First and/or Fourteenth Amendment rights. In fact, the Amended Complaint does not speak to UCW's purpose at all. Plaintiffs allege only that UCW "is a union representing over 4,800 members across eight states, including 237 members in Mississippi," and that these members "include faculty and graduate students on the campuses of" several State universities. ECF #22 at 6, ¶ 13. Having failed to plead any facts showing that any part of its mission is related to enforcing

22

its members' First or Fourteenth Amendment rights—or that its members joined its ranks to vindicate such rights—UCW has failed to establish associational standing.

Nor has UCW established organizational standing. An organization "can establish standing in its own name if it meets the same standing test that applies to individuals." *OCA-Greater Houston v. Texas*, 867 F.3d 604, 610 (5th Cir. 2017) (internal quotation marks omitted). An organization may plead the requisite injury in fact for Article III standing purposes by alleging that a "diversion of resources [in response to a defendant's conduct] concretely and perceptibly impairs the organization's ability to carry out its purpose," and further "explain[ing] how [the organization's] activities were canceled, postponed, or otherwise curtailed" in response the defendant's conduct. *See La. Fair Housing Action Ctr., Inc. v. Azalea Garden Props., L.L.C.*, 82 F.4th 345, 353 (5th Cir. 2023) (cleaned up). Alternatively, an organization may attempt to establish standing via allegations that "the threatened enforcement of [a state law] chills [its] speech." *See Tex. State LULAC v. Elfant*, 52 F.4th 248, 256 (5th Cir. 2022).

Here, UCW has failed to establish organizational standing because the Amended Complaint contains no allegations demonstrating that UCW has standing to sue in its own right. As noted above, UCW alleges that it "is a union representing over 4,800 members across eight states, including 237 members in Mississippi," and that these members "include faculty and graduate students on the campuses of" several State universities. ECF #22 at 6, ¶ 13. All of the remaining allegations made in connection with UCW are made in reference to UCW's *members* and <u>not</u> to UCW as an *organization*. *See id.* at 9-10, ¶ 35 (referencing "members of Plaintiffs MAE and UCW"); 28, ¶ 88 (referencing "the teacher members of the plaintiff organizations, the MAE and UCW"); 28, ¶ 89 (referencing "many members of the MAE and UCW" and "some members of the MAE and UCW"); 29, ¶ 90 (referencing "various members of the MAE and

UCW"); 29, ¶ 93 (referencing "[t]he administration members of the plaintiff organizations MAE and UCW" and "[s]ome administration members of the MAE and UCW").  Plaintiffs' Amended Complaint contains no allegation that the Mississippi Law has caused UCW to divert any resources; chilled its speech as an organization; or otherwise caused it any alleged harm as an organization, separate and apart from the harm alleged by its *members*.  Having failed to plead facts demonstrating that it has standing to sue in its own right, UCW has failed to establish organizational standing.

Because Plaintiff UCW has failed to establish Article III standing under either available theory—*viz.*, associational or organizational standing—it lacks standing to sue any defendant. Therefore, this Court lacks subject-matter jurisdiction as to all claims asserted by Plaintiff UCW.

## IV. PLAINTIFFS' CLAIMS AGAINST THE ATTORNEY GENERAL SHOULD BE DISMISSED BECAUSE THEY ARE BARRED BY ELEVENTH AMENDMENT SOVEREIGN IMMUNITY.

Absent waiver or congressional abrogation—neither of which applies here[4]—Plaintiffs' claims against the Attorney General are barred by sovereign immunity unless the *Ex parte Young*[5] exception applies.  *See City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019).  Because the Attorney General does not have the requisite enforcement connection to the challenged provisions

---

[4] The State of Mississippi "has not waived its state sovereign immunity and consented to suit in federal court."  *See Williams v. Banks*, 956 F.3d 808, 810-11 (5th Cir. 2020) (citing MISS. CODE ANN. § 11-46-5(4)).  *See also Necaise v. May*, 700 F. Supp. 3d 469, 480 (S.D. Miss. 2023) ("[T]he State of Mississippi has not waived its sovereign immunity from liability in suits arising under" § 1983).  Further, "Congress has not abrogated state sovereign immunity under . . . § 1983."  *Spec's Family Partners, Ltd. v. Nettles*, 972 F.3d 671, 681 (5th Cir. 2020) (internal quotation marks omitted, ellipsis in original).  *See also Seay v. Inst. of Higher Learning*, No. 3:20-CV-265-DMB-RP, 2021 WL 3008595, at *3 (N.D. Miss. July 15, 2021) (same).

[5] *Ex parte Young*, 209 U.S. 123 (1908).

of the Mississippi Law, *Ex parte Young* does not apply, and Plaintiffs' claims against the Attorney General are barred by Eleventh Amendment sovereign immunity.

"To be a proper defendant under *Ex parte Young*, a state official 'must have some connection with the enforcement of' the law being challenged." *Mi Familia Vota v. Ogg*, 105 F.4th 313, 325 (5th Cir. 2024) (quoting *Ex parte Young*, 209 U.S. 123, 158 (1908)).  For the requisite enforcement connection to exist, the official "must have more than the general duty to see that the laws of the state are implemented." *Tex. Alliance For Retired Americans v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022) (internal quotation marks omitted).  Rather, "the official must have the particular duty to enforce the statute in question." *Id.* (internal quotation marks omitted).  The statutory analysis "is provision-by-provision," and "[t]he officer must enforce the particular statutory provision that is the subject of the litigation." *Id.* (internal quotation marks omitted).

"Discretionary authority to act, on its own, is insufficient to give rise to a particular duty to act, *i.e.*, a sufficient connection [to] enforcement." *Mi Familia Vota*, 105 F.4th at 327 (internal quotation marks omitted) (alteration in original).  "Standing alone, a state official's discretion is not itself 'individual conduct' on account of which the official may be 'stripped of his official or representative character.'" *Healthy Vision Ass'n v. Abbott*, 138 F.4th 385, 397 (5th Cir. 2025) (quoting *Ex parte Young*, 209 U.S. at 160).  "[T]o be amenable to suit under [*Ex parte Young*], the state actor must *both* possess the authority to enforce the challenged law and have a sufficient connection [to] the enforcement of the challenged act." *Mi Familia Vota*, 105 F.4th at 328 (internal quotation marks omitted) (italics in original).  To establish the requisite "sufficient connection" triggering *Ex parte Young* when the challenged provision grants a state official discretionary authority, a plaintiff must "connect[ ] an official's discretion to actual enforcement by indicating

some reasonable prospect of how that discretion is to be exercised." *See Healthy Vision*, 138 F.4th at 397 (internal quotation marks omitted) (alteration in original).

Here, Plaintiffs' claims against the Attorney General are barred by Eleventh Amendment sovereign immunity because the Attorney General's authority to enforce the challenged provisions of the Mississippi Law is discretionary, and Plaintiffs have not alleged plausible facts demonstrating any reasonable prospect of how that discretion will be exercised.

To the extent the challenged provisions of the Mississippi Law vest enforcement authority in the Attorney General, that authority is discretionary. Section 8 of H.B. 1193 authorizes—but does not command—"the Attorney General or a court of competent jurisdiction" to "affirm[ ]" a "certifi[cation] by the appropriate governing authority" that a "violating entity [has] demonstrate[d] full compliance with the provisions of this act," thereby permitting reinstatement of any state funds withheld under the Mississippi Law. H.B. 1193, § 8(2). Section 9 of the Mississippi Law provides that "[a]fter receipt of [any] notification [of a violation or potential violation of the Mississippi Law], the Attorney General *may* file an application for a writ of mandamus in the chancery court of competent jurisdiction for injunctive relief compelling the state institution of higher learning, community or junior college, public school board or charter school governing board to comply with this act if such entity has failed to cure the error with [*sic*] the thirty-day curative period." *Id.*, § 9(1)(b) (emphasis added).

Neither of these provisions charges the Attorney General with a *duty* to affirm a governing board's certification, see *id.*, § 8(2), or file an application for a writ of mandamus, see *id.*, § 9(1)(b). Rather, both of these provisions afford the Attorney General "[d]iscretionary authority," *Mi Familia Vota*, 105 F.4th at 327, to act. *See Biden v. Texas*, 597 U.S. 785, 802 (2022) ("This Court has repeatedly observed that the word 'may' *clearly* connotes discretion.") (internal quotation

marks omitted) (italics in original).  In their Amended Complaint, Plaintiffs merely quote the above-mentioned provisions of Sections 8 and 9 affording discretionary authority to the Attorney General.  *See* ECF #22 at 27, ¶ 85; 33-34, ¶ 107.  They do not allege any facts purporting to "connect[ ] [the Attorney General's] discretion to actual enforcement by indicating some reasonable prospect of how that discretion is to be exercised."  *See Healthy Vision*, 138 F.4th at 397.  Thus, as a matter of law pursuant to *Mi Familia Vota* and *Healthy Vision*, *supra*, Plaintiffs have not shown that the Attorney General has the requisite enforcement connection with the challenged provisions of the Mississippi Law to permit application of *Ex parte Young*.

Because Plaintiffs have not satisfied their burden to overcome the Attorney General's Eleventh Amendment sovereign immunity, the Attorney General—as an officer of the State of Mississippi—is not amenable to suit in federal court.  Thus, Plaintiffs' claims against her should be dismissed for lack of subject-matter jurisdiction.

## CONCLUSION

For all these reasons, the Court should dismiss all claims asserted in the Amended Complaint against the Non-IHL Defendants and the Attorney General for lack of subject-matter jurisdiction.

THIS the 2nd day of July, 2025.

Respectfully submitted,

LYNN FITCH, IN HER OFFICIAL CAPACITY
AS ATTORNEY GENERAL OF MISSISSIPPI;
JOHN PIGOTT, IN HIS OFFICIAL CAPACITY
AS CHAIR OF THE MISSISSIPPI COMMUNITY
COLLEGE BOARD; CHERYL THURMOND,
VIDET CARMICHAEL, DONNIE CAUGHMAN,
BUBBA HUDSPETH, DOLLY MARASCALCO,
JOHNNY MCRIGHT, LUKE MONTGOMERY,
WILL SYMMES, AND DIANNE WATSON, ALL
IN THEIR OFFICIAL CAPACITIES AS
MEMBERS OF THE MISSISSIPPI COMMUNITY

COLLEGE BOARD; GLEN EAST, IN HIS OFFICIAL CAPACITY AS CHAIR OF THE MISSISSIPPI STATE BOARD OF EDUCATION; MATT MILLER, LANCE EVANS, WENDI BARRETT, MATT MAYO, BILL JACOBS, RONNIE MCGEHEE, MIKE PRUITT, BILLYE JEAN STROUD, AND MARY WERNER, ALL IN THEIR OFFICIAL CAPACITIES AS MEMBERS OF THE MISSISSIPPI STATE BOARD OF EDUCATION; MARCY SCOGGINS, IN HER OFFICIAL CAPACITY AS CHAIR OF THE MISSISSIPPI CHARTER SCHOOL AUTHORIZER BOARD; AND JAY CARNEY, SANDRA MCKIERNON, ERIN MEYER, BEN MORGAN, CANDACE ROBINS, AND JENNIFER JACKSON WHITTIER, ALL IN THEIR OFFICIAL CAPACITIES AS MEMBERS OF THE MISSISSIPPI CHARTER SCHOOL AUTHORIZER BOARD, DEFENDANTS

By:    LYNN FITCH, ATTORNEY GENERAL
       STATE OF MISSISSIPPI

By:    s/Rex M. Shannon III
       REX M. SHANNON III (MSB #102974)
       Special Assistant Attorney General

REX M. SHANNON III (MSB #102974)
LISA A. REPPETO (MSB #99978)
STATE OF MISSISSIPPI
OFFICE OF THE ATTORNEY GENERAL
CIVIL LITIGATION DIVISION
Post Office Box 220
Jackson, Mississippi  39205-0220
Tel.:  (601) 359-4184
Fax:  (601) 359-2003
rex.shannon@ago.ms.gov
lisa.reppeto@ago.ms.gov

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I, Rex M. Shannon III, Special Assistant Attorney General and attorney for the above-named defendants, do hereby certify that I have this date caused to be filed with the Clerk of the Court a true and correct copy of the above and foregoing via the Court's ECF filing system, which sent notification of such filing to all counsel of record.

THIS the 2nd day of July, 2025.

s/Rex M. Shannon III
REX M. SHANNON III