IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
Jackson Division

**MISSISSIPPI ASSOCIATION OF EDUCATORS[1], BARBARA PHILLIPS, JAMES THOMAS, DAWN ZIMMERER, L.E. JIBOL, UNITED CAMPUS WORKERS SOUTHEAST LOCAL 3821, MADISYN DONLEY, ALEXIS COBBS, KAREN ADERER, FOSTERING LGBTQ+ ADVOCACY, RESOURCES, ENVIRONMENTS AND WOMEN IN SCIENCE AND ENGINEERING,**

        *Plaintiffs*,

v.

**LYNN FITCH, ET AL.**,

*Defendants*.

Civil No. 3:25-cv-00417-HTW-LGI

**REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

---

[1] Plaintiff Mississippi Association of Educators has filed a Motion to Removed as Plaintiff, Dkt. 45.

i

I.     PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS.

A.  Plaintiffs meet their burden under *Moody v. NetChoice, LLC.*

The Defendants invoke *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024) and seem to claim that the constitutionally impermissible applications of the challenged provisions do not "substantially outweigh" the constitutional ones and therefore Plaintiffs cannot succeed on a facial challenge. Defs.' Mem. Opp'n Pls.' Mot. Prelim. Inj. 7-9, Dkt. 43. This is wrong.

The broadest of the challenged provisions — Section 3(b)'s prohibition on all public K-12 schools, colleges, and universities "engag[ing]" in "diversity training" as defined in Section 2(d) to include "formal or informal education" that "increas[es] awareness or understanding of issues related to race, sex, color, gender identity, sexual orientation or national origin" — is never even mentioned in the Defendants' response. As explained more fully in Plaintiffs' Memorandum in Support of a Preliminary Injunction, Dkt. 12, this ban on anything that "increase[s] awareness and understanding" of this wide array of issues will affect a large number of classes in history, sociology, political science, psychology, literature, business, physical sciences, law, and many other subjects, as well as a host extracurricular activities, gatherings, and discussions on school campuses. *Id.* at 23-24. Whatever the universe of constitutionally permissible applications of this sweeping prohibition on speech, the impermissible applications cut so deeply into public education as to "substantially outweigh" any permissible ones.

The same is true for Section 3(i) which applies to required courses and contains the same broad prohibition as 3(b)'s incorporation of 2(d).

With respect to the other challenged prohibitions — Section 3(b)'s ban on "engage[ment]" with 2(e)'s list of "divisive concepts," Section 3(f), and Section 3(g) – they are all laden with confusing language that prevents educators and students from understanding what

1

is permissible and what is not. And some of the exceptions to the bans contained in Section 5 of the Act add to the confusion. This is all discussed more fully in the Plaintiffs' Memorandum in Support of a Preliminary Injunction. Dkt. 12 at 8-12. Because educators and students cannot ascertain what speech is and is not permitted, all (or nearly all) applications of these prohibitions are unconstitutional for vagueness under the Fourteenth Amendment. Those unconstitutional applications outweigh whatever applications of the vague language could be readily understood by the educators and students whose actions are governed by them. Accordingly, these provisions "fail to meet constitutional standards for definiteness and clarity" and are "unconstitutionally vague *on [their] face* because [they] encourage[] arbitrary enforcement by failing to describe with sufficient particularity" what is prohibited and what is not. *Kolender v. Lawson*, 461 U.S. 352, 361-62 (1983*)* (emphasis added)*; see also Local 8027 v. Edelblut*, No. 21-cv-1077, 2024 U.S. Dist. LEXIS 94052, at *12 n. 3 (D.N.H. May 28, 2024) (New Hampshire statute with four divisive concepts held to be facially unconstitutional on vagueness grounds) (appeal pending).

      The Defendants claim that "the Act does not aim to ban speech, its purpose is to ban discrimination." Dkt. 43 at 14. If the language of the challenged provisions actually addressed discrimination, there might be some constitutionally permissible applications of them to be considered in an analysis under *Moody*. But they do not. Instead they relate to speech and any constitutionally permissible applications of them are substantially outweighed by the applications that violate the First and Fourteenth Amendments. Thus, they are facially unconstitutional. *See Pernell v. Fla. Bd. of Governors of the State Univ. Sys.*, 641 F. Supp. 3d 1218, 1276 (N.D. Fla. 2022) ("[S]imply because the State of Florida says it wants to reduce racism or sexism in public

2

universities does not give the State of Florida a safe harbor in which to enact rank viewpoint-based restrictions on protected speech.").

Finally, even if any of these provisions are not facially unconstitutional, they are unconstitutional as applied, on First and Fourteenth Amendment grounds, to the classroom and extracurricular speech of public school educators and students in Mississippi including the plaintiffs in this case.

### B. The challenged provisions violate the Plaintiff's First Amendment rights.

#### 1. The First Amendment protects the rights of the Plaintiff educators.

The Defendants contend that the Plaintiff educators "do not enjoy First Amendment protection when they are on the job." Dkt. 43 at 9. More specifically, they state:

> [T]he Plaintiffs ask this court to enjoin a statute that does not, in any way impact their ability to speak as private citizens. Rather, the challenged legislation simply seeks to prohibit institutional discrimination in accordance with federal law. . . . If it has any impact at all on what the Teacher Plaintiffs say, it applies only to their speech as public employees to the extent it violates the intent of the statute to prohibit institutional discrimination.

*Id.* at 10. But the challenged provisions do not address discrimination. Instead, they restrict speech in the classroom and in extracurricular settings, prohibiting teachers from teaching about issues like race and sex that have long been a basic part of education in Mississippi.

The Defendants cite *Garcetti v. Ceballos*, 547 U.S. 410 (2006) to support their contention that "[g]enerally, the First Amendment does not apply to a public employee's expressions made 'pursuant to official responsibilities." Dkt. 43 at 9 (*quoting Garcetti,* 547 U.S. at 411). But even if their analysis of *Garcetti* is correct, the Supreme Court in *Garcetti* specifically excluded classroom instruction from its analysis.

> There is some argument that expression related to academic scholarship or classroom instruction implicates additional constitutional interests that are not fully accounted for by this Court's customary employee-speech jurisprudence. We need

3

> not, and for that reason do not, decide whether the analysis we conduct today would apply in the same manner to a case involving speech related to scholarship or teaching.

547 U.S. at 425. At no point did the Supreme Court in *Garcetti* indicate that it was overruling longstanding precedents that protect the First Amendment rights of teachers regarding scholarship and classroom instruction like *Keyishian v. Bd. of Regents*, 385 U.S. 589, 603 (1967), which held that "the First Amendment . . . does not tolerate laws that cast a pall of orthodoxy over the classroom," and *Epperson v. Arkansas*, 393 U.S. 97, 104 (1968), which emphasized the duty of federal courts "to apply the First Amendment's mandate in our educational system where essential to safeguard the fundamental values of freedom of speech and inquiry."[2] Indeed, the Supreme Court recently reaffirmed that "the First Amendment's protections extend to 'teachers and students,' neither of whom 'shed their constitutional rights to freedom of speech or expression at the schoolhouse gate.'" *Kennedy v. Bremerton*, 597 U.S. 507, 527 (2022) (*quoting Tinker v. Des Moines Indep. Sch. Dist.*, 393 U.S. 503, 506 (1969)).

The Defendants also contend that "the Teacher Plaintiffs must still satisfy the requirements of *Pickering v. Bd. of Educ.* 391 U.S. 563, 568 (1968)." Dkt. 43 at 12. And they cite the Fifth Circuit's decision in *Buchanan v. Alexander*, 919 F.3d 847 (5th Cir. 2019) as an example of a proper *Pickering* analysis. As indicated in *Buchanan,* the issue is whether the teacher was subject to discipline for statements that are a matter of public concern and if so, whether the teacher's interests outweigh those of the entity that imposes the discipline. 919 F.3d at 853. In *Buchanan*, the Fifth Circuit rejected the plaintiff's First Amendment claim as follows:

> Dr. Buchanan's use of profanity and discussion of her sex life and the sex lives of her students was not related to the subject matter or purpose of training Pre-K-Third grade teachers. This court has held that in the college classroom context, speech that does not serve an academic purpose is not of public concern.

---

[2] The State cites several Fifth Circuit cases which cited *Garcetti*, Dkt. 43 at 11, but none of them involved the content of classroom instruction or extracurricular activities.

*Id.* By contrast, in the present case, the subjects that the teachers are banned from teaching do serve an academic purpose and are matters of public concern. And the teachers' interests outweigh the interests of the State in attempting to restrict that speech. Indeed, the Defendants repeatedly claim "the Act does not aim to ban speech, its purpose is to ban discrimination." Dkt. 43 at 14. The State remains free to pass laws banning discrimination and nothing about the teaching of the banned subjects would interfere with the State's effort to do so.

Thus, the educator Plaintiffs in this case clearly have rights under the First Amendment. Those rights are violated by the challenged provisions which "cast a pall of orthodoxy over [their] classroom[s]." *Keyishian*, 385 U.S. at 603.

### 2. Even with the exceptions and the Act's stated purpose, the challenged provisions still restrict speech.

The Defendants claim that "the stated purpose of the Act is to prohibit institutions from engaging in discriminatory practices, not to suppress speech or academic pursuits" and repeat that sentiment throughout their memorandum. *See, e.g.*, Dkt. 43 at 13. However, as explained more fully in Plaintiffs' Memorandum in Support of a Preliminary Injunction, Dkt. 12, the challenged provisions clearly do restrict speech and do not have anything to do with preventing discrimination. In this regard, it is important to note that this lawsuit only seeks to enjoin certain provisions, not the entire Act.

To the extent other provisions attempt to ban discrimination, they will remain in effect even if the Court enjoins the specific provisions that are challenged here.

The Defendants cite Section 5(b)'s exception for "[s]cholarly research or a creative work" and state that these matters may be discussed in class. Dkt. 43 at 13. However, many classroom and extracurricular discussions on college and K-12 campuses are not based on the scholarly

5

research and creative works of a teacher or student in the class, and this exception, even if faithfully applied, does not neutralize the restrictions on speech contained in the challenged provisions. They also cite 5(j)'s exemption for "any applicable accreditation standards or requirements." Dkt. 43 at 13. While that may be applicable in certain situations, the reach of this accreditation exception is unclear, and it gives educators and students little guidance on which discussions are permitted and which are prohibited. Indeed, as explained in Plaintiffs' preliminary injunction memorandum, Dkt. 12, these and other exceptions add to the vagueness and confusion that infects the challenged provisions. Defendants never addressed or rebutted the Plaintiffs' claim of unconstitutional vagueness.[3]

### 3. The challenged provisions violate students' constitutional rights.

In the heading for section I-B-3 of their opposition, the Defendants state that "[t]he First Amendment rights of students are limited." Dkt. 43 at 14. But even though those rights are limited in certain respects, they are clearly violated by the challenged provisions. As explained in Plaintiffs' Memorandum in Support of a Preliminary Injunction, students have a right to receive the lessons taught by their instructors and participate in class and extracurricular discussions without the bans imposed by the challenged restrictions – rights that were honored before the enactment of those provisions. Dkt. 12 at 24-28. As the Supreme Court held in *Tinker*: "[i]n our system, students may not be regarded as closed-circuit recipients of only that which the State chooses to communicate. They may not be confined to the expression of those sentiments that are officially approved." 393 U.S. at 511.

The Defendants cite *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260 (1988), where the Court held that a principal did not violate the First Amendment rights of high school journalists

---

[3] Defendants also never address Plaintiff students' and student organizations' right to receive funding free from viewpoint and content-based discrimination.

when the principal pulled two pages of the school newspaper out of concern that the articles about three students with pregnancies and a student whose parents were divorced did not adequately protect the anonymity and privacy of the students and their parents. That is a far cry from the challenged provisions here, which prohibit all college-level and K-12 educators and students from engaging in discussions about race, sex, and other topics that previously could be discussed in and out of class. In addition, *Hazelwood* deals with student speech that others may reasonably perceive as bearing the imprimatur of the school, such as school-sponsored activities, not all student speech. But even if *Hazelwood* is relevant, the challenged provisions here have "no valid educational purpose" and are not "reasonably related to legitimate pedagogical concerns," *id.* at 273, and therefore violate the First Amendment under *Hazelwood's* analysis.

      The Defendants also cite the Fifth Circuit's decision in *Little v. Llano Cnty.*, 138 F.4th 834 (5th Cir. 2025). But in that case involving the removal by a public library of seventeen books from its shelves, the Court simply held that the First Amendment does not encompass a "right to receive information from the government in the form of taxpayer-funded library books." *Id.* at 836. It did not purport to overrule (nor could it) what it described as "Supreme Court precedent [that] sometimes protects one's right to receive someone else's speech," *id.*, and did not address the rights of public-school students to participate in class and extracurricular discussions.

      In addition, the Defendants cite *Chiras v. Miller*, 432 F.3d 606 (5th Cir. 2005), where the Court upheld a decision by Texas educational authorities not to approve a particular environmental sciences textbook. Needless to say, that is a far cry from banning engagement with issues of race, sex, and the other prohibited subjects in all of the public schools of Mississippi. Moreover, to the extent textbook decisions are relevant, the more illustrative example is the decision of the Northern District of Mississippi in *Loewen v. Turnipseed*, 488 F.

7

Supp. 1138 (N.D. Miss. 1980), holding that it was unconstitutional for Mississippi textbook authorities to refuse to recommend a ninth-grade history textbook because of its honest treatment of racial issues in the state. The challenged provisions are even worse because they would prohibit any engagement *at all* with the issue of racial discrimination as well as discrimination on the basis of the other prohibited subjects.

Finally, the Defendants cite the Supreme Court's recent decision in *Mahmoud v. Taylor*, No. 24-297, 2025 WL 1773627 (U.S. June 27, 2025), holding that parents would likely succeed with respect to their claimed right under the religious free exercise clause to opt their children out of instruction using an "LGBTQ+-inclusive" storybook. First, *Mahmoud* is not a free speech case. In addition, here, of course, the challenged provisions prevent all students — not just those who "opt-out" for religious reasons — from learning basic historical and present-day information regarding issues of race, sex, and the other banned subjects in a wide array of classes. For reasons already stated, this violates their rights under the First and Fourteenth Amendments.

## II.     PLAINTIFFS WILL BE IRREPARABLY HARMED.

Defendants concede as they must "that evidence of chilling is sufficient to establish injury or harm in a First Amendment challenge." Dkt. 43 at 17. Thus Defendants have conceded both standing and irreparable injury to all Plaintiffs who have provided evidence of their desire to speak as before but that they censored their speech as a result of the law. Pls.' Mot. for TRO/Prelim. Inj., Dkt. 11-1 (WiSE Decl. ¶¶ 4, 6-7); Dkt. 11-2 (Phillips Decl. ¶ 4); Dkt. 11-6 (Thomas Decl. ¶¶ 5, 8, 10); Dkt. 11-7 (JiBol Decl. ¶¶ 3-4, 6-9); Dkt. 11-9 (Donley Decl. ¶ 8-9); Dkt. 11-10 (Cobbs Decl. ¶ 8-9); Dkt. 11-11 (FLARE Decl. ¶¶ 4, 7-10); Ex. 1 to Pls.' Reply in Supp. TRO/Prelim. Inj. (Aderer Decl. ¶¶ 3, 10) (attached herein).

While the Defendants claim that Plaintiffs must self-censor, Dkt. 43 at 18, that is only one way to demonstrate standing and harm. A plaintiff can establish standing to assert a First Amendment violation and prove harm if they decline to self-censor and credibly risk being disciplined under the Act. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-61 (2014) (discussing Supreme Court cases allowing pre-enforcement challenges when there is a credible threat of enforcement); *see also Steffel v. Thompson*, 415 U.S. 452, 459 (1974) ("[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights."). Here, Plaintiffs face that risk. Dkt. 11-12 (Zimmerer Decl. ¶¶ 6-7); Ex. 1, attached herein (Aderer Decl. ¶¶ 10-11); Pls.' Suppl. to Mot. for TRO/Prelim. Inj., Dkt. 13-2 (UCW Member Ikuta Decl. ¶ 7); Dkt. 13-3 (UCW Member Mammina Decl. ¶ 8). In this situation, the Act's provisions regarding adjudication and "curing" violations put all students and educators at the risk of discipline if they intentionally or inadvertently run afoul of the challenged provisions. Moreover, the vagueness regarding the range of discipline that can be imposed in the course of "curing" a violation exacerbates the Fourteenth Amendment vagueness violation that the Defendants have failed to address in their opposition memorandum.

Defendants' reliance on *Murthy v. Missouri*, 603 U.S. 43 (2024) is unavailing. Unlike in *Murthy*, where the plaintiffs "'had a similar incentive to engage in' self-censorship" prior to the defendants entering the scene," *id.* at 73, the Plaintiffs here are self-censoring or subjecting themselves to discipline for engaging in classroom and extracurricular discussions that were part of daily life in school before these sweeping bans were imposed. They clearly stand to suffer irreparable harm if the Defendants are not enjoined from enforcing the challenged provisions.

9

### III. THE BALANCE OF HARMS AND PUBLIC INTEREST FAVOR THE PLAINTIFFS.

The Defendants' only suggestion of harm is that "the Trump Administration has made clear its intent to withhold federal funds from those who fail to comply with Title VI and *Students for Fair Admissions Inc. v. Harvard*." Dkt. 43 at 19. This harm is purely speculative. Defendants never explain how a federal court injunction against the challenged provisions would cause the State to violate Title VI or the *SFA* decision, much less that it would lead to the withholding of federal funds.[4]

Moreover, given the Defendants' statements that the purpose of the Act is to prevent discrimination, not ban speech, this legislative purpose will not be undermined by an injunction that simply prohibits the banning of speech through the challenged provisions. The unchallenged provisions — including any that might actually prohibit discrimination — will remain in place and the legislature is always free to adopt other legislation to prohibit discrimination as long as it complies with the First Amendment. While "[t]he State absolutely has an interest in enforcing the law," that "interest yields when the law at issue violates the Constitution." *Campaign for S. Equal. v. Bryant*, 64 F. Supp. 3d 906, 951 (S.D. Miss. 2014), *aff'd*, 791 F.3d 625 (5th Cir. 2015).

### IV. THE PRELIMINARY INJUNCTION SHOULD NOT BE LIMITED TO THE INDIVIDUAL PLAINTIFFS.

Contrary to the Defendants' argument, Dkt. 43 at 19-20, this Court should issue a preliminary injunction preventing the Defendants from enforcing the challenged provisions in all

---

[4] At least three courts have preliminarily enjoined the U.S. Department of Education's "Dear Colleague" letter that Defendants attach to their Response. Those courts found that the directives in the letter are likely unconstitutional or otherwise illegal. *See Nat'l Educ. Ass'n v. Dep't of Educ.*, No. 25-091, Dkt. 74 (D.N.H. Apr. 24, 2025); *NAACP v. Dep't of Educ.*, No. 25-1120, Dkt. 30 (D.D.C. Apr. 24, 2025); *Am. Fed'n of Tchrs. v. Dep't of Educ.*, No. 25-628, Dkt. 60 (D. Md. Apr. 24, 2025).

respects. The relief should not be limited to the individual Plaintiffs. A limited injunction would lead to chaotic and senseless results and would fail to accord complete relief to the Plaintiffs.

As Defendants recognize, any injunction must "provide complete relief to each plaintiff with standing to sue." *Trump v. CASA, Inc.*, No. 24A884, 2025 WL 1773631, at *15 (U.S. June 27, 2025). Here, the Plaintiffs include students, the parent of students, educators, and organizations. Given the nature of classroom instruction, the public schools will not be able, as a practical matter, to create separate classes for the Plaintiff students in the large number of courses that will be affected by the bans. If they did, the Plaintiff students would be deprived of the opportunity to interact with and learn from their fellow students, which is a significant part of education. And if the injunction applies only to the Plaintiff teachers and those in the Plaintiff organizations, the schools will be operating dual systems where the students in their classes will be able to learn about the banned subjects, but students in other teachers' classes will not. New textbooks will have to be written (without reference to the banned subjects) and purchased for the non-Plaintiff students and the students who are not in the classes of the teachers who are Plaintiffs or members of the Plaintiff organizations. None of this is workable, and a dual system like this will deprive the Plaintiffs of complete relief. Accordingly, the Defendants should be preliminarily enjoined from enforcing the challenged provisions at all.

Dated: July 11, 2025                                                                 Respectfully submitted,

| | |
|---|---|
| *s/ Robert B. McDuff*<br>Robert B. McDuff<br> MS Bar No. 2532<br>Paloma Wu<br> MS Bar No. 105464<br>Mississippi Center For Justice<br>210 E. Capitol Street, Ste 1800<br>Jackson, MS 39201<br>Phone: (601) 259-8484<br>rmcduff@mscenterforjustice.org<br>pwu@mscenterforjustice.org<br><br>Amir Badat<br> MS Bar No. 106599<br>Badat Legal PLLC<br>P.O. Box 15<br>Tougaloo, MS 39174<br>Phone: (601) 462-9592<br>amir.badat@gmail.com | *s/ Joshua Tom*<br>Joshua Tom<br> MS Bar. No 105392<br>McKenna Raney<br> MS Bar No. 106330<br>Ayanna Hill<br> MS Bar No. 106590<br>American Civil Liberties Union of Mississippi Foundation, Inc.<br>P.O. Box 2242<br>Jackson, MS 39225<br>Phone: (601) 354-3408<br>jtom@aclu-ms.org<br>mraney@aclu-ms.org<br>ahill1@aclu-ms.org<br><br>Nicolas Stanojevich*<br>Quinn, Connor, Weaver, Davies & Rouco LLP<br>2 20th Street North, Suite 930<br>Birmingham, AL 35203<br>Phone: (205) 870-9989<br>nstanojevich@qcwdr.com<br>*Admitted Pro Hac Vice<br><br>Counsel for Plaintiffs |

## **CERTIFICATE OF SERVICE**

I certify that the foregoing has been filed on the Court's ECF system which served all counsel of record on this 11th day of July, 2025.

*s/ Joshua Tom*
Co-counsel for Plaintiffs
