IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
Jackson Division

MISSISSIPPI ASSOCIATION OF )
EDUCATORS, ET AL.,[1] )
                                             )
                                             )   Civil No. 3:25-cv-00417-HTW-LGI
                *Plaintiffs*, )
v.                                      )
                                           )
LYNN FITCH, ET AL., )
              *Defendants*. )
                                           )

## **DECLARATION OF EBONY RICE ON BEHALF OF JACKSON FEDERATION OF TEACHERS**

Pursuant to 28 U.S.C. § 1746, I, Ebony Rice, make the following declaration on behalf of the Jackson Federation of Teachers under penalty of perjury:

1. My name is Ebony Rice. I am the President of the Jackson Federation of Teachers (JFT). I live in Jackson, Mississippi. JFT is headquartered in Jackson, MS.

2. JFT is a labor union representing around 400 elementary and secondary teachers, educational support professionals, and retired educators in Rankin County, Madison County, and Hinds County, MS. JFT's work includes advocating for improving its members' salaries, benefits and employment conditions and ensuring their fair treatment.

3. JFT's mission includes defending the constitutional rights and academic freedom of its members and advocating for robust public education. That mission and those rights are infringed by HB 1193, in particular by its bans outlined in Sections 3(b), 3(f) and 3(i), which chill speech and prohibit vast swaths of the curriculum essential to any public educational system.

---

[1] Plaintiff Mississippi Association of Educators has filed a Motion to be Removed as Plaintiff, Dkt. 45.

4. JFT will have to advise its members on how to navigate HB 1193, including on what they can and cannot say and teach, and whether they should continue to speak as they did before and risk being disciplined for violating the law or should self-censor in an attempt to avoid violating the law. JFT will have to represent its members should they be accused of violating HB 1193.

5. Section 3(b) of HB 1193 prohibits Mississippi public schools from "[e]ngag[ing] in divisive concepts as defined in Section 2(d) and (e) of this act." Section 2(d) defines "diversity training" to include "any formal or informal education, seminars, workshops or institutional program that focus on increasing awareness or understanding of issues related to race, sex, color, gender identity, sexual orientation or national origin." Thus, Section 3(b) prohibits any "[e]ngage[ment] with "any formal or informal education that . . . increase[es] awareness or understanding of issues related to race, sex, color, gender identity, sexual orientation or national origin."

6. "[I]ncreasing awareness and understanding" is the central mission of schools. Education occurs primarily through classroom instruction and discussion, reading, extracurricular activities and conversations, and homework. This provision regarding "any formal or informal education" appears to ban any classroom or extracurricular discussion of "race, sex, color, gender identity, sexual orientation or national origin," and any reading that might include any of those subjects.

7. This particular ban, if enforced, would cover a wide range of the material that is now taught in public education statewide and in the schools where JFT's members work. For example, JFT members teach the following now banned by HB 1193: many parts of the history and social studies curriculum, including the civil rights movement, Fannie Lou

Hamer, Medger Evers, slavery, the women's suffrage movement, and literature like Toni Morrison's novels. If enforced, this provision would require significant modifications of the classrooms and extracurricular instruction at the schools where JFT's members work.

8. The banned subjects are an important part of public education, and teachers have a right to discuss them in age-appropriate ways.

9. Beyond a teacher's lesson plans for classroom instruction, they respond to questions students often raise related to these banned subjects. This can happen inside or outside of the classroom. For example, students and teachers often discuss current events. Policing for example is an important current issue. A student could ask their teacher why their parent gets nervous when they see the police. This reaction may not make sense to a child. A teacher should be able to answer as best they can. It is unclear whether a simple response to the student, and perhaps a brief discussion with the class about the issue, would constitute an "[e]ngage[ment]" about the banned subject that would violate the law. Indeed, this can happen in the context of bullying or name-calling based on race, sex, sexual orientation, gender identity, or national origin. JFT members teach many Hispanic and English Learners (ELs), e.g., and under the current political climate, these students may face bullying. If a teacher responds and speaks about race or any other banned topic in the course of trying to correct the problem, it is unclear if they would be "engag[ing]" in that topic by "increasing awareness and understanding" about it.

10. Teachers also frequently have conversations with students outside of the classroom that relate to the banned subjects. These informal conversations occur in the hallway, in the lunchroom, on the playground, and before or after school starts. For example, students and teachers talk about current events – like policing including George Floyd and Sandra

Bland or LGBTQ issues such as hate crimes or why someone's uncle is mean to their LGBTQ nephew. Students may not feel comfortable speaking with their family but do feel comfortable with their teachers. Teachers should be able to answer questions on these topics in an age-appropriate way. These conversations are important parts of the overall educational experience because they create trust and mutual respect between teachers and students. Teachers cannot know whether the law's unclear prohibitions would restrict them from having these conversations with students.

11. In addition to the lack of clarity surrounding prohibition on "[e]ngage[ment]" with these topics, the other bans in Sections 3(b), 3(f), 3(g), and 3(i) are vague and confusing in many respects. JFT members do not know what they can and cannot say under HB 1193.

12. Although the act prohibits schools from violating the bans, the schools are composed of teachers, administrators, and students. Thus, it seems that any violations will have been caused by teachers, administrators, or students, and any "cure" must be directed toward them.

13. It is difficult to differentiate between actions that are permitted and those that are prohibited. There is concern that teachers who are members of JFT will either self-censor the content of their discussions or will risk discipline for violating the challenged provisions. These individual members themselves, who are directly subjected to the restrictions of HB 1193, fear that their participation in this lawsuit in their named, individual capacity could lead to exposure to negative attention or harassment, either from the general public or from their employers. JFT decided to be a plaintiff in this lawsuit in part to represent its members who fear such retaliation.

14. If any JFT member who teaches in Rankin, Madison, or Hinds County Public School Districts incurs a violation and later a second uncured violation, then all state funds for that district shall be withheld. This loss of funding would mean teachers and faculty who are members of JFT would be out of their jobs.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed: August 1, 2025

*Ebony Rice*
Ebony Rice
President
Jackson Federation of Teachers,
  Paraprofessionals and
  School-Related Personnel