**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**Northern Division**

| | |
|---|---|
| **JACKSON FEDERATION OF**<br>**TEACHERS, ET AL,** | |
| *Plaintiffs,* | **Civil No. 3:25cv00417-HTW-LGI** |
| **v.** | |
| **LYNN FITCH, ET AL.,** | |
| *Defendants.* | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

## INTRODUCTION

Plaintiffs challenge certain provisions of HB 1193, which, among other things, impose stark limitations on the speech of educators and students at public educational institutions across Mississippi. Pursuant to Rule 23, Plaintiffs move to certify classes of the individuals who have been or will imminently be harmed by the law. These proposed classes meet all requirements for class certification.

As this Court has already recognized, the challenged provisions of HB 1193 are likely unconstitutional. [ECF. 58-7, p. 13] ("Taking Plaintiffs' proof of harm at this preliminary stage as shown, the enforcement of HB 1193 threatens not only individual rights but the very fabric of academic institutions that serve as incubators for ideas and discourse."). And as this Court has also recognized, injunctive relief protecting those harmed by HB 1193 is appropriate—and, indeed, necessary—to avoid irreparable harm. *Id*. at 10 ("This Court finds that each day the statute remains unclarified, undefined, and under a threat of open interpretation, exacerbates the suppression of protected speech. In the Fifth Circuit, as elsewhere, such injuries are presumed irreparable and

weigh heavily in favor of preliminary relief."). The Supreme Court has indicated that, in such circumstances, class-wide relief may be appropriate. *Trump v. CASA*, slip op. 13-14 (June 27, 2025); *id*., slip op. at 6 (Kavanaugh, J., concurring) (noting that district courts may "grant or deny the functional equivalent of a universal injunction—for example, by granting or denying a preliminary injunction to a putative nationwide class under Rule 23(b)(2)"); *id*., slip op. at 44 (Sotomayor, J., dissenting) ("[T]he parents of children covered by the Citizenship Order would be well advised to file promptly class action suits and to request temporary injunctive relief for the putative class pending class certification.").

Plaintiffs previously moved [ECF. 60] for leave to file a second amended complaint. As explained in the motion, one of the purposes of the second amended complaint was to add class action allegations. The Court granted the motion, noting that the Defendants had not opposed it. [ECF. 74 at 22]. The classes and subclasses delineated in the second amended complaint [ECF. 75 at 38-41] are the same as those proposed in this motion.[1]

## PROPOSED CLASSES AND SUBCLASSES

Plaintiffs propose two classes for certification, each of which is composed of two subclasses. The first class is composed of all educators at postsecondary public educational institutions and K-12 public schools in Mississippi. This first class is subdivided into two subclasses: subclass (a) consists all educators at state-supported two-year community or junior colleges under the purview of the Mississippi Community College Board, and at state-supported four-year colleges or universities under the purview of the Board of Trustees of the State

---

[1] This motion is timely. Local Rule 23 requires that the class action motion be filed by the date set out in the case management order. In light of the Defendants' appeal of the Court's preliminary injunction, no case management order has been issued and no class action deadline has been set.

Institutions of Higher Learning; and subclass (b) consists of all educators at K-12 public schools in Mississippi. The second class is composed of all students and parents or guardians of minor students at postsecondary public educational institutions and K-12 public schools in Mississippi. Subclass (a) for this second class consists of all students at state-supported two-year community or junior colleges under the purview of the Mississippi Community College Board, and at state-supported four-year colleges or universities under the purview of the Board of Trustees of the State Institutions of Higher Learning; and subclass (b) consists of all parents or guardians of students at K-12 public schools in Mississippi.

All of Rule 23's requirements are easily satisfied here: the challenged provisions of HB 1193 affect thousands of educators and students by infringing on their First and Fourteenth Amendment rights and subjecting them to potential penalties. Rule 23 authorizes a class action where, as here, Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Defendants are governed by a statewide statute that, if implemented, will harm each class representative and every member of the class, and class-wide injunctive and declaratory relief will prevent and remedy that harm. Class certification is warranted.

## PROCEDURAL HISTORY

Plaintiffs filed a Complaint for Injunctive and Declaratory Relief on June 9, 2025, asking the Court to enjoin the enforcement of certain provisions of House Bill 1193, passed by the Mississippi legislature during the 2025 session. [ECF. 1]. On June 18, 2025, Plaintiffs filed a Motion for Temporary Restraining Order and Preliminary Injunction to prohibit the enforcement of Section 3(b), 3(f), 3(g), and 3(i) of HB 1193. [ECF. 11]. The Defendants filed a Motion to

Dismiss on June 23, 2025, the same day Plaintiffs amended their Complaint. [ECF. 22; ECF. 17]. Defendants filed a motion to dismiss the Amended Complaint on July 16, 2025. [ECF. 39]. On June 30, this Court granted Plaintiff's request for a Temporary Restraining Order. [ECF. 51]. After an evidentiary hearing, the Court granted Plaintiff's request for a Preliminary Injunction, [ECF. 74].

On August 19, 2025, pursuant to leave granted by the Court, Plaintiffs filed a Second Amended Complaint which raised class action claims and addressed remedial issues raised in the U.S. Supreme Court's decision in *CASA*. [ECF. 75]. Defendants appealed the Court's grant of a preliminary injunction on September 16, 2026, and that appeal is currently before the 5th Circuit Court of Appeals. Plaintiffs now file a Motion for Class Certification.

## LEGAL STANDARD

A Court may certify a class action if the moving party establishes that it meets all of the prerequisites of Rule 23(a) and qualifies as one of the types of class actions identified in Rule 23(b). Rule 23(a) requires the moving party to establish that: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy"). Rule 23(c)(5) further provides that a class may be divided into subclasses, provided each subclass fulfills the previous four criteria for a class. If these prerequisites are met, the court may certify a class action under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

In deciding the motion, the Court "may look past the pleadings to determine whether the requirements of rule 23 have been met." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996). Moreover, "a court should engage the merits of a claim only to the extent necessary to verify that Rule 23 has been satisfied." *Id.* Plaintiffs bear the burden of proof to show that the requirements of Rule 23(a) and (b) are satisfied. *M.D. v. Perry*, 675 F.3d 832, 837 (5th Cir. 2012)

"The very purpose to be served by a class action is the opportunity it affords to prevent a multiplicity of suits based on a wrong common to all." *Roper v. Consurve, Inc.*, 578 F.2d 1106, 1114 (5th Cir. 1978) (*quoting Green v. Wolf Corp.*, 406 F.2d 291, 300 (2d Cir. 1968)). Class actions "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615 (cleaned up).

*Numerosity*

Rule 23(a)(1) requires that the proposed "class is so numerous that joinder of all members is impracticable." To satisfy the numerosity requirement, a "reasonable estimate of the number of purported class members" is sufficient. *Ibe v. Jones*, 836 F.3d 516, 528 (5th Cir. 2016). Generally, courts will find 40 or more class members to sufficiently satisfy the numerosity requirement. *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 595 (3d Cir.2012) (citing *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir.2001); *Anderson v. Weinert Enters.*, 986 F.3d 773, 777 (7th Cir. 2021); *accord* 5 Moore's Federal Practice – Civil § 23.22[1][b] (2026) ("A class of 41 or more is usually sufficiently numerous. Once again, many courts have ruled that classes with more than 40 members satisfy the numerosity requirement.").

<u>*Commonality*</u>

Rule 23(a)(2)'s commonality requirement is met if the class asserts a "common contention" that "is capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[E]ven a single common question will do," if "determination of its truth or falsity will resolve an issue that is central" to the case. *Id*. at 350, 359 (internal citations, quotation marks, and alterations omitted). "[T]his provision does not require that all the questions of law and fact raised by the dispute be common," just that any "dissimilarities between the claims [do not] impede a common resolution." Wright, Miller, and Kane, 7A Fed. Prac. & Proc. Civ. § 1763 (4th ed.). This "commonality test is easily met in most cases." 1 Newberg and Rubenstein on Class Actions § 3:24 (6th ed.). In particular, "class suits for injunctive or declaratory relief by their very nature often present common questions satisfying Rule 23(a)(2)." Wright, Miller, and Kane, 7A Fed. Prac. & Proc. Civ. § 1763 (4th ed.).

When there are subclasses, as here, the commonality requirement applies to the subclasses "rather than to the class action out of which the subclasses have been carved," and if each of the subclasses satisfies the commonality requirement, "there is no objection to combining them in a single class action." *Johnson v. Meriter Health Servs. Employee Ret. Plan*, 702 F.3d 364, 368 (7th Cir. 2012).

<u>*Typicality*</u>

Once a common question of law or fact is established, the test for typicality is "not demanding" and "does not require a complete identity of claims. Rather, the critical inquiry is whether the class representatives' claims have the same essential characteristics of those of the putative class." *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001). A class representative's claim is typical where it "arise[s] from a similar course of conduct and share[s] the same legal

theories" as those of the class members. *Newby v. Enron Corp. (In re Enron Corp. Sec. Derivative & "ERISA" Litig.*), 529 F. Supp. 2d 644, 673 (S.D. Tex. 2006).

*Adequacy*

Rule 23(a)(4) requires a determination that "the representative parties will fairly and adequately protect the interests of the class." Adequacy of representation seeks to ensure that there are no "conflicts of interest between named parties and the class they seek to represent," *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (citation omitted).

*Rule 23(b)(2)*

Rule 23(b)(2) provides for class certification when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *See also Wal-Mart*, 564 U.S. at 360. The requirements of Rule 23(b)(2) are "almost automatically satisfied" in actions seeking injunctive relief for common legal claims. *Baby Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994). Class actions challenging civil rights violations are particularly appropriate for certification under Rule 23(b)(2), given that the rule arose out of experiences "in the civil rights field" in which the government violated the rights of an entire class of citizens through a single law or policy. 6 *Amchem Prods.*, 521 U.S. at 614 (citation and quotation marks omitted). "Rule 23(b)(2) was promulgated in 1966 essentially as a tool for facilitating civil rights actions." Moore's Federal Practice § 23.43; *see also* 2 Newberg and Rubenstein on Class Actions § 4:40 ("Historically, Rule 23(b)(2) class actions have been used as a vehicle to vindicate civil rights violations. . . . [M]any (b)(2) class actions challenge government actions on constitutional grounds").

## <u>ARGUMENT</u>

**I.    The putative Plaintiff classes and subclasses should be certified.**

The restrictions in the challenged provisions of HB 1193 affect both teachers and students in Mississippi's K-12 and higher education programs. Plaintiffs propose two classes, each divided into two subclasses, for the purposes of this litigation. The two classes divide educators and students based on the differing interests and legal protections afforded to each. Each class is further subdivided based on the level of education institution: one subclass for higher education and the other for K-12. Under Rule 23 of the Federal Rules of Civil Procedure, a class may be divided into subclasses provided that each subclass independently meets the Rule 23 requirements for class certification. In this case, subclasses are appropriate to isolate common issues of law or fact shared by distinct groups of plaintiffs. *Pruitt v. Allied Chem. Corp.,* 85 F.R.D. 100, 111-12 (E.D. Va. 1980).

As shown below, each subclass proposed by Plaintiffs satisfies each element required for class certification. The Court should therefore certify the following two classes, each with two subclasses: A first class of all educators at postsecondary public educational institutions and K-12 public schools in Mississippi, subdivided into subclass (a), consisting of all educators at state-supported two-year community or junior colleges under the purview of the Mississippi Community College Board, and at state-supported four-year colleges or universities under the purview of the Board of Trustees of the State Institutions of Higher Learning; and subclass (b), consisting of all educators at K-12 public schools in Mississippi; a second class composed of all students and parents or guardians of minor students at postsecondary public educational institutions and K-12 public schools in Mississippi, subdivided into subclass (a) for all students at state-supported two-year community or junior colleges under the purview of the Mississippi Community College

Board, and at state-supported four-year colleges or universities under the purview of the Board of Trustees of the State Institutions of Higher Learning; and subclass (b), consisting of all parents or guardians of students at K-12 public schools in Mississippi.

A. **The subclass of educators at state-supported two-year community or junior colleges under the purview of the Mississippi Community College Board, and at state-supported four-year colleges or universities under the purview of the Board of Trustees of the State Institutions of Higher Learning, should be certified.**

a. **Numerosity**

According to a 2024 report by IHL, there were a total of 6,024 faculty at the eight universities under the IHL umbrella. OFF. OF STRATEGIC RSCH., STATE INSTS. OF HIGHER LEARNING, FAST FACTS 2023-2024 1 (2024), https://files.eric.ed.gov/fulltext/ED645082.pdf [https://perma.cc/7KDW-ZJUC]. Plaintiff United Campus Workers Southeast Local 3821 ("UCW") alone represents 237 members at six universities in Mississippi affected by enforcement of the challenged provisions of HB 1193 [ECF. 22, ¶ 13] [ECF. 49, pg. 10]. The Mississippi Community College Board (MCC) coordinates the fifteen community colleges across Mississippi. Mississippi Community College Board. https://www.mccb.edu/ (last visited Jan. 16, 2026) [https://perma.cc/A3SX-VJRY]. Of these colleges, Hinds Community College has over 600 faculty alone, satisfying Rule 23(a)(1)'s requirement that requiring joinder of all parties would be impractical. *About*, Hinds Community College, https://www.hindscc.edu/about (last visited Jan. 16, 2026) ("600+ Caring, Student-Focused Faculty") [https://perma.cc/KCD2-ZR5B]. These facts demonstrate that the proposed subclass satisfies Rule 23(a)(1)'s numerosity requirement.

b. **Commonality**

When there are subclasses, as here, the commonality requirement applies to the subclasses "rather than to the class action out of which the subclasses have been carved," and if each of the

subclasses satisfies the commonality requirement, "there is no objection to combining them in a single class action." *Johnson v. Meriter Health Servs. Employee Ret. Plan*, 702 F.3d 364, 368 (7th Cir. 2012).

The commonality requirement is readily met here, where the central questions—whether the challenged provisions of HB 1193 violate the First and Fourteenth Amendments—are common to all class members and capable of resolution in "one stroke." *Wal-Mart*, 564 U.S. at 350.

Indeed, there are numerous questions of law and fact common to the class and central to the resolution of this case, including:

- Are the challenged provisions of HB 1193 unconstitutional under the First Amendment because, among other things, they discriminate against certain viewpoints?

- Are the challenged provisions of HB 1193 unconstitutional under the First Amendment because, among other things, they impose content-based restrictions?

- Are the challenged provisions of HB 1193 unconstitutional under the Fourteenth Amendment because they are so vague that they fail to provide a reasonable person sufficient guidance to know what will subject them to penalty?

- Are the challenged provisions of HB 1193 unconstitutional under the Fourteenth Amendment Equal Protection Clause because they restrict engagement with "issues related to race, sex, color, gender identity, sexual orientation or national origin," while permitting engagement with many other issues, including those related to economics, social class, religion, and political party?

- Are the challenged provisions of HB 1193 unconstitutional under the Fourteenth Amendment Due Process Clause because they require the withholding of state

funds to any school or educational institution where there are two uncured violations that are not caused by most of the students and teachers at the particular school?

- Are the challenged provisions of HB 1193 narrowly tailored to achieve any compelling state interest?

This putative subclass is united by the questions of whether the challenged provisions violate the First and Fourteenth Amendments, including whether they discriminate on the basis of viewpoint, discriminate on the basis of content, and because they are unconstitutionally vague in their enforcement. As postsecondary educators who make choices in what they consider the most effective pedagogical materials or approaches, the challenged provisions of HB 1193 force them to worry whether adding something to their instruction or materials may lead to violating the law; and the potential consequences for faculty who might be subject to complaints filed by others, and the potential loss of public funding for the college or university, are severe. More generally, the challenged provisions of HB 1193 force educators in this class to constantly worry whether their approach to teaching or discussing a topic, as trained experts in their field, might be read as advocating for positions which HB 1193's challenged provisions forbid. Finally, the lack of clarity in the challenged provisions provides no guidelines for answering either of these questions for educators. Determining the provisions are unconstitutional would answer all three of these questions immediately for educators, allowing them to return to freely educating students. While there are differences between individual members of this subclass with regard to academic discipline and pedagogical choice, these distinctions are classic examples of the differences in fact which do not impede common resolution. *See* Wright, Miller, and Kane § 1763.

### c. Typicality

Here, the subclass representatives are educators at institutions of higher learning who are restricted in what they can say and teach and who make pedagogical decisions which are chilled by the breadth and confusion stemming from the challenged provisions. Thus, the representatives also face the possibility of viewpoint and content-based discrimination which might be resolved in one stroke by a determination of unconstitutionality of the challenged provisions. This subclass representatives thus readily satisfy the requirement in *James* that the representatives' claims have the same "essential characteristics" as those in the subclass they are representing. *See James*, 254 F.3d at 571. Because the representatives' claims arise from the same course of conduct as the rest of the subclass (HB 1193's enactment), and share the same legal theories as those of the class members (that the challenged provisions of HB 1193 unconstitutionally infringe their speech), the subclass representatives easily meets the standard found in *Newby*. *See Newby*, 529 F. Supp. 2d at 673.

### d. Adequacy

The subclass representatives will undoubtedly be adequate representatives of the class. There is no conflict of interest between the class representatives and the members of the class they seek to represent. Indeed, the class representatives share the same motivation to block the enforcement of the challenged provisions of HB 1193. Each class representative has volunteered to support this litigation and vigorously fight the legality of the challenged provisions of HB 1193. UCW's members consider the teaching of matters possibly covered under the challenged provisions to be "integral to their jobs, their academic freedom and the exercise of their rights to free speech as part of their jobs" [ECF. 22, ¶ 90]. The challenged provisions threaten the academic freedom of UCW's members, chill their freedom of speech, and fundamentally undermine their

jobs through vague and constricting work conditions. [ECF. 22, ¶¶ 88-90, 102] [ECF. 49, pg. 11]. The taboo topics in the challenged provisions are essential to the work of plaintiff class representative professor James Thomas [ECF. 11-6, ¶ 2, 3], and they threaten his professional "duties and responsibilities as a sociologist, professor, and educator. The law's confusing yet sweeping language calls into question my standard course materials and classroom discussions, and leaves me open to possible discipline, censure, or other professional consequences simply for doing the job [Thomas] was hired for, and for which [Thomas is] professionally obligated to do." [ECF. 11-6, ¶ 5]. Class representative lecturer Karen Aderer's social work classes revolve around understanding human development into adulthood, and these discussions necessarily involve "defining and discussing the ways that gender and sexual identity, and bias and discrimination across the lifespan have an impact on the human development of an individual. This involves discussion of how issues like racism, sexism, heterosexism, historical trauma, the impact of poverty, advantage and disadvantage, and marginalization influence people's development and outcomes." [ECF. 46-1, ¶ 5]. Additionally, this places Aderer into a dilemma between violating the challenged provisions of HB 1193 and violating her professional and pedagogical obligations according to the Council on Social Work Education [ECF. 46-1, ¶ 6, "Anti-racism instruction is dictated by the 2022 Council on Social Work Education (CSWE) EPAS Standards as something that must be included in our curriculum."]. If left to stand, HB 1193's challenged provisions would require Aderer to make "a vast revision of [her] classes, and would not be in compliance with [CSWE Accreditation Standards]." [ECF # 46-1, ¶ 12, 13]. As plaintiff class representative and law professor Barbara Phillips illustrates, the vagueness of HB 1193's challenged provisions also create a climate of "uncertainty and concern" that has affected her and her colleagues, causing her and her colleagues to worry whether "standard teaching materials and classroom discussions could

subject me to discipline, censure, or other professional consequences." [ECF. 11-2, ¶¶ 4, 5]. All of these representatives are united by a simple desire to go back to doing the job they were hired to do. [ECF. 11-2, ¶ 4]; [ECF. 11-6, ¶ 5]; [ECF. 46-1, ¶ 11]. Class representative librarian Dawn Zimmerer at Hinds Community College explains that the challenged provisions hinder her ability to support students and maintain materials at the McLendon Library at Hinds Community College, two tasks which she considers "integral to [her] jobs as a librarian and would like to continue to do them." [ECF. 11-12, ¶ 3]. Because the challenged provisions' vague bans on "promot[ing]" or "endors[ing]" certain forbidden concepts, or even any "related formulation of those concepts," Zimmerer is worried that her mere direction of students towards materials which might contain some of these concepts could violate the law. [ECF. 11-12, ¶ 4].

The Court should find that all of Rule 23(a)'s prerequisites are satisfied.

### e.   23(b)(2)

Plaintiffs readily meet the standard for a Rule 23(b)(2) class. The lawsuit challenges a policy, announced through HB 1193, that "appl[ies] generally to the class." *See* Fed. R. Civ. P. 23(b)(2). A determination that the challenged provisions are unconstitutional would therefore resolve all class members' claims "in one stroke." *Wal-Mart*, 564 U.S. at 350. Indeed, the relief is functionally indivisible. Thus, "injunctive relief or corresponding declaratory relief [] respecting the class as a whole" is plainly appropriate. *See* Fed. R. Civ. P. 23(b)(2). Rule 23 is satisfied, and this Court should certify the class.

### B.   The subclass of K-12 public school educators should be certified.

### a.   Numerosity

According to the National Center for Education Statistics (NCES), there were 33,768 Mississippi public elementary and secondary school teachers in 2022. *Mississippi*, *State Digest*

*Dashboard*, NAT'L CTR. FOR EDUC. STAT., https://nces.ed.gov/programs/digest-dashboard/state/mississippi (last updated May 2024) [https://perma.cc/ST6V-5GU5]. This number amply satisfies Rule 23(a)(1)'s numerosity prerequisite. Additionally, this number from one of the most authoritative repositories for educational data meets the *Ibe* standard of providing a reasonable estimate of all those in the subclass. *See Ibe*, 836 F.3d at 528.

### b. Commonality

Similar to the higher education subclasses discussed above, this subclass of K-12 public school educators also faces harms capable of being remedied by this Court in "one stroke," fulfilling Rule 23(a)(2)'s prerequisite for commonality. *See Wal-Mart*, 564 U.S. at 350. This subclass is also united on questions of whether the challenged provisions of HB 1193 discriminate on the basis of viewpoint, on the basis of content, and because they are unconstitutionally vague in their enforcement. What sets this subclass apart from the other subclass is that this subclass predominately teaches minors, which the Defendants contend raises a different legal analysis in evaluating the substantive issues in this case. However, the reasons this subclass satisfies Rule 23(a)(2) are ultimately analogous to the reasons the above higher education subclass fulfills Rule 23(a)(2). Members of this putative class face the same common questions as those faced by the higher education educators class, with a slightly different focus on how those questions are answered in the K-12 rather than the higher education environment. *See supra* Sec. A(b) (describing aforementioned subclass representatives satisfying Rule 23(a)(2)). Moreover, the potential consequences for faculty who might be subject to complaints filed by others, and the potential loss of public funding for public schools, are severe.

### c. Typicality

This subclass has two representatives: the Jackson Federation of Teachers (JFT), and Ashley Rogers. JFT is a labor union that fulfills Rule 23(a)(3)'s prerequisite for typicality because, insofar as it is an unincorporated association, the union's relevant harms are reducible to the harm experienced by its associated members. As the Seventh Circuit Court of Appeals explained, in a case where it affirmed a union's status as a party in a Title VII class action claim for sex discrimination, "[t]here is nothing in the law which precluded the Union from recognizing the injustice done to a substantial minority of its members and from moving to correct it." *Air Line Stewards & Stewardesses Asso.*, 490 F.2d 636, 642 (7th Cir. 1973), quoting *Bowe v. Colgate-Palmolive Company*, 416 F.2d 711, 719 (7th Cir., 1969). If a civil rights claim for a substantial minority of its members is sufficient for a union to stand as a party in a class action, then a class action on a statute which chills the First Amendment rights of every member surely satisfies Rules 23(a)(3)'s commonality prerequisite.

A labor union, as an unincorporated association, may also sue and be sued as a member of class under Rule 23.2, and the rule's notes make clear that the "real or main purpose" of the rule was to provide "entity treatment" to associations who were otherwise limited as jural persons under the common law doctrine assumed in Rule 17(b). See F. R. Civ. P. 23.2 advisory committee's note to 1966 amendment; *see also Stolz v. United Bhd. of Carpenters & Joiners, Local Union No. 971*, 620 F. Supp. 396, 403 (D. Nev. 1985) (abrogating common law rule on unincorporated associations was "essential purpose" of Rule 23.2).

Here, the teachers who are members of JFT will experience the same harms from enforcement of the challenged provisions that other public school teachers throughout the state experience. Because the challenged provisions of the statute affect the First and Fourteenth

Amendment rights of all public-school educators, including the members of JFT, the harms to JFT and its members share all the same "essential characteristics" of the harms to educators throughout the state. *James*, 254 F.3d at 571. Ms. Ashley Rogers is a Lead Teacher in a public elementary school in Jackson, Mississippi tasked with, among other things, working with other teachers on lesson plans and classroom conduct. [ECF. 66-2, ¶ 1]. Ms. Rogers will suffer the same harm from the challenged provisions of HB 1193 as public school teachers throughout the state. Thus, the Jackson Federation of Teachers and Ms. Ashley Rogers fulfills Rule 23's typicality requirements.

### d. Adequacy

Because of Rule 23.2's effect in giving unincorporated associations the ability to sue and be sued in class actions just like an individual person, a labor union's adequacy as a representative party in a class suit under Rule 23(a) is to "be tested and judged in the ordinary way." *Air Line Stewards & Stewardesses Asso.*, 490 F.2d at 642 (7th Cir. 1973). Under this standard, JFT as this subclass's representative easily fulfills Rule 23(a)(4)'s prerequisite that the representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). JFT's membership is composed in significant part of Mississippi public school teachers. As in the case with the subclass representatives for the higher education subclass, JFT has no conflicts of interest. *See supra* Sec. A(d) (describing aforementioned subclass representatives satisfying Rule 23(a)(4)).

### e. 23(b)(2)

Like with the higher-education subclass discussed above, this subclass satisfies Rule 23(b)(2)'s requirements because it challenges a policy which applies generally to the subclass in order to address a violation of civil rights specifically as protected by the First and Fourteenth Amendments.

C. **The subclass of college and university students should be certified.**

a. **Numerosity**

As of the fall 2025 semester, Mississippi's eight public four-year colleges and universities enrolled approximately 82,000 students. *University System Enrollment Continues to Grow*, MISSISSIPPI'S INSTITUTIONS OF HIGHER LEARNING, https://www.mississippi.edu/news/university-system-enrollment-continues-grow-0 (last checked March 2026). According to the Mississippi Community College Board, the state's fifteen community colleges enrolled approximately 88,000 students in 2024. Mississippi Gulf Coast Community College, REPORT CARD 2024, https://mgccc.edu/wp-content/uploads/2025/10/MGCCC-2024-Report-Card.pdf (last checked March 2026) [https://perma.cc/EW6Y-JQ9Y]. Together, this subclass includes approximately 170,000 students, satisfying the numerosity requirement for the subclass of college and university students.

b. **Commonality**

The subclass of college and university students face harms capable of being remedied by this Court in "one stroke," fulfilling Rule 23(a)(2)'s prerequisite for commonality. *See Wal-Mart*, 564 U.S. at 350. Every public college and university student in Mississippi is subject to the free-speech restrictions and bans of the challenged provisions, and every student faces the same risk of harm.

As bastions of free speech and critical thinking, colleges and universities provide an environment for young people to grapple with ideas, engage in debate, and learn about perspectives different from those that they hold. The challenged provisions would restrict this activity both inside the classroom and in some cases, outside the classroom, for college and university students in Mississippi. The subject matter of their education would be limited in ways not experienced by

those on most other campuses in the country.  Moreover, the potential consequences for students who might be subject to complaints filed by others, and the potential loss of public funding for the college or university, are severe.

Members of this subclass face similar common issues to those of the other subclasses, including:

- Are the challenged provisions of HB 1193 unconstitutional under the First Amendment because, among other things, they discriminate against certain viewpoints?

- Are the challenged provisions of HB 1193 unconstitutional under the First Amendment because, among other things, they impose content-based restrictions?

- Are the challenged provisions of HB 1193 unconstitutional under the Fourteenth Amendment because they are so vague that they fail to provide a reasonable person sufficient guidance to know what will subject them to penalty?

- Are the challenged provisions of HB 1193 unconstitutional under the Fourteenth Amendment Equal Protection Clause because they restrict engagement with "issues related to race, sex, color, gender identity, sexual orientation or national origin," while permitting engagement with many other issues, including those related to economics, social class, religion, and political party?

- Are the challenged provisions of HB 1193 unconstitutional under the Fourteenth Amendment Due Process Clause because they require the withholding of state funds to any school or educational institution where there are two uncured violations that are not caused by most of the students and teachers at the particular school?

- Are the challenged provisions of HB 1193 narrowly tailored to achieve any compelling state interest?

Because Plaintiffs bring a challenge against the challenged provisions, the Court's inquiry would not require an individualized assessment of facts specific to members of the subclass. Instead, the Court's determination that the provisions are unconstitutional would resolve all of Plaintiffs' claims. While there may be differences between individual members of this subclass with regard to the courses they take, the student groups they are members of, or the types of extracurricular activities they engage in, these differences are classic examples of the differences in fact which do not impede common resolution. *See* Wright, Miller, and Kane § 1763.

### c. Typicality

Plaintiffs and Putative Class Representatives Madisyn Donley, Alexis Cobbs, FLARE, and WiSE assert claims that are typical of the claims of this subclass. The critical question the Court must answer "is whether the class representative's claims have the same essential characteristics of those of the putative class." *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001). The answer to that question here is yes.

Plaintiffs Donley and Cobbs both assert the same claims under the First and Fourteenth Amendments in this case. Both are students at a Mississippi university. [ECF. 11-10 § 2; ECF. 11-10 § 2]. Both have taken courses in which their professors have addressed topics that are restricted or banned by the challenged provisions. [ECF. 11-10 § 3; ECF. 11-10 § 3]. Both are involved in student organizations that could face funding cuts as a result of the challenged provisions. [ECF. 11-10 §§ 6–7; ECF. 11-10 §§ 6–7]. And both are concerned about the risk of facing academic discipline if they discuss issues related to race, gender, or sexual identity. [ECF. 11-10 § 8; ECF. 11-10 § 8]. Their claims undoubtedly "arise from a similar course of conduct and share the same

legal theories" as those of the other subclass members. *Newby*, 529 F. Supp. 2d at 673; *see also James*, 254 F.3d at 571 (holding that typicality requires that class representatives' claims "have the same essential characteristics of those of the putative class").

### d. Adequacy

Plaintiffs and Putative Class Representatives Madisyn Donley, Alexis Cobbs, FLARE, and WiSE are adequate representatives of the university and college student subclass. There is no foreseeable conflict of interest between the representatives and members of each of their subclasses, and they are prepared to vigorously assert the interests of all members of their subclass. Plaintiffs Donley and Cobbs are both "deeply concerned" about the impact of the challenged provisions on their education, [ECF. 11-10 ¶ 5; ECF. 11-10 ¶ 5]. They are motivated to bring this lawsuit because they care about being "challenged intellectually," "engag[ing] in difficult conversations," and "develop[ing] the knowledge and skills necessary to" engage in their future profession. [ECF. 11-10 ¶ 9; ECF. 11-10 ¶ 9]. They worry about the "academic and professional risk" that the challenged provisions place themselves and their classmates in. [ECF. 11-10 ¶ 9; ECF. 11-10 ¶ 9]. These subclass representatives have volunteered to support this litigation and vigorously fight the legality of the challenged provisions of HB 1193. As a result, they will serve as adequate representatives of the interests of the subclass.

### e. 23(b)(2)

As with the educator subclasses discussed above, Rule 23(b)(2)'s requirements are satisfied because this subclass challenges a policy which applies generally to the subclass in order to address a violation of civil rights, specifically as protected by the First and Fourteenth Amendments.

### D.    The subclass of parents or guardians of K-12 public school students should be certified.

#### a.    Numerosity

The numerosity requirement for the subclass of K-12 students is satisfied. The Mississippi Department of Education reports that there are approximately 425,000 K-12 students enrolled for the 2025-26 school year. *MDE Reports*, MISSISSIPPI DEPARTMENT OF EDUCATION, https://newreports.mdek12.org/#:~:text=Statewide%20Student%20Enrollment,Go%20To%20The%20Data%20Explorer (last checked March 2026).

#### b.    Commonality

Members of the subclass of K-12 public school students share multiple common questions of law and fact that make class certification appropriate for this subclass. As with college and university students, the challenged provisions of HB 1193 apply to all K-12 public school students across the state. Because the Defendants claim the K-12 setting implicates different legal questions from the college setting, particularly in the context of First Amendment claims, this group should be certified as its own subclass. However, the reasons this subclass satisfies Rule 23(a)(2) are ultimately analogous to the reasons the above higher education student subclass fulfills Rule 23(a)(2): HB 1193's challenged provisions restrict or ban certain viewpoints and content in both the curricular and extracurricular setting; they are vague; they violate the 14th Amendment Equal Protection and Due Process rights of K-12 students by prohibiting engagement with issues concerning certain protected classes and by requiring the withholding of state funds to schools when there are two uncured violations of the statute

#### c.    Typicality

Plaintiffs and Putative Subclass Representatives L.E. JiBol, Joy Parikh, Greg Powell, Jakob Clark, Ashley Rogers, and James Thomas bring this suit on behalf of themselves, their children,

and all others similarly situated. Each of these subclass representatives' claims is typical of the claims of the members of the subclass. Each subclass representative is a parent of K-12 public school students in Mississippi. [ECF. 11-7, JiBol Decl. ¶ 2; ECF. 75, ¶ 23, 29, 30, 31, 32]. They each send their children to school in a district that is covered by HB 1193, and that could shut down if any one of the many schools in the district incur two or more specific violations. *Id*.

### d. Adequacy

The subclass representatives are all parents of children in K-12 public schools in Mississippi. They bring this lawsuit because they care deeply about the education of their children. They worry that the challenged provisions of HB 1193 will diminish the quality of and access to the education their children will receive. [ECF. 11-7, JiBol Decl. ¶¶ 7–8; ECF. 66-2, Rogers Decl. ¶ 14; ECF. 66-3, Clark Decl. ¶ 4; ECF. 66-4, Parikh Decl. ¶¶ 5, 8; ECF. 66-6, Thomas Decl. ¶¶ 3, 7]. They worry that their children could face discipline by speaking about or engaging in the banned subjects. [ECF. 11-7, ¶ 9; ECF. 66-2 ¶ 17; ECF. 66-3 ¶ 6; ECF. 66-4, ¶ 6; ECF. 66-6 ¶ 4].

### e. 23(b)(2)

As with the educator subclasses discussed above, Rule 23(b)(2)'s requirements are satisfied because this subclass challenges a policy which applies generally to the subclass in order to address a violation of civil rights, specifically as protected by the First and Fourteenth Amendments.

### E. Plaintiffs' counsel should be appointed as plaintiff class counsel.

In selecting who shall serve as class counsel, Rule 23(g) requires courts to consider four enumerated factors in appointing class counsel: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class.

Appointment of Plaintiff's counsel as class counsel in this matter is appropriate under each of these requirements. Plaintiff's counsel has thoroughly investigated the claims in this matter and identified the individuals most affected by the challenged provisions of HB 1193; and, the instant suit is the only legal action challenging any portion of HB 1193. Counsel have substantial experience handling First and Fourteenth Amendment claims and challenging legislation on constitutional grounds, and are committed to devoting the necessary resources to represent the class-members' interests.

## **CONCLUSION**

Plaintiffs respectfully request that the Court grant their motion; certify each Plaintiff subclass; allow Plaintiffs' claims seeking declaratory and injunctive relief against HB 1193 to proceed as a class action; and appoint Plaintiffs' Counsel as Plaintiffs' class counsel.

Dated: March 5, 2026                      Respectfully submitted,

| | |
|---|---|
| *s/ ROBERT B. MCDUFF* | *s/ JOSHUA TOM* |
| ROBERT B. MCDUFF | JOSHUA TOM |
|   MS BAR NO. 2532 |   MS BAR. NO 105392 |
| PALOMA WU | MCKENNA RANEY |
|   MS BAR NO. 105464 |   MS BAR NO. 106330 |
| MISSISSIPPI CENTER FOR JUSTICE | AYANNA HILL |
| 210 E. CAPITOL STREET, STE 1800 |   MS BAR NO. 106590 |
| JACKSON, MS 39201 | AMERICAN CIVIL LIBERTIES UNION OF |
| PHONE: (601) 259-8484 | MISSISSIPPI FOUNDATION, INC. |
| RMCDUFF@MSCENTERFORJUSTICE.ORG | P.O. BOX 2242 |
| PWU@MSCENTERFORJUSTICE.ORG | JACKSON, MS 39225 |
| | PHONE: (601) 354-3408 |
| AMIR BADAT | JTOM@ACLU-MS.ORG |
|   MS BAR NO. 106599 | MRANEY@ACLU-MS.ORG |
| BADAT LEGAL PLLC | AHILL1@ACLU-MS.ORG |
| P.O. BOX 15 | |
| TOUGALOO, MS 39174 | NICOLAS STANOJEVICH* |
| PHONE: (601) 462-9592 | RICHARD ROUCO* |
| AMIR.BADAT@GMAIL.COM | QUINN, CONNOR, WEAVER, |
| | DAVIES & ROUCO LLP |
| | 2 20TH STREET NORTH, SUITE 930 |
| | BIRMINGHAM, AL 35203 |
| | PHONE: (205) 870-9989 |
| | NSTANOJEVICH@QCWDR.COM |
| | RROUCO@QCWDR.COM |
| | *ADMITTED PRO HAC VICE* |
| | |
| | *COUNSEL FOR PLAINTIFFS* |

## <u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing has been filed on the ECF system which served all counsel of record on this 5th day of March, 2026.

*<u>s/ Joshua Tom</u>*
Joshua Tom
Co-counsel for Plaintiffs
