**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

| | |
|---|---|
| **JACKSON FEDERATION OF TEACHERS, et al.** | **PLAINTIFFS** |
| **VS.** | **CIVIL ACTION NO. 3:25-cv-00417-HTW-LGI** |
| **LYNN FITCH, et al.** | **DEFENDANTS** |

**MEMORANDUM OF AUTHORITIES IN SUPPORT OF DEFENDANTS' RESPONSE IN
OPPOSITION TO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION [ECF# 85]**

**INTRODUCTION**

Plaintiffs filed this action seeking to permanently enjoin the enforcement of statutory provisions that prohibit public schools and institutions of higher learning from engaging in discrimination. While the substantive issues are on appeal to the Fifth Circuit, Plaintiffs have filed a motion for class certification. But Plaintiffs have failed to demonstrate, under the required "rigorous analysis," that this Court should certify a class under Rule 23.

Rule 23 requires proof, not generalities. Plaintiffs have offered no substantial evidence to meet their burden to prove numerosity, commonality, typicality, and adequacy under Rule 23(a). Nor have they established any common behavior by the Defendants towards any of the putative classes or sub-classes as required by Rule 23(b)(2). For these reasons, the motion should be denied. However, should this Court consider granting Plaintiffs' motion, the Defendants should be allowed to conduct limited discovery relevant to class certification in advance of any hearing on the motion.

**FACTUAL BACKGROUND**

House Bill 1193 ("the Act") was signed into law in April 2025. ECF# 1 at ¶ 8. The stated purpose of the Act is set forth in Section 1:

1

> The purpose of this act is to prohibit public schools and public postsecondary educational institutions from taking certain actions and engaging in discriminatory practices. This act seeks to ensure that employment, academic opportunities and student engagement are based solely on individual merit, qualifications and academic performance, without consideration of an individual's race, sex, color, national origin, or expressed opposition to, or refusal to affirm or participate in, diversity, equity and inclusion.

ECF# 11-14 at Section 1.

All requirements and prohibitions in the Act are imposed on institutions, not individuals, for the purpose of preventing discrimination. The Act accomplishes this goal by prohibiting educational institutions from conditioning employment, admission, or the award of a contract on compulsory training that (for example) seeks to compel individuals to change their beliefs on "race, sex, color, gender identity, sexual orientation, or national origin." ECF# 11-14 at Sections 2.(d), 3.(g), 3.(i); *see* ECF# 11-14 at 2.(a). It further prohibits any action against an individual student, faculty member, employee, or contractor as a result of their opinions or beliefs regarding race, sex, color, gender identity, sexual orientation, or national origin (ECF# 11-14 at Sections 3.(d), 3.(e), 3.(h)) and prohibits programs/positions/offices to effectuate such discriminatory or adverse actions (ECF# 11-14 at Sections 3.(a), 3.(b), 3.(c), 3.(f)). Finally, the law provides a method for individuals to seek relief in the event they are subjected to discriminatory adverse actions by an institution. ECF# 11-14 at Sections 7-9.

The only mention of students, teachers, school employees, or any other individual is protective in nature. Section 3 of the Act requires that the Board of Trustees of State Institutions of Higher Learning ("IHL"), the Mississippi Community College Board ("MCCB"), the Mississippi State Board of Education ("MBE"), and the Mississippi Charter School Authorizer Board ("MCSAB") "shall ensure that each *institution*, *college and public school*, as applicable, shall not" discriminate against students, teachers, employees, or contractors in several enumerated

2

ways. EFC# 11-14 at Section 3 (emphasis added). At the same time, the Act is designed to protect individual rights by providing a mechanism for "any student enrolled at an institution, college or public school, any faculty, employee or staff member of an institution, college or public school, or any parent, guardian or next friend of a minor who has allegedly been *harmed by the institution, college or public school's failure to comply*" to file a complaint. ECF#11-14 at Section 3(5) (emphasis added).

## PROCEDURAL HISTORY

Plaintiffs[1] filed this action on June 9, 2025, seeking declaratory and injunctive relief challenging the Act's constitutionality under the First Amendment (right to speak, right to receive information, loss of student funding) and Fourteenth Amendment (vagueness, equal protection, due process). ECF# 1 at ¶¶ 101- *ad damnum*. Nine days later, the Plaintiffs filed their Motion for Temporary Restraining Order and Preliminary Injunction [ECF# 11] which was granted by the Court. ECF# 51; ECF# 74. These rulings are currently on appeal to the Fifth Circuit. ECF# 78. Approximately six months after the Defendants filed their Notice of Appeal [ECF# 78], the Plaintiffs filed the present Motion for Class Certification. ECF# 85. In their motion, the Plaintiffs seek class certification for two sub-classes of teachers: K-12 and post-secondary education ("Teacher" class/sub-classes) and two sub-classes of students: K-12 (by parents) and post-secondary students ("Student" class/sub-classes). ECF# 85-86.

---

[1] Mississippi Association of Educators ("MAE") was a named plaintiff in the initial complaint [ECF# 1 at ¶ 12] but later requested to be removed as a plaintiff [ECF# 45]. While this motion was never specifically granted, the Court has recognized the Second Amended Complaint filed on August 19, 2025 which omits MAE as a plaintiff [ECF# 75] as the operative complaint. *See* ECF# 74 at p. 4. The term "Plaintiffs" as used in this memorandum refers to those set forth in the Second Amended Complaint.

The Defendants submit their timely response and supporting memorandum of authorities in opposition to the requested class certifications or, alternatively, to defer ruling to allow limited discovery on the issue of certification.

## ARGUMENT

**I.     The Plaintiffs bear a heavy burden of proof under Rule 23.**

While Plaintiffs acknowledge the elements they must establish under Fed. R. Civ. P. 23, they gloss over the exacting burden of proof they must meet. ECF# 86 at pp. 4-5. However, the law imposes significant burdens relevant to their motion for class certification.

Contrary to the Plaintiffs' apparent position, "Rule 23 does not set forth a mere pleading standard." *See Chavez v. Plan Benefit Servs., Inc.*, 957 F.3d 542, 545 (5th Cir. 2020). Rather, Plaintiffs must present, and this Court must engage in, a "rigorous analysis" to "detail with sufficient specificity how the plaintiff has met the requirements of Rule 23." *Id.*  To satisfy this "rigorous requirement," Plaintiffs and the Court "must explain and apply the substantive law governing the plaintiffs' claims to the relevant facts and defenses, articulating why the issues are fit for classwide resolution." *Id*. at 546.

To prevail, Plaintiffs must "satisfy *all* requirements of Rule 23(a) – numerosity, commonality, typicality, and adequacy – and at least one of the three requirements listed in Rule 23(b)." *Sampson v. United Services Automobile Ass'n*, 83 F.4th 414, 418 (5th Cir. 2023) (emphasis added). The Fifth Circuit has "emphasized" that Rule 23's "'rigorous analysis' mandate is not some pointless exercise. . . . It matters." *Id.* Moreover, the Court 's analysis may not rely on generalities but, instead, "must stay close to the facts and law of the case, spurning reliance on generalizations about what types of disputes may be fit for a class." *Chavez v. Planned Benefit Services, Inc.,* 957 F.3d 542, 546 (5th Cir. 2020). Under applicable law, this Court must hold the Plaintiffs to this

burden in order to establish a sufficient record for appellate review. *Id.* at 547 ("Appellate judges are not finders of fact, and we play no role in managing a district court's docket. So it's up to the district judge to find the facts.").

As discussed in greater detail below, Plaintiffs have not come forward with adequate proof to establish any of the burdens imposed on them by Rule 23. The motion for class certification should, therefore, be denied.

## II.   Plaintiffs failed to meet their burden under Rule 23(a).

### A.   Plaintiffs failed to prove numerosity and impracticability.

To satisfy the numerosity requirement, Plaintiffs must prove that the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs cite *Ibe v. Jones*, for the proposition that a "reasonable estimate" of purported class members "is sufficient." ECF# 86 at p. 5. However, the Plaintiffs omitted the Fifth Circuit's caution in the same case that "'the number of members in a proposed class is *not* determinative of whether joinder is impracticable.'" *Ibe v. Jones*, 836 F.3d 516, 528 (5th Cir. 2016) (citing *In re TWL Corp.*, 712 F.3d 886, 894 (5th Cir. 2013) (quoting *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999)) (emphasis added). Rather, "'(t)he proper focus (under Rule 23(a)(1)) is not on numbers alone, but on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors." *Zeidman v. J. Ray McDermott & Co.,* 651 F.2d 1030, 1039 (5th Cir. 1981) (citing *Philips v. Joint Legislative Committee*, 637 F.2d 1014, 1022 (5th Cir. 1981). *See Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980), cert. denied 101 S. Ct. 923, 66 L. Ed. 2d 842 (1981)). These factors include, but are not limited to, "the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Zeidman*, 651 F.2d at 1038 (citing *Garcia*, 618 F.2d at 267; 7 C. Wright & A.

5

Miller, Federal Practice & Procedure § 1762, at 600-03 (1972)). "It is not surprising, therefore, that *no definitive pattern has emerged under Rule 23(a)(1) in terms of the number of purported class members*." *Id.* (emphasis added). Notwithstanding, Plaintiffs take the position that a class of forty-one purported members per se satisfies the numerosity requirement as a matter of law. ECF# 86 at p. 5. This is not correct.

Just because a generalized group is large, it does not follow that a sufficient number of its members have a claim. For example, restaurant workers seeking class certification failed to satisfy the numerosity requirement for a class of "at least 150 former and current . . . employees . . . ." *Montes v. Benelux Corp.*, 2026 WL 764324, at *8, No. 1:24-CV-276-RP (W.D. Tex. Mar. 18, 2026). The court held that, even though they established numerous restaurant workers, Plaintiffs did not establish how many of those workers had claims. *Id.* at *8-9 ("In summary, Plaintiffs do not provide the Court with any estimate of how many individuals suffered these same alleged contract-related injuries.").

Here, the Plaintiffs have offered nothing more than raw numbers of faculty and students in Mississippi. ECF# 86 at pp. 9, 15, 18, 22. Plaintiffs cannot prove numerosity by citing the total number of teachers or students in Mississippi. Instead, Plaintiffs must show that a sufficiently numerous group shares the same alleged injury and that joinder of those persons is impracticable. Plaintiffs have failed to do so. The Motion should be denied on this ground alone.

B.      **Plaintiffs failed to prove commonality.**

Next, Plaintiffs must prove that "there are questions of law or fact that are common to the class." Fed. R. Civ. P. 23(a)(2). Commonality as required by Rule 23(a)(2) "is not the raising of common questions – even in droves – but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v.*

*Dukes*, 564 U.S. 338, 349 (2011) (emphasis in original). Answers, of course, depend on the operative claims and are Plaintiff-, Defendant-, and claim-specific. "In other words, determining whether such 'common contention' is true or false must allow for 'resol[ution of] an issue that is central to the validity of each one of the claims in one stroke.'" *Ward v. Hellerstedt*, 753 F. App'x 236, 245 (5th Cir. 2018) (quoting *Wal-Mart*, 564 U.S. at 350). These common questions "must be dispositive of the claims. If they are not – if, for instance, after the common questions are answered one way or another individualized inquiries to determine liability would be needed – then commonality has not been established." *Humphrey v. Hall*, 2020 WL 6792686, at *3 (S.D. Miss. May 11, 2020) (quotation omitted); *see also M.D. ex rel Stukenberg v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012) ("Rule 23(a)(2)'s commonality requirement demands more than the presentation of questions that are common to the class . . . [.] Rather, Rule 23(a)(2) requires that all of the class 'member's claims depend on a common issue of law or fact whose resolution 'will *resolve* an issue that *is central to the validity* of each one of the [class member's] claims in one stroke.'") (citing *Wal-Mart*, 564 U.S. at 349) (emphasis in original).

The Plaintiffs do little more than raise a series of questions they claim are common to the putative classes, arguing that this is enough notwithstanding "dissimilarities between the claims . . ." and argue that commonality "is easily met in most cases." ECF# 86 at p. 6. The Fifth Circuit rejected a similar argument in *Stukenberg*. 675 F.3d at 839-40. In that case, the trial court adopted a cursory analysis similar to that advanced by the Plaintiffs here to find commonality. *Id.* at 839. In reversing this decision, the Fifth Circuit noted that the district court's analysis may have been consistent with Supreme Court precedent prior to *Wal-Mart* but was "insufficient" under the "heightened standards for establishing commonality" adopted by the Supreme Court. *Id.* Under this standard, Plaintiffs cannot simply rely on the existence of common questions or issues, they

7

must establish that class adjudication "will *resolve* an issue that *is central to the validity* of each one of the [class member's] claims in one stroke." *Id.* at 840 (citing *Wal-Mart*, 564 U.S. at 349) (emphasis in original).

Put simply, "Rule 23(a)(2) requires that all of the class member's claims depend on a common issue of law or fact whose resolution will resolve an issue that is central to the validity of each one of the [class member's] claims in one stroke." *Stukenberg*, 675 F.3d at 840. "[P]roof of commonality necessarily overlaps with the . . . merits . . ." of the Plaintiffs' claims. *Id.* (citing *Wal-Mart*, 564 U.S. at 2552) (cleaned up).

As discussed below, the Plaintiffs failed to satisfy this requirement.

### 1. Plaintiffs failed to prove commonality regarding the proposed Teacher sub-classes.

"[T]o establish commonality, the plaintiff(s) must show that the class members have suffered the same injury." *Ward v. Hellerstedt*, 753 F. App'x 236, 245 (5th Cir. 2018) (citing *Wal-Mart*, 564 U.S. at 349) (internal quotation marks and citation omitted). The Plaintiffs list a series of questions which they claim are "central to the resolution of this case . . ." ECF# 86 at p. 10. These are, in large part, the same broadly stated constitutional challenges raised by the Plaintiffs in their Motion for Temporary Restraining Order and Preliminary Injunction. ECF# 11, 12.[2]

Even so, simply identifying questions is not sufficient to meet the commonality requirement; it's the *answers* that matter. *See Wal-Mart*, 564 U.S. at 349.

The Plaintiffs make little effort to meet their burden beyond bare declarations (unsupported by evidence). Specifically, they argue that a decision finding the challenged provisions of the Act unconstitutional would resolve: (1) their worries about whether their teaching materials violate the

---

[2] For the reasons discussed in the Defendants' responses and supporting briefs (ECF# 20-21, 42-43) and incorporated here by reference, the Plaintiffs' constitutional claims are without merit.

law; (2) alleviate worries about complaints from students and other faculty members; and (3) provide clarity as to what is and is not allowed. ECF# 86 at pp. 11, 15. These "answers" do not establish the commonality required by Rule 23 for three reasons.

*First,* the Plaintiffs offer no admissible and competent evidence that anyone, other than the named Plaintiffs, has the same concerns. To the contrary, the Plaintiffs' admitted fear that non-party students and teachers might raise a complaint under the Act's mechanism for reporting discrimination indicates that their worries may not be shared by the class.

*Second*, as discussed at length in the Defendants' Memorandum of Authorities in Response to Plaintiff's Motion for Preliminary Injunction, the answers to the questions upon which the Plaintiffs rely to show commonality could vary widely. It is undisputed that this purported class is made up entirely of public employees. As such, their speech in that capacity is not protected by the First Amendment. *See Garcetti v. Ceballos*, 547 U.S. 410, 411 (2006). "Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Id.*

Even if the Fifth Circuit applies a *Garcetti* carve-out for academic freedom,[3] whether or not a teacher's speech is entitled to First Amendment protection is determined by the *Pickering* analysis, which requires a showing that: (1) the speech is on a matter of public concern and (2) the professor's "interests in the prohibited speech outweigh the College's interests." *Buchanan v. Alexander*, 919 F.3d 847, 853 (5th Cir. 2019). In *Buchanan*, a professor's use of profanity and

---

[3] As discussed in the Defendants' Memorandum of Authorities in Opposition to Plaintiffs' Motion for Preliminary Injunction, this issue remains unclear. ECF# 43 at pp. 10-12. Notwithstanding, the Act includes an exception for actions taken to comply "with any applicable academic accreditation standards or requirements." ECF# 11-14 at Section 5(j). Accreditation standards applicable to institutions of higher learning place responsibility for curriculum development on the faculty and requires that "no outside person, board, or religious or legislative body should be in a position to interfere . . . with the operations of the institution." ECF# 42-2 at ¶¶ 2-3, Exhs. 1-2.

discussions of her sex life and her students' sex lives "were clearly not related to the training of Pre-K-Third grade teachers . . ." and, as such, her speech was not protected by the First Amendment. In so doing, the Court noted that "speech that does not serve an academic purpose is not of public concern." *Id.* To the extent teachers enjoy any First Amendment protection for what they teach, those rights are not analyzed in a one-size-fits-all fashion.[4] Rather, the *Pickering* analysis is a fact-intensive inquiry that cannot provide a common answer to the Plaintiffs' questions.

*Third*, the Act regulates institutions, not individual faculty members in their private capacities (or students). The Plaintiffs, as class representatives, teach at different institutions. How those institutions implement the goals of the Act is yet to be seen and will likely vary from school to school. It follows, then, that the "answers" will also vary.

Practically, public-school teachers and university professors are not similarly situated for purposes of class action commonality. Different institutions may issue different guidance on compliance with the Act or no guidance at all. Professors teaching history or mathematics, K–12 teachers in elementary classrooms, and faculty members attending employee training are not similarly situated regarding the Act's implementation and enforcement. Some plaintiffs may allege chilled speech; others may allege curriculum effects; others may never be affected by the Act at all. The proposed teacher subclasses fail the commonality requirement because the effect of the

---

[4] This makes sense, in that teachers in public schools speak for the government and the government is entitled to determine what it wishes to say. Prior to the U.S. Supreme Court's decision in *Garcetti*, courts considered the free speech rights of public employees by examining whether "the interest of the worker 'as a citizen commenting upon matters of public concern' outweigh the interest of the state 'as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Williams v. Dallas Independent School Dist.*, 480 F.3d 689, 691-92 (5th Cir. 2007) (citing *Pickering v. Bd. of Educ.*, 591 U.S. 563, 568 (1968)). Now, the initial focus is not on the content of the speech, but on the "role the speaker occupied when he said it." *Id.* at 692.

10

challenged provisions depend on (among other things) individual teachers' roles, subject matter, educational level, institution, and alleged injury.

For these reasons, the Plaintiffs failed to satisfy the commonality requirement for the purported teacher class/sub-classes.

### 2. Plaintiffs failed to prove commonality regarding the proposed Student sub-classes.

The Plaintiffs attempt to meet the commonality requirement for the Student sub-classes with the same broad list of questions they relied upon for the Teacher sub-classes. ECF# 86 at pp. 19-20, 22. For the reasons discussed above, this is insufficient to meet their burden. Again, questions alone do not satisfy the commonality requirement. Common *answers* are required. As with teachers, a student's First Amendment rights are determined by a fact-specific analysis.

As pointed out, the Act does not regulate individual students or student speech at all. It regulates government speech. Even were that not so, the First Amendment status and protection of student speech entails a unique and highly fact-specific analysis. "[T]he constitutional rights of students in public school are not automatically coextensive with the rights of adults in other settings," *Morse v. Frederick*, 551 U.S. 393, 396–97, 127 S. Ct. 2618, 2621, 168 L. Ed. 2d 290 (2007) (citing *Bethel School Dist. No. 403 v. Fraser,* 478 U.S. 675, 682, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986)). The First Amendment rights of students "must be 'applied in light of the special characteristics of the school environment . . .'" *Id.*

The leading case on student speech is *Hazelwood Sch. Dist. v. Kuhlmeier*, wherein the United States Supreme Court recognized that schools "are entitled to exercise greater control over . . . student expression" and are entitled to disassociate from student speech. 484 U.S. 260, 271 (1988). As such, "[i]t is only when the decision to censor a school-sponsored publication, theatrical production, or other vehicle of student expression has *no valid educational purpose* that the First

Amendment is so 'directly and sharply implicate[d],' . . . as to require judicial intervention to protect students' constitutional rights." *Id.* at 273 (internal citations omitted) (emphasis added). Under *Hazelwood*, "educators do not offend the First Amendment by exercising editorial control over the style and content of student speech in school sponsored expressive activities so long as their actions are *reasonably related* to legitimate pedagogical concerns." *Id.* (emphasis added). *See also Bell v. Itawamba Cnty. Sch. Bd.*, 799 F.3d 379, 398 (5th Cir. 2015) ("While school officials must offer facts to support their proscription of student speech, *this is not a difficult burden, and their decisions will govern if they are within the range where reasonable minds will differ* . . .") (emphasis in original).

Similar to the teacher subclasses, the student subclasses are not cohesive: minors to adult postsecondary students, derivate parent claims to direct student claims, varying educational settings, and assorted speculative injuries. There is no commonality here, precluding a finding of commonality for these sub-classes.

### C.    Plaintiffs' claims fail the typicality requirement.

Rule 23(a)(3) requires Plaintiffs to establish that "the claims or defenses of the representative parties are typical of the claims or defenses of the class . . ." Typicality rests on whether "members [of the class] have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hirsch v. USHealth Advisors, LLC*, 337 F.R.D. 118, 133 (N.D. Tex. 2020). While it is not necessary for the representatives' claims to be identical to other class members, "class certification should not be granted if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Id.* Because commonality and typicality are closely related, failure to prove commonality necessarily results in

failure to establish typicality. *Flecha v. Medicredit, Inc.,* 946 F.3d 762, 768 (5th Cir. 2020) ("failure to prove commonality also establishes her failure to prove either typicality or predominance."); *see also Almon v. Conduent Bus. Servs., LLC*, 2022 WL 902992, at \*27, No. SA-19-CV-01075 (W.D. Tex. Mar. 25, 2022) ("failure to satisfy their burden as to commonality also establishes their failure to prove typicality . . .").

Because Plaintiffs failed to show commonality, they also failed to establish typicality.

**D.      Class members are not adequately protected by Plaintiffs and counsel.**

The Plaintiffs must also demonstrate that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Rule 23(a)'s adequacy requirement encompasses class representatives, their counsel, and the relationship between the two. *Berger v. Compaq Computer Corp*., 257 F.3d 475, 479 (5th Cir. 2001) (citing 7A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1769.1, at 375 (2d ed. 1986)). For this reason, the Fifth Circuit mandates a two-part inquiry: (1) "the zeal and competence" of counsel; and (2) "the willingness and ability of the [class] representative[s] to take an active role in and control the litigation and to protect the interests of absentees . . ." *Id.* Adequacy is not presumed but, as with the other requirements of Rule 23(a), must be established through proof. *Id.* at 481.

Here, the Act is designed to prohibit institutions from racial, sexual, and ideological discrimination against teachers and students. Consequently, the very relief sought in this action raises a conflict for both Plaintiffs and their counsel vis-à-vis class members who desire the Act's protection. Indeed, the Teacher sub-classes' concern about complaints under the Act seems to acknowledge the existence of those whose interests are adverse to the Plaintiffs. ECF# 86 at p. 11. Yet, they have made no effort to prove how many students and faculty have the same claims as the

representative plaintiffs. This failure is problematic given that the Act's stated purpose is to *prevent* institutional discrimination against students and faculty and provide them with an avenue for relief in the event of an institution's failure to do so.

The Fifth Circuit has noted that "[n]umerous courts have held that intraclass conflicts may negate adequacy under Rule 23(a)(4)." *Langbecker v. Elec. Data Sys. Corp*., 476 F.3d 299, 315 (5th Cir. 2007) (citing *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.,* 350 F.3d 1181, 1189–92 (11th Cir.2003) (finding class representatives inadequate where their economic interests and objectives conflicted substantially with those of absent class members); *Pickett v. Iowa Beef Processors,* 209 F.3d 1276, 1280 (11th Cir. 2000)(representation inadequate where class includes those "who claim harm from the very acts from which other class members benefitted")).

In *Langbecker*, the Fifth Circuit considered whether the plaintiffs/employees seeking class certification for ERISA claims related to a stock fund adequately represented the class. 476 F.3d at 306-07, 314-15. The court noted that "[s]ubstantial conflicts exist among members . . ." arising from the plaintiffs' demand that the fund be shut down while other class members continued to invest in the fund. *Id.* at 315. In reversing the decision to certify the class, the Fifth Circuit held that "[t]he trial court too readily succumbed to Appellee's minimization of the intraclass problems in this case." *Id.* at 315-16. In response to the dissent's argument that a divergence of position within the class regarding whether the fund should continue was not a conflict, the majority cited the Supreme Court's decision in *Hansberry v. Lee,* 311 U.S. 32, 43–44 (1940). *Langbecker*, 476 F.3d at 316, n. 28. "A few class members cannot hijack litigation 'on behalf of the plan' to pursue their preference at the expense of others who are not given notice of this purported representation. The interests of *all* class members must be fundamentally consistent." *Id.* (emphasis added).

14

Here, Plaintiffs simply announce that "there is no conflict of interest between the class representatives and the members of the class they seek to represent" (ECF# 86 at p. 12) without making any serious attempt to satisfy the adequacy requirement for any of the putative classes/sub-classes. Indeed, the Plaintiffs only address the adequacy of counsel in generalized statements, unsupported by any specific facts or evidence. ECF# 86 at p. 23.

As to the purported Teacher class/sub-classes, the Plaintiffs point to an allegation in their First Amended Complaint[5] alleging that Plaintiff United Campus Workers Local 3821's ("UCW") members "consider the teaching of matters possibly covered under the challenged provisions to be 'integral to their jobs, their academic freedom and the exercise of their rights to free speech as part of their jobs.'" ECF# 86 at p. 12 (citing ECF# 22 at ¶ 90). Even if the requirements of Rule 23(a)(4) could be satisfied by mere allegations (and they cannot),[6] UCW's 237 members comprise only a tiny fraction of the total number of faculty employed by Mississippi post-secondary institutions which, according to the Plaintiffs, exceeds 6,624 instructors. ECF# 86 at p. 9. The handful of Plaintiffs who are individual post-secondary faculty members attested previously about their own fears[7] and concerns but these declarations do not, in any way, establish the absence of a conflict within the class. ECF# 86 at pp. 13-14.

Plaintiff Jackson Federation of Teachers ("JFT") purports to be an adequate representative for 33,768 public school teachers in Mississippi. ECF# 86 at pp. 14, 17. By its own admission, JFT's 400 members are limited to Hinds, Rankin, and Madison Counties and include "educational

---

[5] The First Amended Complaint is no longer the Plaintiffs' operative pleading since they filed a Second Amended Complaint. ECF# 75.

[6] "Rule 23 does not set forth a mere pleading standard." *See Chavez v. Plan Benefit Servs., Inc.*, 957 F.3d 542, 545 (5th Cir. 2020).

[7] Two of these instructors vaguely assert that some ambiguous number of unnamed colleagues share their concerns about the Act. ECF# 11-2 at ¶ 5; ECF# 11-6 at ¶ 6. This testimony is inadmissible hearsay and should not be considered by the Court. Fed. R. Civ. P. 802.

support professionals and retired educators in Rankin County, Madison County, and Hinds County." ECF# 75 at ¶ 12. Even if all 400 of its members were active teachers, this is barely one percent of the K-12 educators in the state (assuming Plaintiffs are correct about the total). Plaintiffs fail to establish that the other 99% of Mississippi teachers who are not JFT members in the seventy-nine counties where it is not present have no conflict with the positions asserted by Plaintiffs in this action.

The Plaintiffs fare no better in establishing adequacy of representation for members of the Student sub-classes. For higher education students, Plaintiffs offer two law students and two student groups. Unlike the bold assertion regarding the Teacher representatives, the Plaintiffs argue that "[t]here is no *foreseeable* conflict of interest between the representatives and members of each of their subclasses, and they are prepared to vigorously assert the interests of all members of their subclass." ECF# 86 at p. 21 (emphasis added). They do not, however, address the many students and student groups who do not necessarily share Plaintiffs' views and may in fact support the Act and desire its protection against discrimination.[8] More importantly, these statements are arguments of counsel, not testimony. The cited declarations do not establish adequacy but, instead, reflect these Plaintiffs' individual concerns. ECF# 86 at p. 21. Similarly, the parents of children in K-12 are clearly pursuing their own concerns without consideration of those parents who support the

---

[8]Claims of DEI-related discrimination against students and student groups are not unusual. *See*, *e.g.*, https://www.campusreform.org/article/5-times-conservative-clubs-discriminated-2025/29164; https://adflegal.org/case/turning-point-usa-suny-cortland-v-cortland-college-student-association/; https://www.independent.co.uk/news/world/americas/university-of-oklahoma-turning-point-discrimination-b2876491.html; https://adflegal.org/press-release/we-silence-voices-all-time-country-says-suny-college-president-now-facing-viewpoint/; https://www.wtnh.com/news/connecticut/college-republicans-voice-concerns-over-alleged-harassment-on-campuses-due-to-political-views/; https://dailyfreepress.com/12/05/23/208349/boston-students-weigh-in-on-alleged-discrimination-against-republicans-on-campus/; https://justthenews.com/nation/free-speech/college-republicans-turning-point-chapters-tussle-student-governments.

Act. ECF# 86 at p. 23. Bottom line: whatever the merits, plaintiffs do not get to presume that all Mississippi teachers, students, and parents want the same statewide injunction.

The foregoing demonstrates that Plaintiffs have failed to establish the adequacy of counsel and representative plaintiffs as required by Rule 23(a)(4). Because Plaintiffs have not established any of the requirements of Rule 23(a), their motion for class certification must be denied.

**III.    Plaintiffs failed to meet their burden under Rule 23(b).**

Even if the Plaintiffs had met their burden under Rule 23(a) – and they did not – Plaintiffs must also "meet the requirements of at least one subpart of Rule 23(b)." *Divine v. Securix, LLC*, 2026 WL 25451, at *2; No. 1:23-CV-196-HSO-BWR, (S.D. Miss. Jan. 5, 2026) (citing *Stukenberg*, 675 F.3d at 837 (5th Cir. 2012)). Here, Plaintiffs rely on Rule 23(b)(2) generally asserting, with little description and no evidence, that the various putative sub-classes meet the requirements of Rule 23(b)(2) because "[t]he lawsuit challenges a policy, announced through HB 1193 that 'appl[ies] generally to the class.'" ECF# 86 at p. 14.

Rule 23(b)(2) "requires common behavior *by the defendant towards the class*." *Casa Orlando Apartments, Ltd. v. Fed. Nat. Mortg. Ass'n*, 624 F.3d 185, 198 (5th Cir. 2010) (emphasis added). "It is well-established that '[i]nstead of requiring common issues, [Rule] 23(b)(2) requires common behavior by the defendant toward the class.'" *Prantil v. Arkema Inc.*, 986 F.3d 570, 580 (5th Cir. 2021) (citing *Yates v. Collier*, 686 F.3d 354, 366 (5th Cir. 2012). "To qualify for class-wide injunctive relief [under Rule 23(b)(2)], class members must have been harmed in essentially the same way. . . ." *Maldonado v. Ochsner Clinic Foundation*, 493 F.3d 521, 524 (5th Cir. 2007).

Here, the Defendants have taken no action toward any of the Plaintiffs or the putative classes they seek to represent. The Act was passed by the Legislature directing the Defendants to prohibit certain discriminatory acts by public schools and institutions of higher learning. The Act

17

does *not* regulate students (at all) or teachers in their private capacities. To the contrary, its stated purpose is to protect them from institutional discrimination.

The Plaintiffs ignore this fact, choosing instead to mischaracterize the Act as "a policy, announced through HB 1193 that "appl[ies] generally to the class.'" ECF# 86 at pp. 14, 17, 21, 23. But this argument is contrary to the plain language of the Act.

Section 1 of the Act states its purpose as follows: "to prohibit public schools and public postsecondary educational institutions from taking certain actions and engaging in discriminatory practices." ECF# 11-14 at Section 1. Section 3 of the Act, in relevant part and as attacked in this action, directs the Defendants to "ensure that each institution, college and public school, as applicable . . ." does not engage in the prohibited actions. ECF# 11-14 at Section 3. Contrary to Plaintiffs' assertion, the Act does not apply to any of the purported classes or sub-classes. The Act applies to public institutions.

Plaintiffs' Motion asks this Court to assume that a statewide statute automatically creates a statewide injunctive class. That's not the law. As with their burdens under Rule 23(a), Plaintiffs failed to establish the requirements of Rule 23(b)(2). For these reasons, the motion for class certification should be denied.

**IV.     In the alternative, Defendants should be allowed to conduct limited discovery on the issues relevant to class certification under Rule 23.**

As discussed above, "the Supreme Court precedent requires district courts to conduct a rigorous analysis of Rule 23 prerequisites. . . [and] take a 'close look' at the parties' claims and evidence in making its Rule 23 decision." *Unger v. Amedisys Inc.*, 401 F.3d 316, 320-21 (5th Cir. 2005). Because Rule 23 requires this Court to "'find,' not merely assume the facts favoring class certification . . . " it may allow "controlled discovery at the certification stage." *Id.* at 321.

Because the Plaintiffs have clearly failed to meet their burden under Rule 23, this Court should deny the motion on the written submissions. If it does not, the Defendants should be allowed to conduct limited discovery on issues relevant to class certification to prepare for the evidentiary hearing required.

## **CONCLUSION**

For all these reasons, the Court should deny Plaintiffs' motion for class certification. Alternatively, the Court should defer ruling and allow the Defendants to conduct limited discovery on the issue class/sub-class certification

THIS the 24th day of April, 2026.

Respectfully submitted,

LYNN FITCH, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF MISSISSIPPI; GEE OGLETREE, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE BOARD OF TRUSTEES OF STATE INSTITUTIONS OF HIGHER LEARNING; STEVEN CUNNINGHAM, AMY ARRINGTON, DONALD CLARK, JR., ORMELLA CUMMINGS, JERRY L. GRIFFITH, JIMMY HEIDELBERG, TERESA HUBBARD, BRUCE MARTIN, HAL PARKER, GREGG RADER, AND CHARLIE STEPHENSON, ALL IN THEIR OFFICIAL CAPACITIES AS MEMBERS OF THE BOARD OF TRUSTEES OF STATE INSTITUTIONS OF HIGHER LEARNING; JOHN PIGOTT, IN HIS OFFICIAL CAPACITY AS CHAIR OF THE MISSISSIPPI COMMUNITY COLLEGE BOARD; CHERYL THURMOND, VIDET CARMICHAEL, DONNIE CAUGHMAN, BUBBA HUDSPETH, DOLLY MARASCALCO, JOHNNY MCRIGHT, LUKE MONTGOMERY, WILL SYMMES, AND DIANNE WATSON, ALL IN THEIR OFFICIAL CAPACITIES AS MEMBERS OF THE MISSISSIPPI COMMUNITY COLLEGE BOARD; GLEN EAST, IN HIS OFFICIAL CAPACITY AS CHAIR OF THE MISSISSIPPI STATE BOARD

19

OF EDUCATION; MATT MILLER, LANCE EVANS, WENDI BARRETT, MATT MAYO, BILL JACOBS, RONNIE MCGEHEE, MIKE PRUITT, BILLYE JEAN STROUD, AND MARY WERNER, ALL IN THEIR OFFICIAL CAPACITIES AS MEMBERS OF THE MISSISSIPPI STATE BOARD OF EDUCATION; MARCY SCOGGINS, IN HER OFFICIAL CAPACITY AS CHAIR OF THE MISSISSIPPI CHARTER SCHOOL AUTHORIZER BOARD; AND JAY CARNEY, SANDRA MCKIERNON, ERIN MEYER, BEN MORGAN, CANDACE ROBINS, AND JENNIFER JACKSON WHITTIER, ALL IN THEIR OFFICIAL CAPACITIES AS MEMBERS OF THE MISSISSIPPI CHARTER SCHOOL AUTHORIZER BOARD, DEFENDANTS

By:    LYNN FITCH, ATTORNEY GENERAL
       STATE OF MISSISSIPPI

By:    s/Lisa A. Reppeto
       LISA A. REPPETO (MSB #99978)
       Special Assistant Attorney General

LISA A. REPPETO (MSB #99978)
STATE of MIISSISSIPPI
OFFICE OF ATTORNEY GENERAL
Post Office Box 220
Jackson, Mississippi  39205-0220
Tel.:  (601) 359-2780; Fax:  (601) 359-2003
lisa.reppeto@ago.ms.gov

ATTORNEY FOR DEFENDANTS

20

## <u>CERTIFICATE OF SERVICE</u>

I, Lisa A. Reppeto, Special Assistant Attorney General and attorney for the above-named defendants, do hereby certify that I have this date caused to be filed with the Clerk of the Court a true and correct copy of the above and foregoing via the Court's ECF filing system, which sent notification of such filing to all counsel of record.

THIS the 24th day of April, 2026.

<u>s/Lisa A. Reppeto</u>
LISA A. REPPETO
