**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**Northern Division**

**JACKSON FEDERATION OF**
**TEACHERS, ET AL,**

                         *Plaintiffs*,                   **Civil No. 3:25cv00417-HTW-LGI**

  **v.**

**LYNN FITCH, ET AL.,**

*Defendants*.

---

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**
**[ECF No. 85]**

**INTRODUCTION**

This lawsuit is a quintessential class action case: a civil rights suit for prospective injunctive and declaratory relief seeking to enjoin a state statute that applies equally to all members of the plaintiff class. Defendants' arguments against class certification are meritless and fail to meaningfully address the Court's factual findings in its Order preliminarily enjoining enforcement of the challenged provisions of HB 1193. Certifying the proposed Rule 23(b)(2) subclasses is required because, as the Court found, "it would be impracticable, if not impossible, to carve out an injunction that is distinctly limited to the named plaintiffs." [ECF No. 78, p. 17]

**ARGUMENT**

**I.    Plaintiffs have met their burden under Rule 23.**

Plaintiffs moved this Court to certify two classes, each with two subclasses. The two classes divide individuals impacted by the challenged provisions of HB 1193 into educators and students. Each class contains one subclass for K-12 and another for higher education. The challenged provisions of HB 1193 violate the class members' First and Fourteenth Amendment

rights in a manner that can be resolved on a class-wide basis with a determination of the challenged provisions' unconstitutionality, making class certification appropriate in this case.

A.    **The proposed subclasses clearly cover a sufficient number of putative class members who are geographically dispersed to make individual litigation impracticable.**

The proposed subclasses satisfy Rule 23(a)(1)'s numerosity requirement based on the reasonable estimates of the number of educators and students subject to and/or affected by the challenged provisions. Defendants cannot seriously argue to the contrary. The number of public-school educators and students in the proposed classes easily exceed the number needed to satisfy the numerosity requirement. [ECF No. 86, pp. 9, 14]

The Defendants argue, however, that Plaintiffs fail to satisfy the numerosity requirement because there is no showing that a sufficiently numerous group shares the same alleged injury and that joinder of those persons is impracticable.  The Defendants' arguments lack merit. First, the Defendants only cite *Montes v. Benelux Corp.*, 2026 WL 764342 at * 8 (W.D. Tex. Mar. 18, 2026) for the proposition that to satisfy numerosity, each member of the proposed class must suffer the same injury.  This conflates the commonality analysis under Rule 23(a)(2) with the numerosity requirement.   But even assuming numerosity involves a commonality of claims analysis, the *Montes* court held that Plaintiffs had not shown numerosity regarding the breach of contract claims because these claims were based on "off the clock work" and there was no evidence supporting the number of employees who actually worked off the clock. The Plaintiffs had failed to establish the existence of **a policy** requiring employees to perform certain work duties before clocking in. *Montes*, 2026 U.S. Dist. LEXIS 58147 * 24. (emphasis added)

In contrast to the "off the clock" claims, the *Montes* court had no trouble finding that Plaintiffs' proposed class (as modified) satisfied the numerosity requirement with respect to a

statutory claim.[1] A statutory claim focused on the conduct of the defendant and whether it willfully filed fraudulent W-2 statements that inflated the actual compensation members of the proposed class received.

Here, the Plaintiffs' facial challenge to certain provisions of HB 1193 is similar to the statutory claim that the *Montes* court certified. The Court can reasonably infer that the challenged provisions affect all proposed class members because there's nothing in the statute that exempts proposed class members from the application of the challenged provisions. Moreover, the very nature of a facial challenge (as opposed to an "as applied" challenge and like a statutory claim) raises the same claim for all the putative class members.

With respect to other factors that the Fifth Circuit considers in deciding whether "joinder is impracticable," these factors such as "the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim" favor a finding that joinder of thousands of putative class members is impracticable. First, the large number of putative class members in each of the proposed subclasses, though not in itself determinative, should create a presumption that joinder is impracticable. *See*, *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (citing *Newberg on Class Actions*, § 3.05, suggesting that any class consisting of more than forty members "should raise a presumption that joinder is impracticable.").

In *Mirabelli v. Olson*, 350 F.R.D. 138, 144 (S.D. Cal. 2025), the district court found for each of four subclasses challenging California's law restricting school employees from, among other things, communicating to a parent a student's gender identification that joinder was impracticable based on the large numbers of students and teachers in the California educational

---

[1] The statutory claim was a tax fraud claim under 26 U.S.C. § 7434.

system (i.e. approximately 5,837,690 students enrolled in California public schools and approximately 319,000 teachers).  The district court using "general knowledge and common sense" held that "it is clear that putative parent class members and teacher class members number in the thousands. Thus, joinder would be impracticable and the numerosity requirement is easily met." *Id.* at 144 (citation modified).

After California obtained a stay from the Ninth Circuit of the district court's injunction, the parents and teachers asked the Supreme Court to vacate the stay. Significantly, the United States Supreme Court rejected the Ninth Circuit's holding that the district court had not performed a "rigorous analysis" when it certified the four subclasses of parents and teachers, noting "class certification was likely proper. The District Court addressed the requirements for certification under Rule 23 and explained why it concluded that they were met." *Mirabelli v. Bonta*, 146 S. Ct. 797, 803 (2026).  Thus, the Supreme Court did not reject the district court's use of common sense and general knowledge to find that the proposed subclasses were numerous and, equally important, the finding that the number of putative class members alone made joinder impracticable under Rule 23(a)(1).

Second, the Defendants cannot reasonably contest that members of the proposed subclasses are geographically dispersed.  For example, in the college and university subclasses, the putative class members work at one of the eight state universities and one of the fifteen state junior colleges in the state of Mississippi. These institutions are geographically dispersed. Likewise, the Defendants cannot contest the inference that K-12 educators (a class consisting of 33,378 putative members) are geographically diverse and located throughout the State of Mississippi in the approximately 1,038 schools in Mississippi.  See https://nces.ed.gov/programs/digest-dashboard/state/mississippi (noting that in 2022 Mississippi reported 1038 primary and secondary

4

schools). If the putative class members of the Educator subclasses are geographically diverse, *a fortiorari*, the two Student subclasses are also geographically diverse.

Finally, the nature of this civil rights action is precisely the type of action that Rule 23(b)(2) was designed for. As Wright and Miller have explained: "'Subdivision (b)(2) was added to Rule 23 in 1966 in part to make it clear that civil-rights suits for injunctive or declaratory relief can be brought as class actions. . . . [T]he class suit is a uniquely appropriate procedure in civil-rights cases. . . . By their very nature, civil-rights class actions almost invariably involve a plaintiff class.'" *Parsons v. Ryan*, 754 F.3d 657, 686 (9th Cir. 2014) (quoting Wright & Miller, 7AA Fed. Prac. & Proc. Civ. § 1776 (3d ed.)).

### B.    Contrary to Defendants' arguments, Plaintiff's constitutional claims raise common issues of law and fact.

Plaintiffs satisfy Rule 23's commonality and typicality requirements because each proposed class and subclass seeks resolution of the issue of whether the challenged provisions of HB 1193 violate the First and Fourteenth Amendments. A grant of injunctive relief to the proposed class would prevent HB 1193's challenged provisions from going into effect, eliminating the need for future actions seeking similar relief.

Defendants' arguments to the contrary fail. For educators, Defendants argue that: 1) Plaintiffs have not presented evidence that other class members share the named Plaintiffs' concerns; 2) establishing violations of the First Amendment in this context requires individualized factual analyses; and 3) HB 1193 regulates institutions and not individuals, so the challenged provisions will not have uniform application across the various school systems subject to the Act. Defendants overstate the analysis and evidence required to satisfy Rule 23's commonality and typicality requirements in this case.

In addition to numerosity, in *Mirabelli v. Bonta*, the Supreme Court favorably viewed a class certification under circumstances extremely similar to this case including on commonality and typicality. In *Mirabelli* parents and educators in California brought First and Fourth Amendment challenges to California's policy regarding non-disclosure of matters related to student gender identity and transition to parents without the student's consent. The Supreme Court held that the lower courts' class certification was "likely proper." 146 S. Ct. at 803. The trial court found that the *Mirabelli* plaintiffs sought a "legal declaration that the [challenged provision of California law] violate the Fourteenth Amendment right of parents to direct the healthcare and upbringing of one's own children" and an injunction seeking to prevent California from "violat[ing] their rights." *Mirabelli v. Olson*, 350 F.R.D. at 144-45. California's non-disclosure policy has adherents and detractors among the State's population, but that did not keep the trial court from certifying state-wide classes of parents and educators. Here too, the hypothetical that there may be adherents and detractors of the challenged provisions amongst parents and educators in Mississippi does not defeat class certification.

Plaintiffs bring four counts for violation of the First Amendment in this case: first, because HB 1193 prohibits teaching and discussing related to topics disfavored by the Mississippi Legislature; second, because it prevents students from receiving information; third, because it results in a loss of student funding; and fourth, because it is so vague that it violates the First and Fourteenth Amendments. Whether specific instances of student or educator speech are protected may require an individualized factual inquiry, but the allegation that the challenged provisions of HB 1193 violate the First and Fourteenth Amendments because they vaguely prohibit protected speech of educators and students is a common question to the classes resolvable by a common answer. "Rule 23(a)(2) requires that all of the class 'member's claims depend on a common issue

6

of law or fact whose resolution 'will *resolve* an issue that is central to the validity of each one of the [class member's] claims in one stroke.'" *M.D. ex rel Stukenberg v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012) (citing *Wal-Mart*, 564 U.S. at 349) (emphasis in original). Plaintiffs' claims satisfy this requirement and thus satisfy the commonality and typicality requirements of Rule 23.

Defendants do not contest Plaintiffs' arguments regarding typicality beyond arguing that by failing to establish commonality, plaintiffs necessarily fail to establish typicality. Because Plaintiffs have adequately established commonality, Defendants have no argument against Plaintiffs' satisfaction of the typicality requirement.

### C.    Plaintiffs are adequate class representatives because Defendants fail to show an actual conflict of interests between named plaintiffs and putative class members.

The Plaintiffs proposed subclasses satisfy Rule 23(a)(4)'s adequacy of representation requirement.  The Defendants argue that Plaintiffs are not adequate representatives because some of the putative class members may actually support the provisions of HB 1193 which the Defendants characterize as an anti-discrimination statute.[2]  Based on this "hypothetical" support for HB 1193, the Defendants argue that "intra-class" conflicts preclude a finding of adequacy.

The Defendants argument rests on a mischaracterization of Plaintiffs' challenge to HB 1193 as seeking to prevent the State from prohibiting discrimination on the grounds of race, sex and ideology. Nothing in the Plaintiffs' challenges to HB 1193 prevents the State from prohibiting discrimination. On the contrary, Plaintiffs' constitutional challenges to HB 1193 are limited to specific provisions that discriminate against certain viewpoints by, among other things, prohibiting any discussion or promotion of disfavored views.  For example, as the Defendants themselves

---

[2] The Defendants do not challenge the adequacy of class counsel. The counsel retained to prosecute this action on behalf of the Plaintiffs have investigated the claims and are experienced in representing individuals challenging state statutes on constitutional grounds. [ECF No. 86, p. 23-24]

acknowledge, the Plaintiffs' free speech challenge rests on vindicating the interest in academic freedom and there is no evidence that any putative class member opposes the vindication of this interest. Thus, the Defendants "hypothetical" conflict is not an actual conflict of interest.

In *Martinez v. Anderson Cty.*, 2023 U.S. Dist. LEXIS 53657, at *13-14 (E.D. Tex. Mar. 1, 2023), the district court rejected a similar argument. *Martinez* involved a constitutional challenge to fees charged to individuals under bond supervision. The County argued that the plaintiffs were not adequate representatives because some putative class members subject to bond supervision may actually find bond supervision helpful and thus don't object to the fees and would not want to see bond supervision prohibited or the bond office abolished. The district court rejected Defendant's adequacy argument because the named Plaintiffs were not seeking to prohibit bond supervision or abolish the bond office but simply challenging the constitutionality of how fees were assessed. Thus, there was no real and meaningful conflict of interest. Likewise, the named Plaintiffs in this case are not challenging the principles of anti-discrimination in education but rather challenging the constitutionality of certain provisions in HB 1193 that Plaintiffs contend chill academic freedom, burden the freedom of association and/or discriminate against certain view-points and are unconstitutionally vague.[3]

*Langbecker v. Elec. Data Sys. Corp.* 476 F.3d 299 (5th Cir. 2007) does not support the Defendants' argument that purported conflicts of interest preclude a finding that the named plaintiffs are adequate representatives of the proposed Educators and Student subclasses. In *Langbecker*, the panel majority found that plaintiffs who sought to shut down a stock fund had

---

[3] Defendants argue that the JFT and UCW are not adequate representatives because they represent a small fraction of the size of the proposed classes. This argument undercuts the Defendants numerosity arguments but, more importantly, Defendants cite no authority for the proposition that an organization with a few hundred members cannot adequately represent a much larger class of individuals in the same profession. JFT and UCW regularly interact with educators and administrators and understand the interests and issues important to their members but the interests and issues important to all educators.

interests adverse to the class members who wanted to continue investing in the stock fund.  Writing for the majority, Judge Jones noted that Defendants proved that many class members made money as a result of some of the investment decisions that the named plaintiffs claimed were imprudent. *Id*. at 315 (citing *Valley Drug Co. v. Geneva Farms, Inc.*, 350 F.3d 1181, 1189-92 (11th Cir. 2003) (finding class representatives inadequate where their economic interests and objectives conflicted substantially with those of absent class members) and *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000) (representation inadequate where class includes those "who claim harm from the very acts from which other class members benefitted")), the majority remanded the case to the district court  to "more fully consider the implications of the **proven intraclass** conflicts for the adequacy of representation by Smith and Mizell."  *Langbecker*, 476 F.3d at 316 (5th Cir. 2007) (emphasis added).

Here, the Defendants have not identified a specific interest of absent class members that conflicts with the interests of the proposed class representatives in (a) declaring that certain provisions of HB 1193 are unconstitutional and (b) enjoining enforcement of these specific provisions. Indeed, it is difficult to understand what interest putative class members have in enforcement of statutory provisions that are unconstitutional. Furthermore, as the Fifth Circuit in *Langbecker* indicates, the Defendants must show that there are "substantial" intra-class conflicts in to order challenge the adequacy of named plaintiffs to serve as class representatives.  What plaintiffs need only show and have shown is that they do not have "unique circumstances" that would interfere with the prosecution of a claim on behalf of the proposed class.  *See, Murphy v. Beaumont Indep. Sch. Dist., No. 1*:22-CV-135, 2024 U.S. Dist. LEXIS 122899, at *11-12 (E.D. Tex. July 12, 2024) (finding plaintiff was not an adequate representative because his retaliation claims (which were unique to him) overshadowed the "premium pay" claim brought on behalf of

putative class members).   Accordingly, the Court should reject the Defendants' hypothetical class conflicts and find that the named plaintiffs are adequate class representatives for the Rule 23(b)(2) class they seek to represent.

**II.      The proposed subclasses satisfy the requirements for certification under Rule 23(b)(2).**

Plaintiffs' motion satisfies Rule 23(b)(2)'s requirement that Defendants acted "on grounds that generally apply to the class" such that a remedy would be appropriate respecting the class as a whole. The Defendants argue that they "have taken no action towards any of the Plaintiffs." However, 23(b)(2) does not require Defendants to be given a free bite at constitutional violations before Plaintiffs can certify a class under 23(b)(2); only the threat of an action is sufficient, as this court has also held. [ECF No. 74, p. 18]; *see also M.D. v. Perry*, 675 F.3d 832, 847-48 (5th Cir. 2012) (quoting FED. R. CIV. P. 23(b)(2) 1966 Amendment advisory committee note) ("Action or inaction is directed to a class within the meaning of this subdivision even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class.").

Defendants claim the Act only regulates institutions; however, Defendants fail to explain how one regulates institutions without regulating the conduct of the individuals who make up the institution. Indeed, Defendants prove too much in their brief by noting their uncertainty about whether the educators at these institutions have any sort of academic freedom-based speech, while simultaneously granting the law will at least not suppress speech if they are trying to accord with accreditors. [*See* ECF No. 43 at pp. 10-12; ECF No. 90 at p. 9 and n.3] Defendants also express doubts about any limits on their ability to regulate student newspapers at their institutions, then assert that their institutions may constrain student speech in newspapers on grounds that are "*reasonably related* to pedagogical concerns," before finally admitting that the ability to regulate

10

student speech in a school-maintained paper is a fact-specific issue. [ECF No. 90 at p. 12 (emphasis in original)]

Defendants also provide this Court an unintentional display of the close nexus between institutional control (such as over Defendants' example of a student newspaper) and the speech of the purported classes (the student speech in that newspaper). HB 1193 provides penalty mechanisms that include loss of funding for educational institutions that fail to enforce the Act's speech restrictions. Such loss of funding would have a direct impact on students and academics at those institutions.

Thus, Plaintiffs satisfy 23(b)(2)'s requirement that the Defendants act (or threaten to act) "on grounds that generally apply to the class." Plaintiffs also provide a ready solution that would be appropriate for the class as a whole: declare the challenged provisions of the Act unconstitutional.

**III.     Discovery is not required given the nature of the claims asserted in this case.**

Finally, Defendants request limited discovery related to class certification.[4] Opening discovery on the issue of certification "lies within the discretion of the trial court. And, as in all discovery matters, the district court has broad discretion in limiting the scope of discovery." *Stewart v. Winter*, 669 F.2d 328, 331 (5th Cir. 1982) (citation omitted).

Furthermore, Defendants' brief presupposes a hearing on the Motion for Class Certification (noting "in advance of any hearing on the motion" and any "evidentiary hearing required," [ECF No. 90 at 1, 19]), but this assumption is contradicted by the Local Rules. "Although the court may

---

[4] Though Defendants indicate that the Court must take a "close look" and has a heightened obligation under Rule 23 to "find" facts favoring class certification, the case and citation to the Rule pertain to a consideration of predominance under Rule 23(b)(3), which is not at issue here. *Unger v. Amedisys Inc.*, 401 F.3d 316, 320-21 (5th Cir. 2005) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997). The instant case is brought under Rule 23(b)(2), but Plaintiffs do not disagree that the Court has leeway to order discovery should it be necessary or helpful.

deem it necessary to schedule an evidentiary hearing on the class aspects of a civil action, **usually** pleadings, affidavits, other evidentiary materials, and legal memoranda submitted by both sides should be adequate bases upon which the court may make a class action determination." L.U. Civ. R. 23 (emphasis in original). In a facial challenge to a statewide policy, brought by plaintiffs under Rule 23(b)(2), no extraordinary circumstances necessitate a hearing on the issue of class certification. Plaintiffs contend that the pleadings and evidentiary materials provided are sufficient for the Court to engage in the rigorous analysis of class certification.

## CONCLUSION

Plaintiffs respectfully request that the Court grant their motion; certify each Plaintiff subclass; allow Plaintiffs' claims seeking declaratory and injunctive relief against HB 1193 to proceed as a class action; and appoint Plaintiffs' Counsel as Plaintiffs' class counsel.

Dated: May 15, 2026                               Respectfully submitted,

| | |
|---|---|
| *s/ ROBERT B. MCDUFF* | *s/ JOSHUA TOM* |
| ROBERT B. MCDUFF | JOSHUA TOM |
|  MS BAR NO. 2532 |  MS BAR. NO 105392 |
| PALOMA WU | MCKENNA RANEY |
|  MS BAR NO. 105464 |  MS BAR NO. 106330 |
| MISSISSIPPI CENTER FOR JUSTICE | AYANNA HILL |
| 210 E. CAPITOL STREET, STE 1800 |  MS BAR NO. 106590 |
| JACKSON, MS 39201 | AMERICAN CIVIL LIBERTIES UNION OF |
| PHONE: (601) 259-8484 | MISSISSIPPI FOUNDATION, INC. |
| RMCDUFF@MSCENTERFORJUSTICE.ORG | P.O. BOX 2242 |
| PWU@MSCENTERFORJUSTICE.ORG | JACKSON, MS 39225 |
| | PHONE: (601) 354-3408 |
| AMIR BADAT | JTOM@ACLU-MS.ORG |
|  MS BAR NO. 106599 | MRANEY@ACLU-MS.ORG |
| BADAT LEGAL PLLC | AHILL1@ACLU-MS.ORG |
| P.O. BOX 15 | |
| TOUGALOO, MS 39174 | NICOLAS STANOJEVICH* |
| PHONE: (601) 462-9592 | RICHARD ROUCO* |
| AMIR.BADAT@GMAIL.COM | QUINN, CONNOR, WEAVER, |
| | DAVIES & ROUCO LLP |
| | 2 20TH STREET NORTH, SUITE 930 |
| | BIRMINGHAM, AL 35203 |
| | PHONE: (205) 870-9989 |
| | NSTANOJEVICH@QCWDR.COM |
| | RROUCO@QCWDR.COM |
| | *ADMITTED PRO HAC VICE |
| | |
| | COUNSEL FOR PLAINTIFFS |

13

## CERTIFICATE OF SERVICE

I certify that the foregoing has been filed on the ECF system which served all counsel of record on this 15th day of May, 2026.

*s/ Joshua Tom*
Joshua Tom
Co-counsel for Plaintiffs
